# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

## **CONCISE SUMMARY OF THE CASE**

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced.  Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT
CAPTION:_____

USCA NO.: _____

LOWER COURT or AGENCY and DOCKET NUMBER:

_____

NAME OF
JUDGE:_____

Specify who is suing whom, for what, and the subject of this action.  Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

LIST and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal.  If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

On May 5, 2022, Plaintiff Kytch, Inc. filed suit against Defendant Taylor Commercial Foodservice, LLC, d/b/a Taylor Company ("Taylor") in the District of Delaware, alleging one count of false advertising in violation of federal law, 15 U.S.C. § 1125(a). A related California state-law suit against Taylor and several co-conspirators has been pending in the Superior Court for Alameda County, California (Case No. RG21099155) since May 2021. The district court dismissed the federal action in a decision read from the bench, reasoning that because an earlier-filed action challenging related conduct was pending in California state court, the federal claim against Taylor also had to be brought in the state court suit. In doing so, the district court rejected Kytch's contention that, in the Third Circuit, claim splitting doctrine only applies to two actions pending in the same court.

Identify the issues to be raised on appeal:

Whether the district court erred by applying claim-splitting doctrine to dismiss a federal action in favor of a pending California state action when (a) the actions were not pending in the same court and (b) the requirements of Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), and its progeny were not met.

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this 15th day of May ,20 23 .

/s/ Elizabeth M. Locke

Signature of Counsel

Rev. 07/2015

09:42:33 1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF DELAWARE

3

4
        KYTCH, INC.,                    )
5                                       )
                   Plaintiff,           )
6                                       ) C.A. No. 22-279(MN)
        v.                              )
7                                       )
        McDONALD'S CORPORATION,         )
8                                       )
                   Defendant.           )
9       _____)
                                        )
10      KYTCH, INC.,                    )
                                        )
11                 Plaintiff,           )
                                        ) C.A. No. 22-606(MN)
12      v.                              )
                                        )
13      TAYLOR COMMERCIAL FOODSERVICE, )
        LLC, d/b/a TAYLOR COMPANY,      )
14                                      )
                   Defendant.           )
15

16
                        Wednesday, March 29, 2023
17                      10:00 a.m.
                        Motion Hearing
18

19                      844 King Street
                        Wilmington, Delaware
20

21

22      BEFORE:  THE HONORABLE MARYELLEN NOREIKA
                 United States District Court Judge
23

24

25

```
 1   APPEARANCES:

 2
             FARNAN LLP
 3           BY:  MICHAEL FARNAN, ESQ.

 4           -and-

 5           CLARE LOCKE
             BY:  DANIEL P. WATKINS, ESQ.
 6           BY:  ELIZABETH M. LOCKE, ESQ.
             BY:  AMY ROLLER, ESQ.
 7
 8                    Counsel for the Plaintiff

 9

10           YOUNG CONAWAY STARGATT & TAYLOR LLP
             BY:  ANNE SHEA GAZA, ESQ.
11           BY:  SAMANTHA G. WILSON, ESQ.

12           -and-

13           ORRICK HERRINGTON
             BY:  CATHERINE Y. LUI, ESQ.
14           BY:  KRISTOPHER R. WOOD, ESQ.

15
                     Counsel for the Defendant
16                   McDonald's Corporation

17

18           SKADDEN ARPS SLATE MEAGHER & FLOM
             BY:  EDWARD MICHELETTI, ESQ.
19           BY:  SARAH RUNNELLS MARTIN, ESQ.
             BY:  ABRAHAM A. TABAIE, ESQ.
20
21                   Counsel for the Defendant
                     Taylor Commercial Foodservice LLC
22

23

24              _ _ _ _ _ _ _ _ _ _ _ _

25
```

09:42:57

09:42:57 1              THE COURT:   Good morning, everyone.   Please be

10:06:08 2  seated.   Let's start with some brief introductions.

10:06:12 3              MR. FARNAN:   Good morning, Your Honor, Michael

10:06:14 4  Farnan for the plaintiff.   With me today are Daniel Watkins,

10:06:18 5  Amy Roller and Libby Locke of Clare Locke.

10:06:21 6              THE COURT:   Good morning to all of you.

10:06:22 7              MS. GAZA:   Good morning, Your Honor.   Anne Gaza

10:06:25 8  of Young Conaway on behalf of McDonald's.   I'm joined by my

10:06:29 9  colleague, Samantha Wilson also of Young, Conaway, as well

10:06:33 10  as Catherine Liu of Orrick and Kristopher Wood of Orrick.

10:06:38 11              THE COURT:   All right.   Good morning to you.

10:06:41 12              MR. MICHELETTI:   Good morning, Your Honor, Ed

10:06:45 13  Micheletti from Skadden Arps on behalf of defendant Taylor.

10:06:47 14  With me today is my colleague Sarah Martin from the

10:06:51 15  Wilmington office and my partner Abe Tabaie from our

10:06:54 16  California Palo Alto office.

10:06:56 17              THE COURT:   Good morning to all of you as well.

10:06:59 18              All right.   So we have reviewed the papers here

10:07:03 19  and I guess my first question is I don't really understand

10:07:08 20  why these cases are here.   I mean, there was a case going in

10:07:11 21  the state court.   Plaintiff south permission to add a Lanham

10:07:18 22  Act claim.   It seems like they had permission granted and

10:07:21 23  then suddenly everyone started coming out to Delaware.   Why

10:07:24 24  don't you give me some understanding of what's going on

10:07:27 25  because, you know, it just doesn't seem like this is

10:07:30 1    terribly efficient to have cases going in multiple

10:07:36 2    districts.

10:07:38 3              MR. WATKINS:  Yes, Your Honor.  Would you like

10:07:42 4    me to speak at the podium?

10:07:44 5              THE COURT:  Sure.

10:07:46 6              MR. WATKINS:  Thank you for giving us the time

10:07:49 7    to address the Court this morning.  And I'll try to be as

10:07:52 8    responsive as I can to the Court's questions.

10:07:54 9              You correctly identified that this Alameda

10:07:57 10   County action we moved to amend the complaint to add among

10:08:01 11   other things a federal Lanham Act claim.  Once we notified

10:08:04 12   Taylor of our intention to do so, Taylor replied that they

10:08:07 13   intended to the remove the case to the Northern District of

10:08:10 14   California.  That gave us quite a cause for concern as we've

10:08:14 15   alleged in the complaint.  The tortious conduct by

10:08:17 16   McDonald's and Taylor has driven Kytch to the brink of

10:08:21 17   bankruptcy and removal to the federal court would have wiped

10:08:24 18   away more than a year of litigation before Judge Markman in

10:08:30 19   Alameda County.  Additionally --

10:08:32 20             THE COURT:  But that doesn't mean that it

10:08:34 21   belongs here.  Why are we not wiping away that by bringing

10:08:39 22   it here across the country?

10:08:41 23             MR. WATKINS:  So the co-defendants in the state

10:08:44 24   court action, there are two others, one is Tyler Gamble who

10:08:47 25   was a trial participant in Kytch's product trial.  We have

10:08:51 1    sued him for breach of contract claims.  And in that

10:08:54 2    contract there is a forum selection clause that required us

10:08:57 3    to sue him in California state court.

10:08:59 4              THE COURT:  I get it.  I understand that.  But

10:09:01 5    it's not explaining to me why it makes sense for me to have

10:09:06 6    this when everything else seems to be going on in

10:09:11 7    California.  Like, what's the difference between going to

10:09:14 8    California -- removing to the Northern District of

10:09:17 9    California and then starting over in Delaware, that's what

10:09:21 10   I'm not understanding.

10:09:23 11             MR. WATKINS:  So we had some concerns about

10:09:26 12   arguments related to personal jurisdiction and given that

10:09:29 13   all three parties --

10:09:30 14             THE COURT:  Who doesn't have -- do you guys

10:09:32 15   agree that there is personal jurisdiction of the defense in

10:09:37 16   California?  I mean, come on, McDonald's, Taylor, Taylor is

10:09:41 17   already in California, right?  So McDonald's, any issues

10:09:44 18   with personal jurisdiction or venue?

10:09:47 19             MS. LUI:  Your Honor, we didn't have that choice

10:09:50 20   at that time, but that is certainly not a situation where we

10:09:55 21   anticipated that we would be not contesting personal

10:10:00 22   jurisdiction.

10:10:01 23             THE COURT:  I don't know what that meant.  There

10:10:02 24   were too many nots in there.

10:10:05 25             MS. LUI:  My apologies, Your Honor.  It's

10:10:10 1    neither here nor there at this time --

10:10:10 2             THE COURT:  It is here or there because I want

10:10:12 3    to know.  So McDonald's, he's saying there were concerns

10:10:17 4    about personal jurisdiction.  McDonald's, a multinational

10:10:22 5    corporation, you're saying there is no personal jurisdiction

10:10:25 6    in Northern District of California or venue isn't

10:10:28 7    appropriate?

10:10:28 8             MS. LUI:  Right.  We were not anticipating --

10:10:31 9             THE COURT:  So are you saying that it's

10:10:33 10   inappropriate?

10:10:34 11            MS. LUI:  No, Your Honor.

10:10:35 12            THE COURT:  So there is venue?

10:10:37 13            MS. LUI:  There is venue.

10:10:38 14            THE COURT:  And personal jurisdiction.

10:10:39 15            MS. LUI:  We anticipate that that would be

10:10:41 16   likely, yes, Your Honor.

10:10:43 17            THE COURT:  Likely?  Really.

10:10:44 18            MS. LUI:  Yes, Your Honor.

10:10:45 19            THE COURT:  What does that mean?

10:10:46 20            MS. LUI:  Yes, we would anticipate that had we

10:10:49 21   been brought in the Alameda court action, that personal

10:10:52 22   jurisdiction would not have been contested.

10:10:54 23            THE COURT:  All right.

10:10:56 24            MR. MICHELETTI:  Your Honor, I don't know if you

10:10:57 25   want to hear from Taylor, Your Honor.  Taylor, the Court

10:11:00 1   already held that there is personal jurisdiction.

10:11:03 2          THE COURT:  Yeah, I was going to say that one

10:11:05 3   seemed moot to me.

10:11:07 4          MR. MICHELETTI:  That's an easy one.

10:11:08 5          THE COURT:  Thank you.  Go ahead.

10:11:09 6          MR. WATKINS:  Your Honor, I think the shorter

10:11:11 7   answer to what you're asking is we were presented with

10:11:14 8   several different claims across several different

10:11:17 9   defendants.  We filed a federal Lanham Act claim against

10:11:21 10  Taylor and McDonald's here where Taylor and McDonald's are

10:11:25 11  incorporated.  And I certainly understand the Court's

10:11:27 12  concerns related to conserving judicial resources.

10:11:31 13         THE COURT:  I mean, I have a big docket.  I

10:11:33 14  can't afford to deal with duplicative litigation and

10:11:37 15  inefficiency.  So this case caught my attention because you

10:11:43 16  all said that this comes out of the same series of facts,

10:11:48 17  and so it just seems like an incredibly inefficient way to

10:11:53 18  proceed.

10:11:54 19         MR. WATKINS:  So if the Court is concerned about

10:11:57 20  those judicial resources, then the appropriate question is

10:12:01 21  whether Colorado River abstention applies.  In Taylor's

10:12:06 22  reply, there is a throwaway sentence that indicates that

10:12:09 23  Kytch may agree that that authority is vested by the court

10:12:12 24  within its inherent powers, but that is not the case.  The

10:12:17 25  Third Circuit in *McKenna* made clear that after determining

10:12:21 1    the two proceedings are parallel then the court is required

10:12:24 2    to go through the abstention factors.

10:12:26 3            As a reminder, this Court's obligation to hear

10:12:29 4    cases that -- in which Congress granted jurisdiction is

10:12:33 5    virtually unflagging.  And standing alone concerns for

10:12:37 6    avoiding piecemeal litigation are not sufficient to overcome

10:12:41 7    that obligation.  So I'm happy to talk about the abstention

10:12:46 8    standard and why that doesn't apply --

10:12:47 9            THE COURT:  How about I just transfer it,

10:12:49 10   because it seems like I can deal with the transfer factors.

10:12:53 11   I can transfer this to the Northern District of California.

10:12:57 12           MR. WATKINS:  Your Honor, we're prepared to

10:12:59 13   brief that as appropriate.

10:13:02 14           THE COURT:  No, I can do this *sua sponte* if I

10:13:03 15   want if I can go through the factors, so why shouldn't I

10:13:06 16   just transfer it out to the Northern District of California?

10:13:10 17   I don't understand why if you're saying you didn't want to

10:13:13 18   start the whole case over, why did you bring it here instead

10:13:17 19   of Taylor in the Northern District of California?

10:13:19 20           MR. WATKINS:  Your Honor, the reason really is

10:13:21 21   that this is a home game for the defendants.  This is also

10:13:24 22   where Taylor -- excuse me, this is also where Kytch is

10:13:27 23   located.  And we were choosing between removal in the

10:13:30 24   Northern District of California versus filing this case

10:13:33 25   against Taylor and McDonald's --

10:13:38 1              THE COURT:  Where is Kytch located?

10:13:40 2              MR. WATKINS:  Kytch is incorporated in Delaware.

10:13:43 3              THE COURT:  I know that.  Where is it located?

10:13:45 4              MR. WATKINS:  Their office is in Alameda County.

10:13:49 5              THE COURT:  Okay.  So why is this not claim

10:13:52 6      splitting, why is this the abstention.

10:14:03 7              MR. WATKINS:  Under *Walton* which is the Third

10:14:05 8      Circuit authority that handed down the claim splitting

10:14:08 9      doctrine there are three factors that must be present.  It's

10:14:11 10     the same court, the same claims and the same parties.  Here

10:14:15 11     this case where Kytch has asserted federal Lanham Act is

10:14:19 12     obviously the District Court of Delaware.  The related state

10:14:22 13     court litigation is pending in Alameda County, and that ends

10:14:26 14     the inquiry frankly.

10:14:28 15             THE COURT:  Yeah, but why does it?  I mean, you

10:14:30 16     actually got approval to file these claims in a state court

10:14:35 17     in Alameda County, the exact claim that you now want to

10:14:39 18     bring here.

10:14:40 19             MR. WATKINS:  Your Honor, Kytch is the master of

10:14:42 20     its complaint.  It's free to file federal claims in federal

10:14:45 21     court and that's what we did here.  The claim splitting

10:14:49 22     doctrine --

10:14:50 23             THE COURT:  But you did it after you asked for

10:14:52 24     permission -- you basically made the court in Alameda County

10:14:59 25     waste its time saying sure, you can bring a Lanham Act claim

10:15:03 1  here and then once it did it, you were like, but then we

10:15:08 2  didn't see this strategic move on the defendant's part so

10:15:12 3  too bad, court, you can just waste your time and we're going

10:15:15 4  to go elsewhere.

10:15:16 5            MR. WATKINS:  Two responses to that, Your Honor.

10:15:17 6  We didn't waste Judge Markman's time in Alameda County.

10:15:21 7  Shortly after Taylor's counsel indicated that they would be

10:15:26 8  removing to federal court, we conducted an informal

10:15:29 9  discovery conference and notified the court that we would be

10:15:32 10 withdrawing our federal Lanham Act claim.  Mr. Tabaie was

10:15:37 11 present on the hearing and that was known to the court

10:15:39 12 beforehand.  There was nothing improper about the amendment

10:15:42 13 process.  Judge Markman granted that motion and our Amended

10:15:46 14 Complaint that withdrew that federal Lanham Act claim.

10:15:48 15            But more importantly, the claim splitting

10:15:50 16 doctrine is incredibly narrow and Taylor spent most of its

10:15:55 17 brief addressing legal principles that relate to claim

10:16:01 18 preclusion and *res judicata*.  But neither of those issues

10:16:03 19 are present here.  This is not any kind of circumvention of

10:16:06 20 an adverse state court ruling that we're trying to avoid,

10:16:08 21 instead to avoid removal of federal court in California for

10:16:12 22 the reasons that I have said before we filed this case

10:16:14 23 separately in Delaware.  There is not a single case

10:16:18 24 indicating that that's inappropriate or grounds for

10:16:22 25 abstention or claim splitting.

10:16:23 1          THE COURT:  I guess my option is to according to

10:16:27 2  you, either to hear it here or transfer it to California,

10:16:31 3  right?

10:16:31 4          MR. WATKINS:  So I didn't say at any point, Your

10:16:34 5  Honor, that it would be appropriate to transfer this to

10:16:36 6  California.

10:16:37 7          THE COURT:  I know you didn't say that, but that

10:16:38 8  doesn't mean I can't find it.  Let me hear from the

10:16:41 9  defendants since these are their motions.

10:16:43 10         MR. WATKINS:  Thank you, Your Honor.

10:16:44 11         THE COURT:  I'm not sure why plaintiff is

10:16:47 12 speaking first anyway.  I kind of missed that.

10:16:49 13         Go ahead, defendant, let me hear from Taylor

10:16:52 14 first.

10:17:00 15         So claim splitting.  He says I need to have the

10:17:04 16 same court, don't have the same court, so what do I do?

10:17:10 17         MR. MICHELETTI:  Your Honor, he's not -- that's

10:17:12 18 not correct.  His position is not correct.  The doctrine

10:17:15 19 isn't limited to just cases that are stacked back to back.

10:17:19 20         THE COURT:  Give me your best law.

10:17:21 21         MR. MICHELETTI:  Sure.  There is three cases in

10:17:24 22 the -- within the Third Circuit that we cite in our papers,

10:17:28 23 *Hannah*, *Sparks* and *Herbert*, all of which stand for the

10:17:31 24 proposition that cases in multiple courts can be -- you can

10:17:36 25 apply the claim splitting doctrine in that circumstance.

10:17:39 1   *Hannah* is in the Middle District of Pennsylvania.  *Sparks* is

10:17:45 2   in the Eastern District of Pennsylvania and *Herbert* is in

10:17:46 3   the Western District of Pennsylvania.  Bot of those are it's

10:17:48 4   a one federal court, a party takes a claim like Kytch has

10:17:52 5   done here and files separately in another court on the same

10:17:55 6   facts and circumstances.

10:17:56 7               THE COURT:  Do you have a mix of federal and

10:17:59 8   state?

10:17:59 9               MR. MICHELETTI:  Yes.  So within the Third

10:18:02 10  Circuit no, I just don't think it's as developed as other

10:18:05 11  locations, but we do cite two cases in our papers.  The most

10:18:09 12  prominent one and I think the one that has the most powerful

10:18:13 13  persuasive authority for purposes of this fact pattern in

10:18:16 14  particular is *Mohammand v. HSBC Bank* and in that case it was

10:18:22 15  a state case where a claim got chipped off and then it --

10:18:27 16  the chipped off claim was filed in federal court, the claim

10:18:30 17  splitting occurred in federal court.  And the court

10:18:33 18  dismisses the action saying narrowing it down to either

10:18:36 19  claims being brought in the same court or only in federal

10:18:39 20  court would too improperly narrow the defense.  That's what

10:18:42 21  the court said there.  And the court also said the claim

10:18:47 22  splitting doctrine does not become irrelevant simply because

10:18:50 23  the plaintiff attempts to split their claims between a state

10:18:54 24  and federal court rather than between two federal courts.

10:18:58 25  The it's for obvious reasons.  The policy and the core of

10:19:00 1    the claim splitting doctrine is to prevent piecemeal

10:19:01 2    litigation and forum shopping, both of which I think the

10:19:04 3    plaintiffs respectively conceived here today in their

10:19:07 4    arguments.

10:19:07 5         We think dismissal is certainly warranted under

10:19:10 6    claim splitting based on our -- based on our authority and

10:19:13 7    the argument.

10:19:14 8         I think to the extent the Court wanted to stay

10:19:17 9    this action, it could do so for very similar reasons.  The

10:19:21 10   California action is far more procedurally advanced than

10:19:25 11   where we are now.  They're going to trial the end of

10:19:28 12   November.  The same parties are involved.  The same facts

10:19:30 13   and circumstances, all of this arises out of the same

10:19:34 14   nucleus of operative facts.  There are a whole host of

10:19:37 15   reasons as to why the stay could apply as well.  My friends

10:19:40 16   from Kytch --

10:19:41 17        THE COURT:  The basis of the stay is what?  I

10:19:44 18   mean is claim splitting, I don't think my option in claim

10:19:47 19   splitting is to stay.

10:19:48 20        MR. MICHELETTI:  Claim splitting is dismissal.

10:19:52 21   That's a dismissal argument, which we think --

10:19:53 22        THE COURT:  What's the basis that you're saying

10:19:55 23   a stay would be appropriate?

10:19:56 24        MR. MICHELETTI:  Your Honor, the way we put it

10:19:58 25   and it's similar to the cases, *Calamos Asset Management,*

10:20:03 1   *First American Title Insurance Company,* and *Univar v.*
10:20:07 2   *Geisenberger*, all of which the District of Delaware invoked
10:20:10 3   their inherent power to manage its docket and stay a case in
10:20:15 4   deference to a more advanced proceeding effectively, the
10:20:19 5   same issues or very nearly identical issues are going to be
10:20:25 6   addressed.  And that's what we argued here for the stay.
10:20:27 7   It's a very logical argument within the Court's discretion,
10:20:31 8   pretty simple in my view.
10:20:33 9            THE COURT:  Let's say that I say we have to deal
10:20:35 10  with abstention.  Why would it be -- why would this
10:20:40 11  circumstance justify abstention?
10:20:43 12           MR. MICHELETTI:  I think it's justified for all
10:20:45 13  of the same reasons.  We have the similar parties,
10:20:47 14  overlapping parties, overlapping evidence, overlapping facts
10:20:51 15  and circumstances, we have a first filed case that's
10:20:57 16  procedurally advanced, and among other things, Your Honor,
10:21:00 17  there was a very intensive fact-based preliminary injunction
10:21:05 18  application that was denied in California and now they're
10:21:07 19  heading towards trial in November.  Every indicator under
10:21:11 20  Colorado River is ticked off in favor of a stay in that
10:21:15 21  context as well.
10:21:21 22           THE COURT:  So I'm sorry, in favor of a stay?
10:21:24 23           MR. MICHELETTI:  Or abstention.
10:21:26 24           THE COURT:  Abstention.  Abstentions doesn't
10:21:30 25  necessarily mean I stay it.  Could I dismiss it?

10:21:33 1          MR. MICHELETTI:  I think you could dismiss or

10:21:34 2     stay, Your Honor, under the law.

10:21:36 3          THE COURT:  Okay.  All right.  Now, I think I

10:21:41 4     have enough from Taylor for right now.  Let me hear from

10:21:45 5     McDonald's.

10:21:46 6          MR. MICHELETTI:  Thank you, Your Honor.

10:21:48 7          THE COURT:  And again, here, this seems like

10:21:50 8     such an inefficient use of effort when -- I mean, the

10:21:57 9     California state court has already addressed -- the

10:22:01 10    complaint is almost identical, the facts alleged in the

10:22:05 11    complaint.  The California state court has already addressed

10:22:09 12    most of these claims that you have, tortious interference,

10:22:16 13    trade liable, intentional interference with business

10:22:21 14    expectancy, negligent interference with business expectancy,

10:22:25 15    deceptive trade practices, what are we doing here?

10:22:28 16          MS. LUI:  Your Honor, Catherine Lui for

10:22:31 17    McDonald.  We do not have a choice in this matter and we are

10:22:33 18    in Delaware.  And the Alameda --

10:22:35 19          THE COURT:  What if I decided I wanted to *sua*

10:22:36 20    *sponte* move it to California, would you object?

10:22:41 21          MS. LUI:  Transfer it to the Northern District,

10:22:42 22    Your Honor?

10:22:42 23          THE COURT:  Yes.

10:22:44 24          MS. LIU:  I don't have my client's authorization

10:22:46 25    on that, but I understand that if that's a *sua sponte* order,

10:22:51 1   that's certainly within your discretion, Your Honor.  I have

10:22:53 2   not discussed that with my client.

10:22:56 3            THE COURT:  I understand that.  I just sprung

10:22:58 4   that on you.  I'm not suggesting that you actually need an

10:23:02 5   answer, but I was curious.  Okay.

10:23:04 6            MS. Liu:  Thank you, Your Honor.

10:23:05 7            Our issues are related to the false advertising

10:23:09 8   claims that we would like to discuss with you unless there

10:23:13 9   are any other specific questions I can answer at this time,

10:23:15 10  Your Honor.  Otherwise I would like to focus really on the

10:23:19 11  Lanham Act claim.  And the complaint arises from McDonald's

10:23:23 12  issuing a weekly informational newsletter called the Field

10:23:28 13  Brief that McDonald's sends to its existing franchisees.

10:23:31 14  It's not a solicitation for any purchase of McDonald's

10:23:34 15  products, instead it provides information to our franchisees

10:23:38 16  about a variety of topics including webcast, planning tools,

10:23:44 17  officer nominations, and safety issues, and that's seen

10:23:47 18  within Exhibit 1 of the Christopher Wood declaration, ECF

10:23:53 19  11.  The safety of McDonald's restaurants is of paramount

10:23:57 20  concern.  McDonald's must ensure the safety for all aspects

10:24:01 21  of its restaurants including the equipment used in its

10:24:04 22  restaurants.  And this was the person of the Field Brief.

10:24:06 23  McDonald's needed to warn its franchisees of serious safety

10:24:10 24  regs of the Kytch device in addition to delivering other

10:24:12 25  information relevant to its franchisees.  The Field Brief

10:24:16 1  was not an advertisement and was not a tool used in some

10:24:20 2  vast conspiracy with Taylor to destroy Kytch.  As a result,

10:24:25 3  the Lanham Act at the false advertising claim failed because

10:24:31 4  the Field Brief is not a commercial advertisement or

10:24:34 5  promotion.

10:24:37 6          In the --

10:24:38 7          THE COURT:  How do I know that -- I mean, you're

10:24:40 8  asking me to dismiss, so I have to look at the complaint and

10:24:44 9  take the well-pleaded allegations as true.  So okay, I don't

10:24:50 10  know what a Field Brief is.  They are telling me what a

10:24:54 11  Field Brief is.  How does this get you to a motion to

10:24:59 12  dismiss when you say it's just -- it's not, it's not an

10:25:04 13  advertisement, it's not anything that falls within the

10:25:06 14  Lanham Act.

10:25:07 15          MS. LIU:  Right.  The Lanham Act has very clear

10:25:09 16  statutory language, Your Honor, that has to be in a

10:25:12 17  commercial advertising and promotion --

10:25:14 18          THE COURT:  I get it.  I get it.  I'm saying I

10:25:17 19  don't know why this doesn't fit in as pleaded.

10:25:20 20          MS. LIU:  Yes, Your Honor.  So a couple of

10:25:22 21  things.  To find that there is a commercial advertising or

10:25:27 22  promotion it has to be an advertise -- or speech that is

10:25:30 23  designed to influence consumers to buy defendant's products.

10:25:34 24  That's within the *Gordon & Breach* factors.  And it is clear

10:25:39 25  within the allegations of the complaint that the Open

Kitchen device that is discussed in the Field Brief is not

McDonald's product.  It is pled throughout the complaint

that it is either a product of Taylor and/or its affiliate

Powerhouse Dynamics.  For example, in complaint

paragraph 230 and 237 replete with detail related to how

that the Open Kitchen device is a Powerhouse Dynamic and/or

Taylor product.

There is no allegation that McDonald's

manufacturers Open Kitchen, that McDonald's sells Open

Kitchen, that McDonald's will earn a dime of revenue from

the sale of Open Kitchen.  From those, from those lack of

allegations the Court can find that Open Kitchen is not a

McDonald's product.

Kytch has not sufficiently alleged that Open

Kitchen is a McDonald's product because to do so when it is

clear that McDonald's is not the manufacturer of the

product, Kytch has to allege either an agency relationship

or a direct financial interest in the sales of the actual

manufacturer's product.  And again, there are no such

allegations.  All that Kytch relies upon is the Field Brief

itself.  And that their general conclusory allegation that

because McDonald's and Taylor developed and worked on the

product that this renders it McDonald's product.  But that's

not the case law.  They have to show agency or a direct

financial interest and that's not been alleged whatsoever in

10:27:26 1    the complaint.

10:27:28 2          It's also not commercial speech, Your Honor,

10:27:33 3    under the *Gordon & Breach* factors.  It is not an

10:27:37 4    advertisement because it is not soliciting that any of our

10:27:42 5    existing franchisees buy anything from McDonald's.  There is

10:27:45 6    no price related to it.  McDonald's is in the business of

10:27:49 7    selling burgers, fries and franchises, not Open Kitchen.

10:27:54 8    And that's clear from the complaint.

10:27:58 9          To be commercial speech as well, Kytch needs to

10:28:02 10   allege that there is an economic motivation for the Field

10:28:06 11   Brief.  And that has not been alleged.  There is no direct

10:28:09 12   financial interest.  Instead, all Kytch relies upon is that

10:28:15 13   very vague allegations of indirect financial benefit.  But

10:28:20 14   that's not enough.  The case law requires that Kytch has to

10:28:24 15   allege enough to make it plausible that McDonald's spoke

10:28:29 16   from substantially an economic motivation.  Any economic

10:28:35 17   motivation is not enough, it has to be substantial, the

10:28:38 18   substantial economic motivation, that it was a primary

10:28:42 19   economic motivation.  And that's from the *Cornette v. Graver*

10:28:47 20   case, 473 F. Supp 3d 437 at 461.  And that's also in the

10:28:52 21   *Arux* case, 985 F.3d 1107 at 1116 to 1117.  It needs to be a

10:29:02 22   primary economic motivation.  All Kytch alleges at this time

10:29:07 23   is that indirect financial motivation that is not a

10:29:12 24   substantial motivation.  And what they argue or what they

10:29:17 25   allege in their complaint is that there is a repair racket

that McDonald's is helping Taylor maintain.  And that

somehow if this repair racket from Taylor is exposed,

McDonald's reputation will be harmed.  This is just a bare

conclusion in the allegation of the complaint, no plausible

facts make the theory plausible, particularly in light of

the other allegations in the complaint which are that Kytch

alleges McDonald's does not earn a dime from their repair

racket.  Taylor earns all the revenue from the repair

racket.  And also that Taylor is not even an exclusive

supplier to McDonald's.  So it makes no sense how McDonald's

would be primarily substantially economically motivated to

keep this repair racket when Taylor is not even an exclusive

supplier to McDonald's.

Another theory of indirect economic motivation

that Kytch puts forward for the first time in its opposition

brief is that because McDonald's is in the business of

selling franchisees, well, McDonald's has motivation to keep

selling franchisees.  But that ignores that the Field Brief

was sent to existing franchisees of McDonald's.  There was

no sale or effort to get more franchisees, this was already

a locked in relationship.  And under *Chamilia v. Pandora

Jewelry* which is 2007 WL 2781246 at *9, it cannot be a

commercial advertisement or promotion if it's a

communication to existing members of a business relationship

about that business relationship.

10:31:09 1          So for these reasons all based off of the facts

10:31:12 2     of the complaint Your Honor, the Lanham Act claim fails.

10:31:15 3          I'm going to briefly address the other claims,

10:31:19 4     particularly the UCL and FAL claims, as Kytch does not

10:31:24 5     allege adequate remedies in the complaint.  These two

10:31:29 6     statutes only permit restitution or an injunction against

10:31:35 7     future misconduct.  Restitution is very clear under the

10:31:39 8     California Supreme Court related to Korea Supply is that

10:31:43 9     restitution is limited to only recovery of money or property

10:31:47 10    in defendant's possession in which plaintiff had a vested

10:31:52 11    interest.  What Kytch claims is lost profits, lost good

10:31:57 12    will, these are all damages, and that cannot be recovered

10:32:00 13    under the UCL.  Korea Supply is very clear on this.  It

10:32:05 14    states, and I quote, "Compensation for a loss business

10:32:10 15    opportunity is a measure of damages and not restitution."

10:32:13 16    And that is at 29 Cal 4 1134 at 1151.

10:32:18 17         Similarly the injunction claim also fails

10:32:22 18    because this -- an injunction under these statutes is only

10:32:26 19    for future misconduct.  There is no allegation that there is

10:32:30 20    any danger that McDonald's will repeat its allegedly false

10:32:34 21    statements.  Field Brief was published in November 2020.

10:32:37 22    It's been over three years -- over two years, excuse me.

10:32:40 23         On the FAL claim, Kytch has not alleged a

10:32:45 24    preliminary threshold issue that McDonald's acted with

10:32:49 25    intent directly or indirectly to dispose of its properties

and services.  It's required under the FAL.  And that is yet
another reason why this claim must fail.

Finally, for the tortious interference claims,
Your Honor, there are no plausible allegations for key
elements for each of these.  As to the tortious interference
with contact claims, there are no plausible allegations that
McDonald's knew of Kytch's nondisclosure obligation.  At
best there is a vague reference in paragraph 33 of the
complaint that some unknown employee reviewed the agreement
in spring 2020, that's it.  There is no discussion of
agency, that it is going to buy McDonald's, it is not even
clear which entity that supposed employee works for.
McDonald's is a big corporation.  They need more, they need
to plead more to show knowledge of the contract that
McDonald's purportedly interfered with.

As to the intentional interference with business
expectancy tort, there is no plausible allegations that
McDonald's was aware of Kytch's perspective economic
relationship with customers.  The paragraphs that Kytch
relied upon, that's paragraphs 328 through 329 of the
complaint, those at most show that Taylor knew of the
perspective economic relationship, not McDonald's.  And as
to the negligent interference with business expectancy,
there is first of all no cause of action for negligent
interference with existing contract.  As to any perspective

10:34:36 1    economic relationship, again, those are not identified with

10:34:40 2    any particularity.  They cite the same paragraph allegations

10:34:44 3    in support of those as just discussed in paragraphs 328 and

10:34:49 4    329.

10:34:49 5           And finally, there is no special relationship

10:34:52 6    that is plausibly alleged where McDonald's would owe Kytch a

10:34:57 7    duty here to sustain a negligent interference claim for

10:35:01 8    perspective economic relationship.  Indeed, Kytch has

10:35:05 9    alleged that McDonald's is a competitor and there is no

10:35:08 10   special relationship that's permitted among competitors

10:35:12 11   under the *Stoll v. Wong* case which is 2 Cal at 4 1811 at

10:35:19 12   1825.

10:35:19 13          If there are no further questions, Your Honor.

10:35:23 14          THE COURT:  All right.  Go ahead and sit down.

10:35:26 15          MS. LIU:  Thank you.

10:35:27 16          THE COURT:  Plaintiff.  So let's go through some

10:35:32 17   of these specifics.  The agency direct financial interest,

10:35:41 18   show me, don't just give me argument, show me in the

10:35:45 19   complaint what you're relying on.

10:35:47 20          MR. WATKINS:  So with Your Honor's permission,

10:35:49 21   the two cases cited by McDonald's are quite different, and

10:35:52 22   it's *Cornette* --

10:35:52 23          THE COURT:  I didn't ask that.  I'm asking what

10:35:57 24   you're relying on in your complaint.  Show me the provisions

10:36:01 25   of the complaint that you're relying on.

10:36:04 1          MR. WATKINS:  Yes, Your Honor.  So as a

10:36:20 2   threshold issue the key provision that we're relying on is

10:36:25 3   the statement itself, that's paragraph 206 and 207 where --

10:36:30 4          THE COURT:  Hold on.  Let me get there.

10:36:38 5          So how is this -- how are these paragraphs which

10:36:42 6   essentially just say what's in the statement evidence of an

10:36:48 7   agency direct financial interest?

10:36:50 8          MR. WATKINS:  That's why I wanted to address the

10:36:52 9   case law first, Your Honor --

10:36:54 10         THE COURT:  You don't have anything -- I want to

10:36:56 11  see what is alleged and then you can tell me about the law.

10:36:59 12  So if you're saying you don't have anything because you

10:37:02 13  don't need it, that's fine.  You have to start with telling

10:37:05 14  me, do you have something that shows it or not?

10:37:08 15         MR. WATKINS:  What we have that shows it is the

10:37:10 16  representation that it's their product and the company

10:37:14 17  publishing an advertisement about their product is presumed

10:37:19 18  to have a financial interest --

10:37:20 19         THE COURT:  Why is this an advertisement?

10:37:22 20         MR. WATKINS:  Excuse me?

10:37:22 21         THE COURT:  Why is this an advertisement?

10:37:22 22         MR. WATKINS:  It's an advertisement because it

10:37:27 23  identifies Open Kitchen and promotes it.

10:37:30 24         THE COURT:  I'm sorry.  How is it an

10:37:32 25  advertisement for McDonald's?

10:37:34 1                    MR. WATKINS:  If you look at the text --

10:37:36 2                    THE COURT:  Open Kitchen is not a McDonald's

10:37:38 3    product, right?

10:37:39 4                    MR. WATKINS:  The complaint alleges that it is a

10:37:41 5    McDonald's product.

10:37:42 6                    THE COURT:  Through agency.

10:37:43 7                    MR. WATKINS:  Not through agency, Your Honor.

10:37:44 8                    THE COURT:  Where is it that you allege it's a

10:37:47 9    McDonald's product?

10:37:52 10                   MR. WATKINS:  So most directly at 206 and 207 at

10:37:57 11   the statement itself.

10:38:00 12                   THE COURT:  So show me in the statement, this is

10:38:03 13   a long statement, where do you say Open Kitchen is a

10:38:06 14   McDonald's product?

10:38:07 15                   MR. WATKINS:  So I'm quoting it here.  "We are

10:38:10 16   pleased to share that the McDonald's GSS equipment team in

10:38:15 17   partnership with the NSLT equipment subteam have been

10:38:18 18   working on a strategic connectivity solution with Taylor for

10:38:24 19   the Shake Sunday machine."  And then it describes the

10:38:27 20   machine.  And at the bottom of the statement, and now I'm on

10:38:30 21   paragraph 20 of the complaint where you can see at the

10:38:35 22   bottom the two contacts at McDonald's that should be

10:38:41 23   contacted if the recipient to the false ad has any

10:38:42 24   questions.

10:38:50 25                   THE COURT:  Okay.

10:39:02 1          MR. WATKINS:  And then if you look at
10:39:04 2   paragraph 29, we allege that McDonald's and Taylor still
10:39:07 3   have not released Open Kitchen.  And what I'm trying to
10:39:10 4   point the Court towards is the allegations that demonstrate
10:39:15 5   that it is both of their product.  I'm not pointed to the
10:39:18 6   allegations that say quote unquote, McDonald's has ownership
10:39:23 7   of the product because we didn't allege that.  What we did
10:39:26 8   do is demonstrate that the two parties were working jointly
10:39:29 9   together to develop the product and that they worked jointly
10:39:32 10  together in publishing and disseminating the false ad.
10:39:56 11  Paragraph 9 is another example.  McDonald's and Taylor spent
10:39:59 12  twenty years attempting to develop their own IOT solution
10:40:03 13  for the broken machines.  And then it says in paragraph 9,
10:40:06 14  McDonald's and Taylor's limited IOT product called Open
10:40:10 15  Kitchen has never launched.
10:40:12 16          If you go on to paragraph 13 we describe more
10:40:17 17  efforts of the two companies working together to develop
10:40:21 18  Open Kitchen, and we also included a screen shot where you
10:40:25 19  see Taylor executives suggesting that they should bring
10:40:30 20  Powerhouse Dynamics' name into the mix.  There is obviously
10:40:34 21  some type of corporate shell game going on between those
10:40:37 22  three, but I want to clarify we are not alleging an agency
10:40:40 23  relationship, we are not alleging an indirect and economic
10:40:44 24  interest either because it's not required under the law.
10:40:45 25  And I'm happy to continue going through the complaint

10:40:49 1    averments which must be credited at this stage that

10:40:53 2    establish that Kytch has alleged that the two companies were

10:40:56 3    --

10:40:56 4    THE COURT:  Right.  Let's move to the next one.

10:40:58 5    They say they're not soliciting anyone to buy things, so

10:41:03 6    it's not a commercial something.

10:41:07 7    MR. WATKINS:  Your Honor, they announced the

10:41:09 8    release date of their competing product.  They say that at

10:41:12 9    the end of Q1 2021 --

10:41:14 10    THE COURT:  You're saying oh look, McDonald's

10:41:19 11    and Kytch -- I'm sorry, McDonald's and Taylor were working

10:41:22 12    together on this product so McDonald's is tagged with being

10:41:26 13    a part of this product, it being partly their product, them

10:41:31 14    involved in the product, and they announced a time when this

10:41:34 15    product was going to be launched and the only reason they

10:41:36 16    would do that is so that people would use it.

10:41:39 17    MR. WATKINS:  Correct.  And that's the nature of

10:41:42 18    an advertisement itself, you are telling the relevant market

10:41:46 19    here, more than 10,000 fast food restaurant operators, that

10:41:50 20    either where Kytch's existing customers or prospective

10:41:55 21    customers for the Kytch solution and the Open Kitchen

10:41:57 22    product and you're encouraging them to discontinue using

10:42:01 23    Kytch in favor of your competing product.

10:42:03 24    Now, McDonald's counsel's argument that an

10:42:05 25    advertisement cannot be made to customers with whom you have

10:42:08 1   an existing relationship, that's just not the law.  And they

10:42:12 2   relied on the *Pandora* case for that proposition but it's

10:42:17 3   readily distinguishable.  In *Pandora* there was a competing

10:42:20 4   product that *Pandora* believed was trying to sell knockoffs

10:42:24 5   so *Pandora* corporate sent out a message to their

10:42:28 6   distributors that said hey, if you buy any of these

10:42:32 7   competitor's products then you're going to be violating the

10:42:35 8   noncompete that you signed with us.  That is not an ad

10:42:38 9   because the persons receiving the communication were

10:42:42 10  contractually obligated to avoid buying the competing

10:42:45 11  product.  Whereas here, that's not the case at all.  And

10:42:48 12  again, at the Rule 12(b)(6) stage we have to look at the

10:42:52 13  allegations in the complaint.  And timing and motivation

10:42:56 14  matters.

10:42:56 15        The Third Circuit has explained that it takes a

10:43:01 16  common sense approach to interpreting commercial speech and

10:43:04 17  determining whether it's an ad.  Here just two weeks before

10:43:08 18  the false ads were published, Kytch was gaining incredible

10:43:15 19  traction in the market after independent operators endorsed

10:43:18 20  the product.  And so the reason that McDonald's and Taylor

10:43:21 21  came out with their false ads is to stimi that growth and to

10:43:26 22  give them more time to develop their competing product.  And

10:43:29 23  that's alleged in the complaint and the arguments to the

10:43:33 24  contrary by counsel just aren't relevant for the Court's

10:43:36 25  consideration today.

10:43:37 1           And the final point that I was going to raise

10:43:40 2    initially relates to the *Arux* citation for the requirement

10:43:44 3    that there be a direct financial interest.  That citation is

10:43:48 4    actually from the dissent in that case.  The majority

10:43:54 5    opinion explained that there doesn't need to be a direct

10:43:57 6    financial interest because that's just not the nature of

10:44:01 7    commerce.  Here we're hearing arguments about who is and who

10:44:05 8    isn't getting certain sales, but this product isn't on the

10:44:08 9    market so there aren't any sales.

10:44:09 10           As an aside, we do have a pending subpoena in

10:44:13 11    the California state action and McDonald's has refused to

10:44:17 12    produce their contracts and agreements with Taylor that

10:44:21 13    would reflect the truth of their actual relationship.  But

10:44:26 14    certainly at this early stage, Kytch has alleged that it is

10:44:32 15    McDonald's products jointly with Taylor, Kytch has alleged a

10:44:36 16    sufficient economic motivation and the narrow construction

10:44:39 17    that's advanced by counsel just isn't the law.  I think the

10:44:44 18    Seventh Circuit's explanation in the *Jordan* case bears

10:44:47 19    mentioning as well as the Third Circuit's explanation in

10:44:52 20    *Facenda* that real explains that the question was a

10:44:54 21    substantial motivating factor in publishing the subject

10:44:58 22    statement, was it economically motivated.

10:45:01 23           And under *Handsome Brook*, the fact that this is

10:45:05 24    a not for profit company communicating to a potential

10:45:10 25    customer base, then the presumption is that they did have

sufficient economic motivation.  This is not a Better Business Bureau case, this is not a nonprofit case, this is not an academic journal case, this is a competitor that is driving Kytch out of the marketplace because it threatened a lucrative scheme that is alleged throughout the complaint.

And I wanted to if it's okay to transition back to the claim splitting issue, unless the Court had other questions.

THE COURT:  Go ahead.

MR. WATKINS:  Counsel represented that they don't anticipate arguing personal jurisdiction in the -- or challenging personal jurisdiction in the Northern District of California, but that's not sufficient.  The Court does have the ability to transfer the case *sua sponte* where it might have been had and that's under Section 1404(a), but the Court must be sure about all considerations of personal jurisdiction as a prerequisite to transferring.  We don't have that here and we certainly don't have it here based on the equivocations from McDonald's counsel.

Relatedly, I certainly understand the Court's concerns about conserving not just judicial resources, but also the parties' resources.  However, litigating this case against McDonald's and Taylor in the Northern District of California would not necessarily be more efficient for the parties or for the federal judiciary generally simply

10:46:47 1    because we're going to have multiple cases --

10:46:49 2         THE COURT:  But you guys are disagreeing on what

10:46:52 3    California law requires.  The Northern District of

10:46:54 4    California is in a much better position to determine -- I

10:46:58 5    mean, all of your claims you have two state claims based on

10:47:02 6    California law, the common law claims were all briefed based

10:47:06 7    on California law.  And the applications there, the

10:47:11 8    California courts are in a much better position to determine

10:47:14 9    that than I am.

10:47:15 10        MR. WATKINS:  So in response, Your Honor, the

10:47:19 11   California state action is tracking ahead of this case and

10:47:22 12   we're headed to trial in November.  As the Court explained

10:47:26 13   in her earlier comments, Judge Markman's opinion denying

10:47:30 14   Taylor's demur does provide some guidance in terms of how

10:47:35 15   these state court law issues will come out, but I don't

10:47:38 16   believe that McDonald's has identified any novel issues of

10:47:41 17   state law that require us to wait on adjudication from Judge

10:47:46 18   Markman and that would prevent us from moving forward in a

10:47:49 19   meaningful way --

10:47:49 20        THE COURT:  What if I view these cases as all

10:47:52 21   related and they belong in a California court, how about if

10:47:56 22   I just stayed these cases pending the outcome of the

10:47:59 23   California state case?

10:48:01 24        MR. WATKINS:  A stay is abstention under

10:48:05 25   *McKenna*.

10:48:05 1          THE COURT:  No, I'm not talking about

10:48:07 2    abstention, I'm talking about staying using my discretion to

10:48:11 3    deal with my docket.

10:48:13 4          MR. WATKINS:  Colorado River was a stay.  It

10:48:16 5    counts as abstention.  Kytch has filed federal claims in

10:48:20 6    this court and in *McKenna*, the Third Circuit reversed a

10:48:24 7    trial court for determining that the stay was appropriate

10:48:28 8    under its inherent powers and that it was not an extension

10:48:32 9    that required analysis under Colorado River.  That's black

10:48:35 10   letter law in the Federal Circuit.  It revisited the point

10:48:39 11   in 2021 in the Ferina case.

10:48:42 12         THE COURT:  Let me ask you this.  If I stay the

10:48:44 13   case and you appeal it and go to the Third Circuit, if the

10:48:47 14   Third Circuit comes back and says well, you shouldn't have

10:48:50 15   stayed it, it's going to be after those cases were -- after

10:48:54 16   the cases probably have already been tried in California,

10:48:58 17   right?

10:48:59 18         MR. WATKINS:  The rule of law matters and we're

10:49:01 19   urging the Court to apply controlling law.  There is another

10:49:05 20   consideration related to the Court's efficiencies concern

10:49:09 21   that I would like to bring to your attention.  If we had

10:49:12 22   filed the federal Lanham Act claims against Taylor in the

10:49:14 23   Alameda County action, the only way that that case could

10:49:18 24   have stayed together is if every single defendant consented

10:49:21 25   to removal to the Northern District of California.  Had that

10:49:25 1    not happened, then we would have had piecemeal litigation

10:49:29 2    against Tyler Gamble and TF Group in Alameda County before

10:49:34 3    Judge Markman.

10:49:35 4              THE COURT:  Tell me about the *Mohammand* case.

10:49:38 5              MR. WATKINS:  The *Mohammand* case comes out the

10:49:41 6    wrong way, Judge.

10:49:42 7              THE COURT:  And you're only relying on *Walton*,

10:49:45 8    if *Walton* says this, you can't split against cases in the

10:49:47 9    same court, it doesn't say anything about whether you can --

10:49:51 10   whether splitting can occur between federal and state court,

10:49:55 11   right?

10:49:55 12             MR. WATKINS:  So not exactly, Your Honor, *Walton*

10:49:58 13   -- we're relying on the controlling law in the Third Circuit

10:50:02 14   is *Walton* which describes the rule.  *Mohammand* comes out the

10:50:07 15   wrong way and determines that is not claim splitting.

10:50:10 16             THE COURT:  Was *Mohammand*, is it still good law?

10:50:14 17             MR. WATKINS:  No, Your Honor, I don't -- one

10:50:16 18   second, please.  *Mohammand* is in the Middle District of

10:50:20 19   Florida and it was applying 11th Circuit law.  There is a

10:50:25 20   Southern District of Florida case that comes out the other

10:50:28 21   way, but the 11th Circuit's claim splitting rules are messy,

10:50:31 22   there is a lot of confusion on point, but whatever it is,

10:50:34 23   it's certainly not persuasive here and it certainly doesn't

10:50:37 24   overcome the requirements of *Walton*.  There were two other

10:50:40 25   cases mentioned.  I would like to clarify this same court

confusion that seems to be occupying the arguments from
Taylor's counsel.  We're still talking about the notion of
abstention unless the two related actions are in the same
court.  In other words, in *Hannah*, *Sparks* and *Herbert*, those
were the three cases that counsel mentioned --

THE COURT:  I get it, I know, those were
district court to district court.  I get it, and I think
counsel made that point clear.  And then when I asked where
he had something between them, he cited to *Hannah* -- I mean
to *Mohammand*.  What I'm not understanding is I don't read
the Third Circuit cases as saying it cannot apply.  I'm
reading them as saying when it does apply, but I'm not
seeing anything that specifically says and this is the only
instance where it applies.

MR. WATKINS:  Well, then, let's look at the
policy rationale.  Those cases uniformly explain that the
purpose of the claim splitting rule is to bar a plaintiff
from circumventing adverse rulings.  Typically those adverse
rulings are motions to amend.  Sometimes they're motions for
summary judgment and sometimes they are motions to dismiss.
And the key case relied on by Taylor is the *Moore* case.  In
that case a pro se prisoner sued to access the prison
library.  The case was dismissed and he later filed the
exact same claim in the exact same court.  That was improper
claim splitting.  Two other consideration is the remedy

10:52:16 1  that's provided in *Walton*.  One of them is consolidation of

10:52:19 2  the action.  Given the federalism --

10:52:23 3              THE COURT:  Are you not circumventing the

10:52:26 4  decision in California on your motion to amend?

10:52:29 5              MR. WATKINS:  We won that motion, Your Honor.

10:52:31 6              THE COURT:  I know.

10:52:32 7              MR. WATKINS:  The improper circumvention -- so

10:52:36 8  yes, I would --

10:52:37 9              THE COURT:  I get it, this whole thing, there is

10:52:39 10 something about it that just seems off to me that there is

10:52:48 11 some real forum shopping going on and I get it that

10:52:51 12 plaintiff gets to choose its forum, but there is something

10:52:54 13 that just seems off here where the defendants tell you what

10:53:00 14 they're going to do and you're like okay, let's just move it

10:53:03 15 over to Delaware.  And we get to do what we want to do even

10:53:09 16 though we are creating huge inefficiencies for the Court.

10:53:15 17             MR. WATKINS:  So just as a reminder, we would be

10:53:19 18 dealing with three courts again, right?  Potentially the

10:53:23 19 District of Delaware against McDonald's.  We'll see how that

10:53:26 20 jurisdictional fight goes if it exist.  The Northern

10:53:29 21 District of California against Taylor with a Lanham Act

10:53:33 22 claim there.  And the state court action against Tyler

10:53:36 23 Gamble and the TF Group.  I certainly understand the Court's

10:53:40 24 concerns about judicial economy, but Kytch is the master of

10:53:44 25 its complaint and there is not a single citation to

precedented in this circuit or otherwise where suing a

defendant where they're incorporated is improper forum

shopping.  This is a home game for the --

THE COURT:  It is improper forum shopping

because you had a forum to bring the case.  You had the

ability to bring the case.  And you said oh, wait, I don't

want to be in the Northern District of California, I want to

be someplace else, so I'm going to split off a claim that is

-- has an identical set of facts underlying it and bring it

out to Delaware.  That's where the forum shopping aspect

comes in.  It's not -- I mean, you could have sued Taylor

originally, maybe here, I don't know, but it's the way that

you have done this to break off the claim and then say oh,

it's all in Delaware now, when it's just because you were --

you were dealing with a forum aspect out there.

MR. WATKINS:  Your Honor, Kytch is almost

bankrupt.  We're fighting this case against defendants --

THE COURT:  Well, if you're almost bankrupt I

don't know why you want to be following -- having lawyers

flying out to Delaware for everything.  We have rules that

you have to bring people to Delaware for depositions.

MR. WATKINS:  We're happy to show up in Delaware

for anything that the Court requires.  Again, I understand

the Court's concern, but we were presented with the

difficult choice, that was three litigations versus two, we

10:55:14 1    picked two.  There is no principle of law that bars --

10:55:16 2                THE COURT:  You didn't pick two, you still have

10:55:19 3    three.

10:55:19 4                MR. WATKINS:  What's the third, Your Honor?

10:55:20 5                THE COURT:  You have Alameda, you have

10:55:22 6    McDonald's, and you have Taylor out here.  You have not

10:55:26 7    consolidated anything, right, so you have three.

10:55:29 8                MR. WATKINS:  In three different courts, Your

10:55:32 9    Honor.  And we're hopeful that consolidation is granted

10:55:36 10   here.  And listen, I certainly understand your concern about

10:55:38 11   the economics and there are tools in your arsenal to make

10:55:42 12   sure that we proceed in a way that is consistent with those

10:55:46 13   values.  We can have streamline discovery, et cetera, but

10:55:49 14   before the Court can issue a stay, before the Court can

10:55:53 15   abstain, the Court must satisfy the stringent requirements

10:55:58 16   under Colorado River.

10:56:00 17                THE COURT:  Tell me exactly what those

10:56:02 18   requirements are.

10:56:02 19                MR. WATKINS:  The threshold question is whether

10:56:04 20   the two litigations are parallel.  And Taylor spends a lot

10:56:07 21   of time identifying the relevant facts that have overlap --

10:56:11 22                THE COURT:  Don't argue them, tell me what the

10:56:12 23   considerations are and --

10:56:14 24                MR. WATKINS:  Yes, Your Honor.  The threshold

10:56:16 25   question is whether the two proceedings are parallel.  Do

10:56:22 1     you want me to address them one at a time or go through all

10:56:25 2     of them?

10:56:26 3              THE COURT:  Tell me all of the things and then

10:56:28 4     we can address them.

10:56:28 5              MR. WATKINS:  The first factor and most

10:56:30 6     important factor is a strongly articulated congressional

10:56:34 7     policy against piecemeal litigation that applies in this

10:56:39 8     specific context.  So that's the first factor.

10:56:44 9              THE COURT:  Okay.

10:56:45 10             MR. WATKINS:  The second is the order in which

10:56:47 11    the tribunal obtained and exercised jurisdiction.

10:56:54 12             THE COURT:  Okay.

10:56:54 13             MR. WATKINS:  The third is assertion of

10:56:56 14    jurisdiction over *res*.

10:57:00 15             THE COURT:  Okay.

10:57:04 16             MR. WATKINS:  The fourth is inconvenience of a

10:57:06 17    federal forum.

10:57:11 18             THE COURT:  Okay.

10:57:14 19             MR. WATKINS:  The fifth is whether federal law

10:57:18 20    governs the federal case.  And the sixth is adequacy of the

10:57:31 21    state forum.

10:57:32 22             THE COURT:  Okay.

10:57:38 23             MR. WATKINS:  May I address them in turn, Your

10:57:40 24    Honor?

10:57:40 25             THE COURT:  Sure.

10:57:41 1          MR. WATKINS:  The cases are not parallel.  The

10:57:42 2   question isn't whether there is overlap between the factual

10:57:49 3   assumption.  The question is whether Kytch can obtain full

10:57:52 4   relief in the California state case.  As an obvious matter

10:57:56 5   the California court is limited in its injunctive power and

10:58:00 6   can only issue an injunction within the --

10:58:05 7          THE COURT:  You were happy to bring the case out

10:58:06 8   there until you found out that you were going to wind up in

10:58:09 9   federal court; right?

10:58:11 10          MR. WATKINS:  I wouldn't say happy, Your Honor.

10:58:13 11   Kytch did not volunteer for any of this, and we would --

10:58:18 12          THE COURT:  You asked for permission to add a

10:58:21 13   Lanham Act claim in the California state court; right?

10:58:24 14          MR. WATKINS:  Yes, Judge.

10:58:27 15          THE COURT:  You didn't say oh, hey, we're going

10:58:31 16   to bring this one separately in the Northern District;

10:58:34 17   right?

10:58:35 18          MR. WATKINS:  Correct.

10:58:38 19          THE COURT:  So you were happy to have the state

10:58:41 20   court deal with it until it became clear that there was

10:58:45 21   going to be a strategic disadvantage, right?

10:58:49 22          MR. WATKINS:  It's a different case, Your Honor.

10:58:51 23          THE COURT:  You were happy to have the state

10:58:52 24   court deal with it until you found out that they were going

10:58:56 25   to remove it.  Right?  You just told me earlier the reason

10:59:01 1   that you didn't go forward with it was because they told you

10:59:05 2   they were going to remove it.  I'm just asking to confirm

10:59:09 3   what you told me earlier.

10:59:10 4           MR. WATKINS:  Your Honor, we did not assert the

10:59:14 5   federal Lanham Act claim in Alameda County.  The purpose of

10:59:18 6   that was to avoid removal to the Northern District of

10:59:21 7   California.

10:59:22 8           THE COURT:  So originally you wanted to have

10:59:24 9   that claim included in the case in Alameda County, right?

10:59:27 10           MR. WATKINS:  Yes, Your Honor.

10:59:28 11           THE COURT:  So you were happy to have the state

10:59:30 12   court handle that case when you thought that it would be

10:59:34 13   handled all together, the whole litigation in Alameda

10:59:39 14   County, right?

10:59:39 15           MR. WATKINS:  We were prepared to proceed under

10:59:42 16   those circumstances, Your Honor, but in the parallel

10:59:44 17   question under Colorado River, the plaintiff's subjective

10:59:48 18   satisfaction isn't the question, the question is whether the

10:59:51 19   state is an appropriate remedy for all of the issues in the

10:59:54 20   case.  So we believe that the parallel factor isn't

11:00:01 21   satisfied.

11:00:02 22           THE COURT:  You have some other better factors I

11:00:03 23   think than that one.

11:00:05 24           MR. WATKINS:  Yes, Your Honor.  In the Third

11:00:07 25   Circuit -- and this was the only factor briefed by Taylor

11:00:10 1   because it is dispositive.  If the Court is leaning towards

11:00:14 2   abstention which is dismissal without prejudice or a stay,

11:00:18 3   then it must identify a strongly articulated congressional

11:00:23 4   policy against piecemeal litigation that applies to these

11:00:28 5   specific facts.  In Colorado River, the strong congressional

11:00:33 6   policy was the McCarran Amendment and relates to the state's

11:00:39 7   right to regulate their own natural resources.  Here,

11:00:42 8   Congress has created an unfair competition statute that

11:00:46 9   gives Kytch the right to file this in federal court.  And

11:00:49 10  that --

11:00:50 11          THE COURT:  Isn't it interesting that Congress

11:00:52 12  also allows this to have -- allows the statute to be

11:00:56 13  litigated in state courts?

11:00:58 14          MR. WATKINS:  Your Honor, it's interesting but

11:00:59 15  it certainly doesn't advance a strong congressional policy

11:01:03 16  that the case should be adjudicated in state court to the

11:01:08 17  exclusion of federal court.

11:01:09 18          THE COURT:  What do I need to make it a strong

11:01:11 19  policy, Congress has to say that we strongly say that you

11:01:14 20  can file it in state court?  I mean, most federal statutes

11:01:19 21  you hear in federal court, so it's kind of interesting to me

11:01:22 22  that we have this statute that's like hey, you can file it

11:01:25 23  in state court, you can file it in federal court.

11:01:28 24          MR. WATKINS:  So at best, at best it's a wash,

11:01:31 25  but the type --

11:01:32 1          THE COURT:  What do I need for strongness?

11:01:35 2          MR. WATKINS:  The real question is specifically

11:01:37 3  applied to these facts because to the extent that any cause

11:01:41 4  of action that Congress grants, federal jurisdiction and

11:01:46 5  concurrent state jurisdiction, at best that means that it

11:01:50 6  can be satisfied in either court, but if you look at the

11:01:56 7  securities context there are some specific carve outs from

11:01:59 8  the declaratory judgment act where Congress can explicitly

11:02:03 9  say this type of dispute is better resolved in the state

11:02:06 10  court.  They did not do that here and the only attempt that

11:02:09 11  Taylor makes to identify a strongly articulated federal

11:02:14 12  policy is an appellant California court that generally says

11:02:17 13  that California has some of the strongest consumer

11:02:20 14  protection statutes in the country.  The California

11:02:23 15  intermediate appellant court isn't Congress and there is no

11:02:26 16  reason whatsoever that indicates that Congress would prefer

11:02:29 17  that litigants file Lanham Act claims in state court to the

11:02:35 18  exclusion of federal court.  If anything, it's the opposite.

11:02:38 19  And there is not a single case where abstention was found on

11:02:42 20  those grounds, at least none that I have been able to find

11:02:42 21  and none that have been cited by defendant.

11:02:42 22          Would you like to move on to the next?

11:02:51 23          Your Honor, actually, you granted a stay --

11:02:52 24  sorry, I don't mean to interrupt you.

11:02:57 25          THE COURT:  Go ahead.

MR. WATKINS:  You granted a stay in a situation

that I think really identifies where such a course of action

makes sense.  It was an enforcement action, I believe there

was a Delaware state issue, state subpoena that had been

issued and in a parallel state proceeding, the parties were

litigating the validity of that state subpoena.  You stayed

the case and explained that the state court's decision in

that subpoena dispute would ultimately resolve all of the

issues that would potentially be before you.  I think that's

a great example of deference to the state court in a way

that Congress has articulated that makes sense, but here we

don't have any of those concerns, we're not waiting on any

kind of ruling from the appellant court in California or

otherwise to clarify any of these issues.

Moving on to the next factor, the order in which

the tribunals obtained and exercised jurisdiction.  We're

very close in time on that factor, and I think it's probably

a wash.  The California court assumed jurisdiction over --

by the way, Your Honor, for this inquiry's purpose we're

talking about the false advertising law claim specifically

and not the state court action in general.  And so the false

advertising law claim was filed, I believe it was less than

a week before this lawsuit, and so those would be considered

essentially contemporaneous.

The third factor isn't present because there is

11:04:36 1   no *res* here, there is no property, and that's another

11:04:41 2   example where when a state is adjudicating property rights

11:04:46 3   over property within its borders, federal abstention makes a

11:04:50 4   lot more sense, but that's not present here.

11:04:52 5          The fourth is inconvenience of the federal

11:04:55 6   forum.  That weighs against abstention for the reasons I

11:04:58 7   stated before.  This is a home game for the defendants.

11:05:01 8   Whether federal law governs the federal case, that weighs

11:05:05 9   against abstention because the only claim before this Court

11:05:08 10  against Taylor is a federal Lanham Act claim being litigated

11:05:12 11  in the federal forum.

11:05:14 12         We talked a little bit about the final factor

11:05:17 13  which is adequacy of the state forum.  Again, the

11:05:21 14  plaintiff's subjective satisfaction isn't really the

11:05:24 15  question, it's whether the state court forms a sufficient

11:05:27 16  vehicle to resolve the entire dispute.  This sixth factor

11:05:32 17  weighs against abstention for a few reasons.  The California

11:05:37 18  forum may be inadequate because Kytch could be deprived of

11:05:43 19  its federal right to a jury under California's equity first

11:05:48 20  rule.  Taylor has been actively advocating to deprive Kytch

11:05:52 21  of its right to a jury and that has not yet been litigated

11:05:58 22  before Judge Markman.  And we already talked a little bit

11:06:02 23  about the inadequacy of remedy, given not only that

11:06:04 24  California could -- California's injunctive relief would be

11:06:07 25  limited to that state's borders, but the false advertising

11:06:11 1   law claim does not allow Kytch to recover compensatory

11:06:16 2   damages.  And again, these factors are viewed very

11:06:23 3   suspiciously and carefully.  The Court should exercise

11:06:30 4   abstention in a scrooge-like fashion in order to honor its

11:06:34 5   obligation that is virtually unflagging to hear federal

11:06:38 6   court cases that are appropriately before it.

11:06:45 7          And Judge, in the Ferina case, the plaintiff was

11:06:48 8   pro se and had some problems navigating these complex

11:06:52 9   issues.  We're dealing with pretty substantive and

11:06:55 10  complicated federal court questions.  I brought my fed

11:07:00 11  courts textbook and this really does seem like a question

11:07:02 12  from fed courts.  And if the Court does have additional

11:07:05 13  questions, I'm happy to answer them, but the amicus brief

11:07:10 14  filed in that case really lays out these factors and

11:07:13 15  explains in the Third Circuit as required under *Ryan v.*

11:07:16 16  *Johnson,* if the reason for granting abstention is to avoid

11:07:20 17  piecemeal litigation, there must be a strong congressional

11:07:23 18  policy that is articulated in this specific context that

11:07:28 19  demonstrates that Congress wants the dispute to be resolved

11:07:33 20  in the state court to the exclusion of the federal court.

11:07:36 21  We don't have that here.

11:07:40 22          THE COURT:  Okay.  So I guess I want to hear

11:07:46 23  from Taylor.  I'm not worried about abstention, but on the

11:07:52 24  claim splitting, you heard his response, Northern got it

11:07:56 25  wrong, Southern District said something different and

11:08:01 1   apparently according to him the law in the 11th Circuit on

11:08:04 2   claim splitting is different than the law in the Third

11:08:07 3   Circuit, so why is that not correct?

11:08:10 4           MR. MICHELETTI:  Your Honor, pretty much nothing

11:08:12 5   that my friend from Kytch said about claim splitting is

11:08:17 6   accurate.  Everything I said in my opening was accurate,

11:08:20 7   Your Honor, just to go through it as best I can piecemeal

11:08:23 8   here.  In reference to Walter, or excuse me, *Walton* and

11:08:30 9   *McKenna*, there is nothing in those cases as the court

11:08:33 10  acknowledged or indicated that says claim splitting cannot

11:08:37 11  apply when it's between two different courts.  There is

11:08:40 12  nothing in those cases that say that.  Those are limited

11:08:43 13  factual circumstances in those cases back-to-back filing in

11:08:47 14  the same court, but that doesn't limit the doctrine itself.

11:08:51 15  And I say that because -- and that's also true when it comes

11:08:55 16  to the cases that I referenced earlier about parallel

11:09:00 17  federal proceedings have claim splitting issues as well, and

11:09:03 18  in the doctrine applying there.

11:09:07 19           *Hanna* is another case that was referenced which

11:09:09 20  specifically cites to *Walton* and *McKenna* when applying claim

11:09:11 21  splitting to cases pending in two separate federal courts.

11:09:17 22  Right?  So again, there is nothing about *Walton* and *McKenna*

11:09:22 23  that says that it's limited in the Third Circuit only to one

11:09:25 24  court situations.  So that's part one.

11:09:28 25           The *Mohammand* case, I'm looking at it, I'll give

11:09:33 1    you the cite, Your Honor --

11:09:33 2                THE COURT:  I have it.  I have it pulled up.

11:09:36 3    The *Mohammand* case is very clear, but what I understood is

11:09:39 4    one, it was wrong, but two, something to the effect that

11:09:43 5    well, the law in the Third Circuit on claim splitting is all

11:09:48 6    up in the air or it's different, and I do see that they have

11:09:53 7    two factors that go into -- they look at in claim splitting,

11:09:59 8    in the Third Circuit there is three.  Why is it not looking

11:10:03 9    at claim splitting in a different way than the Third

11:10:07 10   Circuit?

11:10:07 11               MR. MICHELETTI:  The two elements are basically

11:10:09 12   the same as the three elements in the Third Circuit, Your

11:10:11 13   Honor, that's the bottom line.  Again, the most powerful

11:10:14 14   element of any claim splitting analysis in any forum is

11:10:18 15   whether or not there are claims arising out of the same

11:10:21 16   nucleus of offered facts, the same facts and circumstances.

11:10:24 17   And the court applied the two tests, element tests in

11:10:28 18   *Mohammand* that's accurate, but it's not all dissimilar and

11:10:32 19   quite frankly analogous to our three-part test -- and it's

11:10:36 20   good law, Your Honor.

11:10:37 21               THE COURT:  They quote from the 10th and the

11:10:39 22   11th Circuit and say the rule against claim splitting

11:10:42 23   requires the plaintiff to assert all of its causes of action

11:10:45 24   arising from a common set of facts in one lawsuit.  Is that

11:10:49 25   the law in the Third Circuit?

11:10:51 1          MR. MICHELETTI:  That's my understanding, that's

11:10:53 2     how the doctrine works.

11:10:54 3          THE COURT:  By spreading claims around multiple

11:10:57 4     lawsuits in other courts or before other judges, parties

11:11:00 5     waste scarce judicial resource and undermine the efficient

11:11:04 6     and comprehensive in judicial cases.  Is that consistent

11:11:08 7     with the law in the Third Circuit?

11:11:10 8          MR. MICHELETTI:  Right, that's the policy under

11:11:12 9     the claim splitting doctrine, Your Honor, anywhere.  It's to

11:11:16 10    avoid piecemeal litigation and to require a plaintiff that's

11:11:21 11    got a case with all the same operative facts to file their

11:11:25 12    claims in that case.  And the reason for not doing it here,

11:11:30 13    they asked to do it, I just want to point out again, Your

11:11:33 14    Honor I think understands this, but they requested leave to

11:11:36 15    file the Lanham Act claim that we have here before the Court

11:11:39 16    against Taylor in the state court action in California and

11:11:43 17    the piece that's missing on that is the court granted it.

11:11:47 18         THE COURT:  I know.  I asked him that and he

11:11:50 19    said well, we told the court they didn't have to.  And I

11:11:52 20    said didn't you waste the court's by doing that and he

11:11:52 21    granted it and when you filed the Amended Complaint, it

11:11:52 22    didn't include it.

11:11:52 23         MR. MICHELETTI:  Understood, Your Honor.

11:12:01 24         THE COURT:  His response, which I guess is

11:12:02 25    accurate, which is look, we told the judge he didn't have

11:12:05 1   to, it's not our fault that he did it.

11:12:07 2          MR. MICHELETTI:  I think practically speaking I

11:12:09 3   think they just took the claim out of the complaint that

11:12:12 4   they filed out in California and dropped it in here.  That's

11:12:16 5   exactly the claim splitting that the claim splitting

11:12:20 6   doctrine is supposed to prevent, but it's also forum

11:12:23 7   shopping.  And that's also a side benefit and the reason for

11:12:27 8   the claim splitting doctrine and how it applies, right, it's

11:12:30 9   to prevent that.  You're basically hedging your bets between

11:12:33 10  two different courts on the same facts.

11:12:35 11         We know that the California case is going to

11:12:37 12  trial at the end of November, right, shortly after

11:12:40 13  Thanksgiving.  All of the same facts and issues by their own

11:12:46 14  admission underlying the state false advertising claim there

11:12:50 15  are the same facts and issues that are here under the Lanham

11:12:53 16  Act claim.  So in short order in California there will be a

11:12:57 17  resolution one way or the other, right, so that could be --

11:13:00 18  on the same theory that *res judicata* is sort of associated

11:13:04 19  with the claim splitting doctrine, *res judicata* could apply

11:13:07 20  to a final judgement which could be brought here to either

11:13:11 21  dismiss or be addressed by the court on the same claim.  And

11:13:14 22  it's one of the reasons why the claim splitting doctrine

11:13:17 23  exist.  *Res* judicata is there for the end game, claim

11:13:20 24  splitting is to cut off the piecemeal litigation at the

11:13:22 25  outset.  But all of this at their own request was supposed

11:13:29 1    to be happening in the California state court until they

11:13:33 2    decides they wanted to forum shop.  And so for that reason

11:13:35 3    we think the claim splitting doctrine and all the other

11:13:38 4    reasons I said, *Mohammand* is good law, all the other cases I

11:13:42 5    cited are all good law on this issue, and for all of those

11:13:45 6    reasons, the case can be dismissed on the claim splitting.

11:13:49 7              Let me turn to the stay argument that they made.

11:13:51 8    They tried to undercut the Court's inherent ability and

11:13:54 9    discretion to stay cases in deference to state action.

11:13:58 10             THE COURT:  They didn't sort of.

11:14:00 11             MR. MICHELETTI:  They pretty much took it

11:14:02 12   head-on, Your Honor.

11:14:02 13             THE COURT:  They said you have to deal with our

11:14:04 14   case whether you want to or not.

11:14:07 15             MR. MICHELETTI:  I think if the Court looks at

11:14:10 16   *Calamos Asset Management, First American Title Insurance*

11:14:11 17   *Company* and the *Univar* case, every single one of those cases

11:14:13 18   is the district court deferring to state court, right, under

11:14:17 19   its own discretion, not Colorado River, not abstention or

11:14:24 20   Colorado River stay, but under the Court's own discretion.

11:14:27 21   The Court has that ability and as that power to do it.  It's

11:14:30 22   something that frequently used to come up in mergers and

11:14:33 23   acquisitions matters where you would have a state court

11:14:37 24   action in Delaware and you have a federal court action

11:14:40 25   somewhere else, and it comes up even now in other

11:14:42 1    circumstances as well.  It's not outside the Court's

11:14:45 2    discretion.  The Court has the discretion to stay the case

11:14:48 3    and it could end there, too.  The case could stop there as

11:14:51 4    well based on that stay.  We think, though, that the case

11:14:54 5    should be dismissed --

11:14:55 6            THE COURT:  So the argument made by the

11:14:56 7    plaintiff was well, in Colorado River the court said hey,

11:15:01 8    I'm doing it in my discretion and the appellant court said

11:15:05 9    yeah, no, you can't do that, you have to follow this other,

11:15:10 10   you know, Colorado River protocol.

11:15:19 11           MR. MICHELETTI:  I don't think that's well

11:15:19 12   stated, Your Honor, and I think it's played out by all these

11:15:21 13   subsequent cases I have identified where the federal court

11:15:23 14   is deferring to the state court within its own discretion,

11:15:27 15   staying, not dismissing, staying.  And Your Honor, again,

11:15:30 16   it's for a very legitimate common sense reason because

11:15:35 17   again, the same underlying facts are going to be fixed after

11:15:39 18   trial in the California state action at the end of this

11:15:42 19   year, or presumably after the trial towards the end of this

11:15:45 20   year.  Right?  And so the idea that we should have two

11:15:49 21   parallel actions on the same facts and circumstances, a

11:15:51 22   point that they admit readily in their answering brief, the

11:15:55 23   same facts and circumstances apply in both cases warrants in

11:15:59 24   favor of a stay.  So that there is not two piecemeal pieces

11:16:02 25   of litigation moving forward parallel where you could have

11:16:06 1    inconsistent judgements.  All those are reasons to stay,

11:16:09 2    Your Honor.

11:16:10 3            Now, before I get to the Colorado River stay,

11:16:16 4    Your Honor, I don't know if you want me to go through the

11:16:18 5    various points.  We didn't advocate for a Colorado River

11:16:21 6    stay or abstention dismissal in our papers.  We would be

11:16:25 7    happy to brief up the points if Your Honor wants something

11:16:28 8    from us in writing on it.

11:16:29 9            THE COURT:  Nope, I don't want anything more in

11:16:32 10   writing.  You guys have given me plenty.  And it's not like

11:16:35 11   you didn't know that this was an issue.  They raised it all

11:16:39 12   over there.

11:16:39 13           MR. MICHELETTI:  I think it's something that

11:16:41 14   they raised.  I don't think it's dispositive on the Court's

11:16:44 15   discretion to stay, that was our argument and we're sticking

11:16:47 16   with that argument, Your Honor.  But if you go through the

11:16:49 17   Colorado River elements quickly, I'll do it quickly, Your

11:16:54 18   Honor.  Again, I didn't have the benefit of briefing these,

11:16:57 19   and the court doesn't have the benefit of that in writing

11:16:59 20   from us, but I'll just point out the proceedings are clearly

11:17:02 21   parallel, they involve the same facts, same evidence, they

11:17:07 22   admitted as much by trying to effectively argue that the

11:17:12 23   Lanham Act should be taking place in the California state

11:17:14 24   court action.  Right?  They basically alleged in the motion

11:17:18 25   for leave to amend that it was parallel, all rising from the

11:17:23 1    same series of events.  That one is clearly not in their

11:17:27 2    favor.  In terms of the policy against piecemeal litigation,

11:17:30 3    I think I have beaten a dead horse on that issue, but that

11:17:34 4    clearly is what is occurring here.  That's what's unfolding

11:17:37 5    here.

11:17:37 6              THE COURT:  But that's not specific to this

11:17:39 7    case, that's a policy in all cases.

11:17:43 8              MR. MICHELETTI:  No, I think that's true, I

11:17:45 9    think that's true, but there clearly has been -- our

11:17:48 10   argument here, Your Honor, and I think based on the unique

11:17:51 11   circumstances of the request to add a federal act claim in

11:17:54 12   the state court and the state court said yes, and they

11:17:58 13   decided on their own volition to forum shop for reasons to

11:18:00 14   file that claim here in state court, that's effectively I

11:18:06 15   think the definition of piecemeal litigation.  But, you

11:18:09 16   know, the federal forum is not exclusive for Lanham Act

11:18:15 17   claims, right?  So I think it sort of all fits together and

11:18:18 18   I think this one weighs in our favor as well in terms of

11:18:21 19   piecemeal litigation.

11:18:22 20             In terms of jurisdiction, California was

11:18:27 21   obviously filed first.  It's well ahead.  The idea that

11:18:30 22   under the way that my friend at Kytch tried to sort of slice

11:18:34 23   and dice this one seemingly trying to say it's like in

11:18:38 24   equipoise or something like that, it doesn't seem to make

11:18:40 25   sense at all.  That one weighs in our favor as well.  The

11:18:43 1   assertion of jurisdiction over *res*, it's not an issue here.

11:18:47 2           Inconvenience of a federal forum, yes, Taylor is

11:18:54 3   a Delaware company and it's incorporated here, but its

11:18:58 4   operations are in California.  We admitted that at the

11:19:02 5   outset of the hearing, Your Honor, concerning personal

11:19:04 6   jurisdiction, so California has jurisdiction.  That's where

11:19:07 7   our people are located.  It would be better -- any forum

11:19:11 8   with convenience here, it would be California for Taylor as

11:19:13 9   opposed to Delaware where it's just incorporated.

11:19:16 10          And in terms of does federal law govern, yes,

11:19:23 11  but again, the state court can consider it.  I feel like

11:19:26 12  that one at most is in equipoise.  The federal legislature

11:19:28 13  didn't limit the Lanham Act claim to be filed exclusively in

11:19:32 14  federal court.  And, in fact, the state court in California

11:19:34 15  accepted it as part of an amended pleading that Kytch asked

11:19:37 16  for before they decided to forum shop.

11:19:40 17          In terms of the adequately of the state forum, I

11:19:43 18  don't see how they can stand in front of Your Honor and

11:19:45 19  suggest that the California state court was inadequate.

11:19:48 20  They asked to have it be part of their amended pleading in

11:19:52 21  California and the court said yes, so certainly they seemed

11:19:55 22  to have thought that it was adequate.  And I apologize, my

11:20:02 23  apologies, I misspoke, I said Taylor is in California,

11:20:02 24  Taylor is actually in Illinois, but the location that's at

11:20:02 25  issue here with the equipment is in California.  I

11:20:07 1    apologize, their operations, the witnesses are there, et

11:20:11 2    cetera, so that's what makes it more convenient.

11:20:15 3            MR. TABAIE:  Your Honor, to be clear, our point

11:20:16 4    is the evidence and the witnesses will already be in

11:20:18 5    California for the state court action.  The equipment is in

11:20:21 6    -- there is issues in Georgia, Illinois, all over the place

11:20:25 7    in the country.

11:20:28 8            MR. MICHELETTI:  And then finally, Your Honor,

11:20:30 9    on the substance of the Taylor act claim against Taylor --

11:20:33 10   excuse me, the Lanham Act claim against Taylor, I'm content

11:20:37 11   to rest on the papers.  I feel like I have spoken enough.  I

11:20:40 12   think the Court has the gist of our arguments, and so unless

11:20:43 13   you have any other questions for me, I'll stand down at the

11:20:46 14   moment.

11:20:46 15           THE COURT:  Okay.

11:20:48 16           MR. MICHELETTI:  Thank you, Your Honor.

11:20:49 17           THE COURT:  Thank you.

11:20:54 18           MS. LUI:  Your Honor, can McDonald's briefly

11:20:56 19   address a couple of points from Kytch's argument?

11:21:01 20           THE COURT:  Yes.  Just give me one second.

11:21:02 21           Go ahead.

11:21:11 22           MS. LUI:  Thank you, Your Honor.  So I first

11:21:18 23   wanted to start with the *Arux* case.  Kytch has conflated two

11:21:21 24   of the factors in its analysis of the *Arux* case.  There is

11:21:27 25   one, a specific element under the *Gordon & Breach* test as to

11:21:32 1    whether the speech is advocating consumers purchase

11:21:38 2    defendant's product.  The majority in *Arux* was very clear

11:21:43 3    that it has to show either agency or a direct financial

11:21:47 4    impact.  And it adopted the dissent well taken analysis that

11:21:52 5    these two requirements need to be shown, and the majority

11:21:57 6    remanded that specific factor back to the district court for

11:22:01 7    consideration because the district court had not looked into

11:22:03 8    it.

11:22:04 9            Separately there is a commercial speech element

11:22:07 10    that looks at economic motivation.  And there, the analysis

11:22:13 11    has to be as to whether the speaker speaks from economic

11:22:19 12    motivation.  Those two items were conflated in Kytch's

11:22:22 13    argument.  It's clear from the *Arux* case that to make a

11:22:26 14    product defendant's own product when you are not a

11:22:29 15    manufacturer or seller of that product, you need to show --

11:22:32 16            THE COURT:  What if they've alleged you're a

11:22:35 17    co-developer?

11:22:36 18            MS. LUI:  There needs to be more Your Honor,

11:22:38 19    under *Arux*, agency or direct financial impact.  There is no

11:22:42 20    -- the specific allegations that Kytch pointed out such as

11:22:47 21    paragraphs 9 and 29, all they say is --

11:22:49 22            THE COURT:  They pointed out the actual content

11:22:52 23    of the thing that said we are developing it in partnership

11:22:57 24    with Taylor and, you know, it's this great thing.  So why

11:23:02 25    isn't that enough to at least get you to you're doing it

11:23:07 1    together, you're encouraging people presumably for financial

11:23:12 2    motive to engage with this product?

11:23:16 3          MS. LUI:  Your Honor, as to development, the

11:23:20 4    context here and context does matter in these Lanham Act

11:23:24 5    cases, is that McDonald's is a franchisor, it works with

11:23:28 6    particular suppliers to ensure that the equipment is

11:23:32 7    suitable to McDonald's restaurants' needs.  That is no

11:23:36 8    different than my working with my architect to plan my house

11:23:41 9    correctly for my needs.

11:23:43 10          THE COURT:  And I get it and you might be right,

11:23:47 11    but you're making factual representations to me that are not

11:23:50 12    part of the record.  And while that might be great for a

11:23:53 13    summary judgment, I don't know what I'm supposed to do with

11:23:57 14    that on a motion to dismiss.

11:23:58 15          MS. LUI:  Again, it goes back to the *Arux* test

11:24:02 16    and the tests related to that.  There are no allegations of

11:24:04 17    any direct financial impact that McDonald's will obtain from

11:24:08 18    the sale of Open Kitchen.  There is not one dime that

11:24:12 19    McDonald's earned.  There is nothing in the complaint that

11:24:14 20    alleges that.  There is nothing in the complaint that

11:24:16 21    alleges that McDonald's is the manufacturer or the seller.

11:24:19 22    Simply stating that working together or developing together

11:24:24 23    for a solution, that is not enough under the *Arux* case and

11:24:26 24    under *Twombly Iqbal* as well, there needs to be well-pleaded

11:24:30 25    facts to make it plausible.  That's not plausible at this

11:24:37 1    time particularly when under paragraph 929 and the like,

11:24:41 2    they are conflating simply McDonald's and Taylor together to

11:24:45 3    argue that it is an Open Kitchen product.  And that's not

11:24:49 4    permitted under the law under the *Frompovicz v. Niagara* case

11:24:54 5    that we cite as well as the *Bret Binder v. Weststar* case.

11:24:58 6              THE COURT:  You need to wrap this up because you

11:25:01 7    were only supposed to be twenty-five minutes and we're now

11:25:04 8    going on ninety.

11:25:05 9              MS. LUI:  Thank you, Your Honor.

11:25:06 10             One quick point I would like to make related to

11:25:08 11   the economic financial motivation is that Kytch cannot

11:25:13 12   ignore that throughout the complaint, their allegations that

11:25:18 13   it's Taylor and PHD's product, that's paragraphs 117, 123,

11:25:24 14   126, 130, 132, 142 to 143, 155 to 156, 230 to 237 and 248.

11:25:36 15   Those all show that it is an Open Kitchen -- Open Kitchen is

11:25:40 16   a Taylor and Powerhouse Dynamic product.

11:25:43 17             Thank you, Your Honor.

11:25:44 18             THE COURT:  All right.  Thank you.  So I need to

11:25:47 19   go back and do a little bit of research.  So I'm going to

11:25:50 20   ask you guys to come back at 3:30 and I'll let you know

11:25:55 21   where we are and whether I can rule on these or we need to

11:25:58 22   do some more work on our side.

11:26:01 23             COURT CLERK:  All rise.

11:26:02 24             (A brief recess was taken.)

15:50:56 25             THE COURT:  Please be seated.  Thank you for

15:50:59 1    your patience.

15:51:01 2              Thank you for the arguments today.  They were

15:51:02 3    very good and very helpful.  First let's address the Taylor

15:51:06 4    motion.  Taylor moves to dismiss the complaint, arguing that

15:51:09 5    the assertion here of the false advertising claim under the

15:51:12 6    Lanham Act constitutes claim splitting.  Specifically,

15:51:15 7    Taylor argues that the current claim involves the same

15:51:18 8    subject matter at the same time against the same defendant

15:51:20 9    as in the California state court and therefore this case

15:51:22 10   involves improper claim splitting.

15:51:24 11             There is no question that the same parties are

15:51:26 12   involved and the litigation is occurring at the same time.

15:51:30 13   Kytch questions whether the subject matter is the same and I

15:51:32 14   will address that in a moment.

15:51:34 15             But as an initial matter, Kytch argues that

15:51:36 16   Taylor is making an abstention argument because claim

15:51:39 17   splitting does not apply as the actions are not pending in

15:51:41 18   the same court.  Kytch relies on *Walton v. Easton*

15:51:46 19   *Corporation*, 563 F.2d 66 (3d Cir. 1977) and *McKenna v. City*

15:51:52 20   *of Philadelphia,* 304 F.App'x 89 (3d Cir. 2008), asserting

15:51:58 21   that claim splitting can only apply in scenarios where cases

15:52:02 22   are pending in the same court.  I think that Kytch reads

15:52:04 23   these cases too narrowly.  In *Walton* and *McKenna*, the Third

15:52:09 24   Circuit held that Plaintiff did not have the right to

15:52:12 25   maintain two separate actions involving the same subject

15:52:14 1    matter at the same time in the same court against the same

15:52:17 2    defendant.  The litigations in both *Walton* and *McKenna* were

15:52:22 3    pending in the Eastern District of Pennsylvania.

15:52:24 4        Since then, however, other courts in this

15:52:26 5    circuit have applied claim splitting to cases brought in

15:52:29 6    different district courts.  Taylor cites a number of thighs

15:52:32 7    these cases in its brief, but I will mention for example,

15:52:35 8    *Hannah v. S-L Distribution Company,* No. 19-2143, 2021 WL

15:52:41 9    51581 (M.D. Pa. Jan. 6, 2021) and *Yost v. Anthem Life*

15:52:49 10    *Insurance Company*, No. 18-1522, 2019 WL 3451507 (M.D. Pa.

15:53:01 11    July 30, 2019).

15:53:01 12        I also think that *Mohammand v. HSBC Bank N.A.,*

15:53:09 13    No. 616CV22313ORL41DCI, 2018 WL 8576597 (M.D. Fla. March 27,

15:53:24 14    2018) resonates.  In that case, Plaintiffs opposed dismissal

15:53:26 15    arguing that claim splitting does not apply to parallel

15:53:29 16    state and federal litigation.  Quoting 10th and 11th Circuit

15:53:33 17    cases, the *Mohammand* court noted, however, that "[t]he rule

15:53:35 18    against claim splitting requires a plaintiff to assert all

15:53:38 19    of its causes of action arising from a common set of facts

15:53:41 20    in one lawsuit.  By spreading claims around in multiple

15:53:44 21    lawsuits in other courts or before other judges, parties

15:53:47 22    waste scarce judicial resources and undermine the efficient

15:53:51 23    and comprehensive disposition of cases."  That articulation

15:53:54 24    of the rationale between claim splitting is consistent with

15:53:57 25    the law in the Third Circuit.  And certainly Delaware state

15:53:59 1   courts as well have examined claim splitting issues between

15:54:03 2   cases filed in federal and state courts, for example in

15:54:08 3   *Maldonado v. Flynn,* 417 A.2d 378 (Del. Ch. 1980).

15:54:13 4            I see no reason that the rationale behind those

15:54:16 5   cases does not apply in this case where the subject matter

15:54:20 6   of the claim being asserted involves the same series of

15:54:23 7   events currently pending in California against the same

15:54:25 8   defendant.  Indeed, Plaintiff sought and was given leave to

15:54:30 9   amend its complaint in California to add the very claim

15:54:33 10  brought here and based on Plaintiff's own representations

15:54:35 11  about the interrelatedness of the claims.  Thus, I do not

15:54:39 12  think that the differences in courts takes this out of the

15:54:42 13  realm of claim splitting.

15:54:43 14           Now to whether the same subject matter is

15:54:46 15  involved.  As Judge Stark recognized in *Power Integrations,*

15:54:49 16  *Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CIV.

15:54:56 17  08-309-JJF-LPS, 2009 WL 2016436, at *3 (D.Del. July 9,

15:55:10 18  2009), the "rule against duplicative litigation, also

15:55:13 19  referred to as 'claim splitting,' is the 'other action

15:55:15 20  pending' facet of the *res judicata* doctrine."  Just as *res*

15:55:20 21  *judicata* applies to a second action filed after a final

15:55:23 22  adjudication of the first action, the rule against claim

15:55:25 23  splitting applies when two suits are pending at the same

15:55:28 24  time.  For that I will also cite to *Nafar v. Hollywood*

15:55:32 25  *Tanning Systems, Inc.,* 339 F. App'x 216 (3d Cir. 2009)

(noting that claim splitting is generally prohibited by the doctrine of *res judicata*).

Thus, to determine whether a suit is barred by the doctrine against claim splitting, courts borrow from the test for claim preclusion and ask whether assuming the first suit were final could the second suit be precluded for claim preclusion.

In particular, when looking at whether successive lawsuits involve the same cause of action, courts look to:

"(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;

(2) whether substantially the same evidence is presented in the two actions;

(3) whether the two suits involve infringement of the same rights; and

(4) whether the two suits arise out of the same transactional nucleus of facts."  That's from *Moore v. Williams*, No. CIV.A. 01-330 JJF, 2004 WL 332834, at *4 (D.Del. Feb. 19, 2004).  Of those, the fourth criteria is "the most important."

Here, Taylor argues that Kytch has already conceded in this action and the California state action arise out of the same transactional nucleus of facts.

15:56:51 1   Indeed, at page 3 of its motion to amend its complaint in

15:56:54 2   the California state action which sought to add multiple

15:56:57 3   claims, including the Lanham Act claim, Kytch represented

15:57:01 4   that the additional claims, including the Lanham Act claim,

15:57:04 5   "relate[d] to the same series of events."  In a decision on

15:57:07 6   a motion for demurrer, the California state court understood

15:57:11 7   Kytch's arguments to "be an affirmation that its claims

15:57:14 8   arise 'out of the same transaction, occurrences, or series

15:57:17 9   of transactions or occurrences'" and granted Kytch's motion

15:57:21 10  to amend the complaint and add the additional claims.

15:57:24 11          Kytch amended its complaint in the California

15:57:26 12  state action, but did not add the false advertising claim

15:57:33 13  under the Lanham Act, and instead filed that claim here.

15:57:36 14  Because Kytch represented that the Lanham Act claim arose

15:57:40 15  from the same set of facts and actually sought to add it in

15:57:44 16  the original California state action, the fourth and most

15:57:47 17  important criteria is met.

15:57:49 18          Turning to the other factors, the first factor

15:57:51 19  is neutral because there is yet to be any judgment in the

15:57:54 20  California state action as it is still pending.  As for the

15:57:56 21  second factor, because the Lanham Act claim is based on the

15:58:00 22  same series of events and set of facts as the California

15:58:02 23  state action, substantially the same evidence will be

15:58:02 24  presented.  As to the third factor, Kytch alleges an

15:58:02 25  infringement of the same rights in this action and the

15:58:12 1    California state action.  In California, Kytch alleges in

15:58:15 2    paragraphs 459 and 465 that "[t]he advertisements contained

15:58:19 3    false claims about the Kytch Solution and Taylor's own

15:58:23 4    products and services," such that these claims "eroded

15:58:27 5    Kytch's good will among consumers and caused Kytch's

15:58:31 6    customers and prospective customers to cease doing business

15:58:35 7    with Kytch.  This led to the virtual destruction of Kytch's

15:58:35 8    business and provided [Taylor] with ill-gotten gains."

15:58:39 9    Kytch makes the same allegations here in support of its

15:58:41 10   Lanham Act claim in paragraphs 281, 287-88.

15:58:48 11          For the foregoing reasons, I find that Kytch has

15:58:50 12   split its claims between this Court and the California state

15:58:53 13   court, and therefore dismiss this complaint.  I do so

15:58:55 14   without prejudice though and I suppose that Kytch may try to

15:58:59 15   bring the Lanham Act claim in the California state action if

15:59:01 16   the court there allows it to do that and if Kytch is so

15:59:05 17   inclined.

15:59:06 18          Next as to McDonald's, I think that there are

15:59:10 19   sufficient allegations in this complaint at this time to

15:59:12 20   state the various causes of action other than negligent

15:59:12 21   interference with business expectancy.  I agree with the

15:59:12 22   California court who addressed this issue vis-a-vis Taylor

15:59:22 23   that Plaintiff has not pleaded a special relationship with

15:59:25 24   Kytch that would impose a duty of care of McDonald's.

15:59:28 25          So I am going to grant the motion to dismiss on

15:59:28 1  that ground and deny it with respect to the others.

15:59:31 2          Now, all of that being said, I am not convinced

15:59:34 3  that this case should go forward now or whether it should be

15:59:39 4  going forward here versus in California, so I am going to

15:59:43 5  allow the parties a chance to talk with each other about the

15:59:46 6  status of things and submit to me briefing on two issues:

15:59:50 7  1) whether we should stay this case waiting for something to

15:59:54 8  happen in the other case involving Taylor, which is clearly

16:00:02 9  for the party that was active in this matter and 2) whether

16:00:07 10  we should transfer it to California given that the legal

16:00:10 11  issues and facts are largely based there.  You guys can go

16:00:13 12  and talk and come up with a briefing schedule to address

16:00:17 13  those issues should either party want to address that.

16:00:22 14          All right?  Anything else that we need to

16:00:24 15  discuss while we are here?  Could you say it on the record,

16:00:33 16  maybe?

16:00:34 17          MR. WATKINS:  No, Your Honor.

16:00:35 18          MS. LUI:  No, Your Honor.

16:00:37 19          MR. MICHELETTI:  No, Your Honor.  Thank you.

16:00:38 20          THE COURT:  Thank you.  I will have an order

16:00:42 21  entered on the docket and we will use the transcript as the

16:00:42 22  basis for my order.

16:00:51 23          COURT CLERK:  All rise.

24          (Court adjourned at 4:00 p.m.)

25

1      I hereby certify the foregoing is a true and
2   accurate transcript from my stenographic notes in the proceeding.

3                              /s/ Dale C. Hawkins
                              Official Court Reporter
4                              U.S. District Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'claim** [1] - 61:19
**'other** [1] - 61:19
**'out** [1] - 63:8

## /

**/s** [1] - 66:3

## 0

**01-330** [1] - 62:20
**08-309-JJF-LPS** [1] -
61:17

## 1

**1** [3] - 16:18, 62:11,
65:7
**10,000** [1] - 27:19
**10:00** [1] - 1:17
**10th** [2] - 47:21, 60:16
**11** [1] - 16:19
**1107** [1] - 19:21
**1116** [1] - 19:21
**1117** [1] - 19:21
**1134** [1] - 21:16
**1151** [1] - 21:16
**117** [1] - 58:13
**11th** [5] - 33:19, 33:21,
46:1, 47:22, 60:16
**12(b)(6** [1] - 28:12
**123** [1] - 58:13
**126** [1] - 58:14
**13** [1] - 26:16
**130** [1] - 58:14
**132** [1] - 58:14
**1404(a** [1] - 30:15
**142** [1] - 58:14
**143** [1] - 58:14
**155** [1] - 58:14
**156** [1] - 58:14
**18-1522** [1] - 60:10
**1811** [1] - 23:11
**1825** [1] - 23:12
**19** [1] - 62:21
**19-2143** [1] - 60:8
**1977** [1] - 59:19
**1980)** [1] - 61:3

## 2

**2** [3] - 23:11, 62:14,
65:9
**20** [1] - 25:21
**2004** [1] - 62:20
**2004)** [1] - 62:21
**2007** [1] - 20:22
**2008** [1] - 59:20

**2009** [3] - 61:17,
61:18, 61:25
**2016436** [1] - 61:17
**2018** [2] - 60:13, 60:14
**2019** [1] - 60:10
**2019)** [1] - 60:11
**2020** [2] - 21:21, 22:10
**2021** [4] - 27:9, 32:11,
60:8, 60:9
**2023** [1] - 1:16
**206** [2] - 24:3, 25:10
**207** [2] - 24:3, 25:10
**216** [1] - 61:25
**22-279(MN** [1] - 1:6
**22-606(MN** [1] - 1:11
**230** [2] - 18:5, 58:14
**237** [2] - 18:5, 58:14
**248** [1] - 58:14
**27** [1] - 60:13
**2781246** [1] - 20:22
**281** [1] - 64:10
**287-88** [1] - 64:10
**29** [4] - 1:16, 21:16,
26:2, 56:21

## 3

**3** [3] - 61:17, 62:16,
63:1
**30** [1] - 60:11
**304** [1] - 59:20
**328** [2] - 22:20, 23:3
**329** [2] - 22:20, 23:4
**33** [1] - 22:8
**332834** [1] - 62:20
**339** [1] - 61:25
**345150
7** [1] - 60:10
**378** [1] - 61:3
**3:30** [1] - 58:20
**3d** [4] - 19:20, 59:19,
59:20, 61:25

## 4

**4** [4] - 21:16, 23:11,
62:18, 62:20
**417** [1] - 61:3
**437** [1] - 19:20
**459** [1] - 64:2
**461** [1] - 19:20
**465** [1] - 64:2
**473** [1] - 19:20
**4:00** [1] - 65:24

## 5

**51581** [1] - 60:9
**563** [1] - 59:19

## 6

**6** [1] - 60:9
**616CV22313ORL41
DCI** [1] - 60:13
**66** [1] - 59:19

## 8

**844** [1] - 1:19
**8576597** [1] - 60:13
**89** [1] - 59:20

## 9

**9** [5] - 20:22, 26:11,
26:13, 56:21, 61:17
**929** [1] - 58:1
**985** [1] - 19:21

## A

**A.2d** [1] - 61:3
**a.m** [1] - 1:17
**Abe** [1] - 3:15
**ability** [4] - 30:14,
36:6, 50:8, 50:21
**able** [1] - 42:20
**ABRAHAM** [1] - 2:19
**abstain** [1] - 37:15
**abstention** [25] - 7:21,
8:2, 8:7, 9:6, 10:25,
14:10, 14:11, 14:23,
14:24, 31:24, 32:2,
32:5, 34:3, 41:2,
42:19, 44:3, 44:6,
44:9, 44:17, 45:4,
45:16, 45:23, 50:19,
52:6, 59:16
**abstentions** [1] -
14:24
**academic** [1] - 30:3
**accepted** [1] - 54:15
**access** [1] - 34:22
**according** [2] - 11:1,
46:1
**accurate** [5] - 46:6,
47:18, 48:25, 66:1
**acknowledged** [1] -
46:10
**acquisitions** [1] -
50:23
**act** [3] - 42:8, 53:11,
55:9
**Act** [33] - 3:22, 4:11,
7:9, 9:11, 9:25,
10:10, 10:14, 16:11,
17:3, 17:14, 17:15,
21:2, 32:22, 35:21,
39:13, 40:5, 42:17,

44:10, 48:15, 49:16,
52:23, 53:16, 54:13,
55:10, 57:4, 59:6,
63:3, 63:4, 63:13,
63:14, 63:21, 64:10,
64:15
**acted** [1] - 21:24
**action** [41] - 4:10,
4:24, 6:21, 12:18,
13:9, 13:10, 22:24,
29:11, 31:11, 32:23,
35:2, 35:22, 42:4,
43:2, 43:3, 43:21,
47:23, 48:16, 50:9,
50:24, 51:18, 52:24,
55:5, 60:19, 61:19,
61:21, 61:22, 62:9,
62:13, 62:24, 63:2,
63:12, 63:16, 63:20,
63:23, 63:25, 64:1,
64:15, 64:20
**actions** [5] - 34:3,
51:21, 59:17, 59:25,
62:15
**active** [1] - 65:9
**actively** [1] - 44:20
**actual** [3] - 18:18,
29:13, 56:22
**ad** [4] - 25:23, 26:10,
28:8, 28:17
**add** [9] - 3:21, 4:10,
39:12, 53:11, 61:9,
63:2, 63:10, 63:12,
63:15
**addition** [1] - 16:24
**additional** [3] - 45:12,
63:4, 63:10
**additionally** [1] - 4:19
**address** [11] - 4:7,
21:3, 24:8, 38:1,
38:4, 38:23, 55:19,
59:3, 59:14, 65:12,
65:13
**addressed** [5] - 14:6,
15:9, 15:11, 49:21,
64:22
**addressing** [1] - 10:17
**adequacy** [2] - 38:20,
44:13
**adequate** [2] - 21:5,
54:22
**adequately** [1] - 54:17
**adjourned** [1] - 65:24
**adjudicated** [1] -
41:16
**adjudicating** [1] - 44:2
**adjudication** [2] -
31:17, 61:22
**admission** [1] - 49:14
**admit** [1] - 51:22

**admitted** [2] - 52:22,
54:4
**adopted** [1] - 56:4
**ads** [2] - 28:18, 28:21
**advance** [1] - 41:15
**advanced** [4] - 13:10,
14:4, 14:16, 29:17
**adverse** [3] - 10:20,
34:18
**advertise** [1] - 17:22
**advertisement** [12] -
17:1, 17:4, 17:13,
19:4, 20:23, 24:17,
24:19, 24:21, 24:22,
24:25, 27:18, 27:25
**advertisements** [1] -
64:2
**advertising** [10] -
16:7, 17:3, 17:17,
17:21, 43:20, 43:22,
44:25, 49:14, 59:5,
63:12
**advocate** [1] - 52:5
**advocating** [2] -
44:20, 56:1
**affiliate** [1] - 18:3
**affirmation** [1] - 63:7
**afford** [1] - 7:14
**agency** [10] - 18:17,
18:24, 22:11, 23:17,
24:7, 25:6, 25:7,
26:22, 56:3, 56:19
**agree** [3] - 5:15, 7:23,
64:21
**agreement** [1] - 22:9
**agreements** [1] -
29:12
**ahead** [8] - 7:5, 11:13,
23:14, 30:9, 31:11,
42:25, 53:21, 55:21
**air** [1] - 47:6
**Alameda** [15] - 4:9,
4:19, 6:21, 9:4, 9:13,
9:17, 9:24, 10:6,
15:18, 32:23, 33:2,
37:5, 40:5, 40:9,
40:13
**allegation** [4] - 18:8,
18:21, 20:4, 21:19
**allegations** [18] - 17:9,
17:25, 18:12, 18:20,
19:13, 20:6, 22:4,
22:6, 22:17, 23:2,
26:4, 26:6, 28:13,
56:20, 57:16, 58:12,
64:9, 64:19
**allege** [8] - 18:17,
19:10, 19:15, 19:25,
21:5, 25:8, 26:2,
26:7

**alleged** [16] - 4:15, 15:10, 18:14, 18:25, 19:11, 21:23, 23:6, 23:9, 24:11, 27:2, 28:23, 29:14, 29:15, 30:5, 52:24, 56:16
**allegedly** [1] - 21:20
**alleges** [7] - 19:22, 20:7, 25:4, 57:20, 57:21, 63:24, 64:1
**alleging** [2] - 26:22, 26:23
**allow** [2] - 45:1, 65:5
**allows** [3] - 41:12, 64:16
**almost** [3] - 15:10, 36:16, 36:18
**alone** [1] - 8:5
**Alto** [1] - 3:16
**amend** [7] - 4:10, 34:19, 35:4, 52:25, 61:9, 63:1, 63:10
**Amended** [2] - 10:13, 48:21
**amended** [3] - 54:15, 54:20, 63:11
**Amendment** [1] - 41:6
**amendment** [1] - 10:12
**American** [2] - 14:1, 50:16
**amicus** [1] - 45:13
**Amy** [1] - 3:5
**AMY** [1] - 2:6
**analogous** [1] - 47:19
**analysis** [5] - 32:9, 47:14, 55:24, 56:4, 56:10
**Anne** [1] - 3:7
**ANNE** [1] - 2:10
**announced** [2] - 27:7, 27:14
**answer** [4] - 7:7, 16:5, 16:9, 45:13
**answering** [1] - 51:22
**Anthem** [1] - 60:9
**anticipate** [3] - 6:15, 6:20, 30:11
**anticipated** [1] - 5:21
**anticipating** [1] - 6:8
**anyway** [1] - 11:12
**apologies** [2] - 5:25, 54:23
**apologize** [2] - 54:22, 55:1
**App'x** [1] - 61:25
**appeal** [1] - 32:13
**APPEARANCES** [1] - 2:1
**appellant** [4] - 42:12,

42:15, 43:13, 51:8
**application** [1] - 14:18
**applications** [1] - 31:7
**applied** [3] - 42:3, 47:17, 60:5
**applies** [7] - 7:21, 34:14, 38:7, 41:4, 49:8, 61:21, 61:23
**apply** [13] - 8:8, 11:25, 13:15, 32:19, 34:11, 34:12, 46:11, 49:19, 51:23, 59:17, 59:21, 60:15, 61:5
**applying** [3] - 33:19, 46:18, 46:20
**approach** [1] - 28:16
**appropriate** [7] - 6:7, 7:20, 8:13, 11:5, 13:23, 32:7, 40:19
**appropriately** [1] - 45:6
**approval** [1] - 9:16
**architect** [1] - 57:8
**argue** [4] - 19:24, 37:22, 52:22, 58:3
**argued** [1] - 14:6
**argues** [1] - 59:7, 59:15, 62:23
**arguing** [3] - 30:11, 59:4, 60:15
**argument** [13] - 13:7, 13:21, 14:7, 23:18, 27:24, 50:7, 51:6, 52:15, 52:16, 53:10, 55:19, 56:13, 59:16
**arguments** [8] - 5:12, 13:4, 28:23, 29:7, 34:1, 55:12, 59:2, 63:7
**arise** [3] - 62:18, 62:25, 63:8
**arises** [2] - 13:13, 16:11
**arising** [3] - 47:15, 47:24, 60:19
**arose** [1] - 63:14
**ARPS** [1] - 2:18
**Arps** [1] - 3:13
**arsenal** [1] - 37:11
**articulated** [5] - 38:6, 41:3, 42:11, 43:11, 45:18
**articulation** [1] - 60:23
**Arux** [9] - 19:21, 29:2, 55:23, 55:24, 56:2, 56:13, 56:19, 57:15, 57:23
**aside** [1] - 29:10
**aspect** [2] - 36:10, 36:15

**aspects** [1] - 16:20
**assert** [3] - 40:4, 47:23, 60:18
**asserted** [2] - 9:11, 61:6
**asserting** [1] - 59:20
**assertion** [3] - 38:13, 54:1, 59:5
**Asset** [2] - 13:25, 50:16
**associated** [1] - 49:18
**assumed** [1] - 43:18
**assuming** [1] - 62:5
**assumption** [1] - 39:3
**attempt** [1] - 42:10
**attempting** [1] - 26:12
**attempts** [1] - 12:23
**attention** [2] - 7:15, 32:21
**authority** [4] - 7:23, 9:8, 12:13, 13:6
**authorization** [1] - 15:24
**averments** [1] - 27:1
**avoid** [6] - 10:20, 10:21, 28:10, 40:6, 45:16, 48:10
**avoiding** [1] - 8:6
**aware** [1] - 22:18

**B**

**back-to-back** [1] - 46:13
**bad** [1] - 10:3
**Bank** [2] - 12:14, 60:12
**bankrupt** [2] - 36:17, 36:18
**bankruptcy** [1] - 4:17
**bar** [1] - 34:17
**bare** [1] - 20:3
**barred** [1] - 62:3
**bars** [1] - 37:1
**base** [1] - 29:25
**based** [12] - 13:6, 14:17, 21:1, 30:18, 31:5, 31:6, 51:4, 53:10, 61:10, 63:21, 65:11
**basis** [3] - 13:17, 13:22, 65:22
**bears** [1] - 29:18
**beaten** [1] - 53:3
**became** [1] - 39:20
**become** [1] - 12:22
**BEFORE** [1] - 1:22
**beforehand** [1] - 10:12
**behalf** [2] - 3:8, 3:13

**behind** [1] - 61:4
**belong** [1] - 31:21
**belongs** [1] - 4:21
**benefit** [4] - 19:13, 49:7, 52:18, 52:19
**best** [6] - 11:20, 22:8, 41:24, 42:5, 46:7
**bets** [1] - 49:9
**Better** [1] - 30:1
**better** [5] - 31:4, 31:8, 40:22, 42:9, 54:7
**between** [13] - 5:7, 8:23, 12:23, 12:24, 26:21, 33:10, 34:9, 39:2, 46:11, 49:9, 60:24, 61:1, 64:12
**big** [2] - 7:13, 22:13
**Binder** [1] - 58:5
**bit** [3] - 44:12, 44:22, 58:19
**black** [1] - 32:9
**borders** [2] - 44:3, 44:25
**borrow** [1] - 62:4
**bot** [1] - 12:3
**bottom** [3] - 25:20, 25:22, 47:13
**breach** [1] - 5:1
**Breach** [3] - 17:24, 19:3, 55:25
**break** [1] - 36:13
**Bret** [1] - 58:5
**Brief** [11] - 16:13, 16:22, 16:25, 17:4, 17:10, 17:11, 18:1, 18:20, 19:11, 20:18, 21:21
**brief** [9] - 3:2, 8:13, 10:17, 20:16, 45:13, 51:22, 52:7, 58:24, 60:7
**briefed** [2] - 31:6, 40:25
**briefing** [3] - 52:18, 65:6, 65:12
**briefly** [2] - 21:3, 55:18
**bring** [12] - 8:18, 9:18, 9:25, 26:19, 32:21, 36:5, 36:6, 36:9, 36:21, 39:7, 39:16, 64:15
**bringing** [1] - 4:21
**brink** [1] - 4:16
**broken** [1] - 26:13
**Brook** [1] - 29:23
**brought** [6] - 6:21, 12:19, 45:10, 49:20, 60:5, 61:10
**Bureau** [1] - 30:2

**burgers** [1] - 19:7
**Business** [1] - 30:2
**business** [12] - 15:13, 15:14, 19:6, 20:16, 20:24, 20:25, 21:14, 22:16, 22:23, 64:6, 64:8, 64:21
**buy** [5] - 17:23, 19:5, 22:11, 27:5, 28:6
**buying** [1] - 28:10
**BY** [10] - 2:3, 2:5, 2:6, 2:6, 2:10, 2:13, 2:14, 2:18, 2:19, 2:19

**C**

**C.A** [2] - 1:6, 1:11
**Cal** [2] - 21:16, 23:11
**Calamos** [2] - 13:25, 50:16
**California** [83] - 3:16, 4:14, 5:3, 5:7, 5:8, 5:9, 5:16, 5:17, 6:6, 8:11, 8:16, 8:19, 8:24, 10:21, 11:2, 11:6, 13:10, 14:18, 15:9, 15:11, 15:20, 21:8, 29:11, 30:13, 30:24, 31:3, 31:4, 31:6, 31:7, 31:8, 31:11, 31:21, 31:23, 32:16, 32:25, 35:4, 35:21, 36:7, 39:4, 39:5, 39:13, 40:7, 42:12, 42:13, 42:14, 43:13, 43:18, 44:17, 44:24, 48:16, 49:4, 49:11, 49:16, 50:1, 51:18, 52:23, 53:20, 54:4, 54:6, 54:8, 54:14, 54:19, 54:21, 54:23, 54:25, 55:5, 59:9, 61:7, 61:9, 62:24, 63:2, 63:6, 63:11, 63:16, 63:20, 63:22, 64:1, 64:12, 64:15, 64:22, 65:4, 65:10
**California's** [2] - 44:19, 44:24
**cannot** [6] - 20:22, 21:12, 27:25, 34:11, 46:10, 58:11
**care** [1] - 64:24
**carefully** [1] - 45:3
**carve** [1] - 42:7
**case** [81] - 3:20, 4:13, 7:15, 7:24, 8:18, 8:24, 9:11, 10:22, 10:23, 12:14, 12:15,

14:3, 14:15, 18:24, 19:14, 19:20, 19:21, 23:11, 24:9, 28:2, 28:11, 29:4, 29:18, 30:2, 30:3, 30:14, 30:22, 31:11, 31:23, 32:11, 32:13, 32:23, 33:4, 33:5, 33:20, 34:21, 34:22, 34:23, 36:5, 36:6, 36:17, 38:20, 39:4, 39:7, 39:22, 40:9, 40:12, 40:20, 41:16, 42:19, 43:7, 44:8, 45:7, 45:14, 46:19, 46:25, 47:3, 48:11, 48:12, 49:11, 50:6, 50:14, 50:17, 51:2, 51:3, 51:4, 53:7, 55:23, 55:24, 56:13, 57:23, 58:4, 58:5, 59:9, 60:14, 61:5, 65:3, 65:7, 65:8

**cases** [42] - 3:20, 4:1, 8:4, 11:19, 11:21, 11:24, 12:11, 13:25, 23:21, 31:1, 31:20, 31:22, 32:15, 32:16, 33:8, 33:25, 34:5, 34:11, 34:16, 39:1, 45:6, 46:9, 46:12, 46:13, 46:16, 46:21, 48:6, 50:4, 50:9, 50:17, 51:13, 51:23, 53:7, 57:5, 59:21, 59:23, 60:5, 60:7, 60:17, 60:23, 61:2, 61:5
**CATHERINE** [1] - 2:13
**Catherine** [2] - 3:10, 15:16
**caught** [1] - 7:15
**caused** [1] - 64:5
**causes** [3] - 47:23, 60:19, 64:20
**cease** [1] - 64:6
**certain** [1] - 29:8
**certainly** [14] - 5:20, 7:11, 13:5, 16:1, 29:14, 30:18, 30:20, 33:23, 35:23, 37:10, 41:15, 54:21, 60:25
**certify** [1] - 66:1
**cetera** [2] - 37:13, 55:2
**Ch** [1] - 61:3
**challenging** [1] - 30:12
**Chamilia** [1] - 20:21
**chance** [1] - 65:5
**chipped** [2] - 12:15,

12:16
**choice** [3] - 5:19, 15:17, 36:25
**choose** [1] - 35:12
**choosing** [1] - 8:23
**Christopher** [1] - 16:18
**Cir** [3] - 59:19, 59:20, 61:25
**Circuit** [27] - 7:25, 9:8, 11:22, 12:10, 28:15, 32:6, 32:10, 32:13, 32:14, 33:13, 33:19, 34:11, 40:25, 45:15, 46:1, 46:3, 46:23, 47:5, 47:8, 47:10, 47:12, 47:22, 47:25, 48:7, 59:24, 60:16, 60:25
**circuit** [2] - 36:1, 60:5
**Circuit's** [3] - 29:18, 29:19, 33:21
**circumstance** [2] - 11:25, 14:11
**circumstances** [10] - 12:6, 13:13, 14:15, 40:16, 46:13, 47:16, 51:1, 51:21, 51:23, 53:11
**circumventing** [2] - 34:18, 35:3
**circumvention** [2] - 10:19, 35:7
**citation** [3] - 29:2, 29:3, 35:25
**cite** [6] - 11:22, 12:11, 23:2, 47:1, 58:5, 61:24
**cited** [4] - 23:21, 34:9, 42:21, 50:5
**cites** [2] - 46:20, 60:6
**city** [1] - 59:19
**CIV** [1] - 61:16
**CIV.A** [1] - 62:20
**claim** [106] - 3:22, 4:11, 7:9, 9:5, 9:8, 9:17, 9:21, 9:25, 10:10, 10:14, 10:15, 10:17, 10:25, 11:15, 11:25, 12:4, 12:15, 12:16, 12:21, 13:1, 13:6, 13:18, 13:20, 16:11, 17:3, 21:2, 21:17, 21:23, 22:2, 23:7, 30:7, 33:15, 33:21, 34:17, 34:24, 34:25, 35:22, 36:8, 36:13, 39:13, 40:5, 40:9, 43:20, 43:22, 44:9, 44:10, 45:1,

45:24, 46:2, 46:5, 46:10, 46:17, 46:20, 47:5, 47:7, 47:9, 47:14, 47:22, 48:9, 48:15, 49:3, 49:5, 49:8, 49:14, 49:16, 49:19, 49:21, 49:22, 49:23, 50:3, 50:6, 53:11, 53:14, 54:13, 55:9, 55:10, 59:5, 59:6, 59:7, 59:10, 59:16, 59:21, 60:5, 60:15, 60:18, 60:24, 61:1, 61:6, 61:9, 61:13, 61:22, 62:1, 62:4, 62:5, 62:6, 63:3, 63:4, 63:12, 63:13, 63:14, 63:21, 64:10, 64:15
**claims** [33] - 5:1, 7:8, 9:10, 9:16, 9:20, 12:19, 12:23, 15:12, 16:8, 21:3, 21:4, 21:11, 22:3, 22:6, 31:5, 31:6, 32:5, 32:22, 42:17, 47:15, 48:3, 48:12, 53:17, 60:20, 61:11, 63:3, 63:4, 63:7, 63:10, 64:3, 64:4, 64:12
**CLARE** [1] - 2:5
**Clare** [1] - 3:5
**clarify** [3] - 26:22, 33:25, 43:14
**clause** [1] - 5:2
**clear** [14] - 7:25, 17:15, 17:24, 18:16, 19:8, 21:7, 21:13, 22:12, 34:8, 39:20, 47:3, 55:3, 56:2, 56:13
**clearly** [5] - 52:20, 53:1, 53:4, 53:9, 65:8
**CLERK** [2] - 58:23, 65:23
**client** [1] - 16:2
**client's** [1] - 15:24
**close** [1] - 43:17
**co** [2] - 4:23, 56:17
**co-defendants** [1] - 4:23
**co-developer** [1] - 56:17
**colleague** [2] - 3:9, 3:14
**Colorado** [7] - 7:21, 14:20, 32:4, 32:9, 37:16, 40:17, 41:5, 50:19, 50:20, 51:7,

51:10, 52:3, 52:5, 52:17
**coming** [1] - 3:23
**comments** [1] - 31:13
**commerce** [1] - 29:7
**commercial** [9] - 17:4, 17:17, 17:21, 19:2, 19:9, 20:23, 27:6, 28:16, 56:9
**COMMERCIAL** [1] - 1:13
**Commercial** [1] - 2:21
**common** [5] - 28:16, 31:6, 47:24, 51:16, 60:19
**communicating** [1] - 29:24
**communication** [2] - 20:24, 28:9
**companies** [2] - 26:17, 27:2
**Company** [4] - 14:1, 50:17, 60:8, 60:10
**COMPANY** [1] - 1:13
**company** [3] - 24:16, 29:24, 54:3
**Compensation** [1] - 21:14
**compensatory** [1] - 45:1
**competing** [5] - 27:8, 27:23, 28:3, 28:10, 28:22
**competition** [1] - 41:8
**competitor** [2] - 23:9, 30:3
**competitor's** [1] - 28:7
**competitors** [1] - 23:10
**Complaint** [2] - 10:14, 48:21
**complaint** [40] - 4:10, 4:15, 9:20, 15:10, 15:11, 16:11, 17:8, 17:25, 18:2, 18:4, 19:1, 19:8, 19:25, 20:4, 20:6, 21:2, 21:5, 22:9, 22:21, 23:19, 23:24, 23:25, 25:4, 25:21, 26:25, 28:13, 28:23, 30:5, 35:25, 49:3, 57:19, 57:20, 58:12, 59:4, 61:9, 63:1, 63:10, 63:11, 64:13, 64:19
**complex** [1] - 45:8
**complicated** [1] - 45:10
**comprehensive** [2] - 48:6, 60:23

**Conaway** [2] - 3:8, 3:9
**CONAWAY** [1] - 2:10
**conceded** [1] - 62:24
**conceived** [1] - 13:3
**concern** [5] - 4:14, 16:20, 32:20, 36:24, 37:10
**concerned** [1] - 7:19
**concerning** [1] - 54:5
**concerns** [7] - 5:11, 6:3, 7:12, 8:5, 30:21, 35:24, 43:12
**conclusion** [1] - 20:4
**conclusory** [1] - 18:21
**concurrent** [1] - 42:5
**conduct** [1] - 4:15
**conducted** [1] - 10:8
**conference** [1] - 10:9
**confirm** [1] - 40:2
**conflated** [2] - 55:23, 56:12
**conflating** [1] - 58:2
**confusion** [2] - 33:22, 34:1
**Congress** [10] - 8:4, 41:8, 41:11, 41:19, 42:4, 42:8, 42:15, 42:16, 43:11, 45:19
**congressional** [2] - 38:6, 41:3, 41:5, 41:15, 45:17
**connectivity** [1] - 25:18
**consented** [1] - 32:24
**conserving** [2] - 7:12, 30:21
**consider** [1] - 54:11
**consideration** [4] - 28:25, 32:20, 34:25, 56:7
**considerations** [2] - 30:16, 37:23
**considered** [1] - 43:23
**consistent** [3] - 37:12, 48:6, 60:24
**consolidated** [1] - 37:7
**consolidation** [2] - 35:1, 37:9
**conspiracy** [1] - 17:2
**constitutes** [1] - 59:6
**construction** [1] - 29:16
**consumer** [1] - 42:13
**consumers** [3] - 17:23, 56:1, 64:5
**contact** [1] - 22:6
**contacted** [1] - 25:23
**contacts** [1] - 25:22
**contained** [1] - 64:2

**contemporaneous** [1] - 43:24
**content** [2] - 55:10, 56:22
**contested** [1] - 6:22
**contesting** [1] - 5:21
**context** [6] - 14:21, 38:8, 42:7, 45:18, 57:4
**continue** [1] - 26:25
**contract** [4] - 5:1, 5:2, 22:14, 22:25
**contracts** [1] - 29:12
**contractually** [1] - 28:10
**contrary** [1] - 28:24
**controlling** [2] - 32:19, 33:13
**convenience** [1] - 54:8
**convenient** [1] - 55:2
**convinced** [1] - 65:2
**core** [1] - 12:25
**Cornette** [2] - 19:19, 23:22
**corporate** [2] - 26:21, 28:5
**corporation** [2] - 6:5, 22:13
**Corporation** [2] - 2:16, 59:19
**CORPORATION** [1] - 1:7
**correct** [5] - 11:18, 27:17, 39:18, 46:3
**correctly** [2] - 4:9, 57:9
**counsel** [8] - 10:7, 28:24, 29:17, 30:10, 30:19, 34:2, 34:5, 34:8
**Counsel** [3] - 2:8, 2:15, 2:21
**counsel's** [1] - 27:24
**country** [3] - 4:22, 42:14, 55:7
**counts** [1] - 32:5
**County** [12] - 4:10, 4:19, 9:4, 9:13, 9:17, 9:24, 10:6, 32:23, 33:2, 40:5, 40:9, 40:14
**couple** [2] - 17:20, 55:19
**course** [1] - 43:2
**COURT** [119] - 1:1, 3:1, 3:6, 3:11, 3:17, 4:5, 4:20, 5:4, 5:14, 5:23, 6:2, 6:9, 6:12, 6:14, 6:17, 6:19,

6:23, 7:2, 7:5, 7:13, 8:9, 8:14, 9:1, 9:3, 9:5, 9:15, 9:23, 11:1, 11:7, 11:11, 11:20, 12:7, 13:17, 13:22, 14:9, 14:22, 14:24, 15:3, 15:7, 15:19, 15:23, 16:3, 17:7, 17:18, 23:14, 23:16, 23:23, 24:4, 24:10, 24:19, 24:21, 24:24, 25:2, 25:6, 25:8, 25:12, 25:25, 27:4, 27:10, 30:9, 31:2, 31:20, 32:1, 32:12, 33:4, 33:7, 33:16, 34:6, 35:3, 35:6, 35:9, 36:4, 36:18, 37:2, 37:5, 37:17, 37:22, 38:3, 38:9, 38:12, 38:15, 38:18, 38:22, 38:25, 39:7, 39:12, 39:15, 39:19, 39:23, 40:8, 40:11, 40:22, 41:11, 41:18, 42:1, 42:25, 45:22, 47:2, 47:21, 48:3, 48:18, 48:24, 50:10, 50:13, 51:6, 52:9, 53:6, 55:15, 55:17, 55:20, 56:16, 56:22, 57:10, 58:6, 58:18, 58:23, 58:25, 65:20, 65:23
**court** [111] - 3:21, 4:17, 4:24, 5:3, 6:21, 7:23, 8:1, 9:10, 9:13, 9:16, 9:21, 9:24, 10:3, 10:8, 10:9, 10:11, 10:20, 10:21, 11:16, 12:4, 12:5, 12:16, 12:17, 12:19, 12:20, 12:21, 12:24, 15:9, 15:11, 31:15, 31:21, 32:6, 32:7, 33:9, 33:10, 33:25, 34:4, 34:7, 34:24, 35:22, 39:5, 39:9, 39:13, 39:20, 39:24, 40:12, 41:9, 41:16, 41:17, 41:20, 41:21, 41:23, 42:6, 42:10, 42:12, 42:15, 42:17, 42:18, 43:10, 43:13, 43:18, 43:21, 44:15, 45:6, 45:10, 45:20, 46:9, 46:14, 46:24, 47:17, 48:16, 48:17, 48:19, 49:21, 50:1, 50:18, 50:23, 50:24, 51:7, 51:8, 51:13,

51:14, 52:19, 52:24, 53:12, 53:14, 54:11, 54:14, 54:19, 54:21, 55:5, 56:6, 56:7, 59:9, 59:18, 59:22, 60:1, 60:17, 63:6, 64:13, 64:16, 64:22
**court's** [2] - 43:7, 48:20
**Court's** [13] - 4:8, 7:11, 8:3, 14:7, 28:24, 30:20, 32:20, 35:23, 36:24, 50:8, 50:20, 51:1, 52:14
**courts** [20] - 11:24, 12:24, 31:8, 35:18, 37:8, 41:13, 45:11, 45:12, 46:11, 46:21, 48:4, 49:10, 60:4, 60:6, 60:21, 61:1, 61:2, 61:12, 62:4, 62:9
**created** [1] - 41:8
**creating** [1] - 41:8
**credited** [1] - 27:1
**criteria** [2] - 62:21, 63:17
**curious** [1] - 16:5
**current** [1] - 59:7
**customer** [1] - 29:25
**customers** [6] - 22:19, 27:20, 27:21, 27:25, 64:6
**cut** [1] - 49:24

## D

**D.Del** [2] - 61:17, 62:21
**d/b/a** [1] - 1:13
**Dale** [1] - 66:3
**damages** [3] - 21:12, 21:15, 45:2
**danger** [1] - 21:20
**Daniel** [1] - 3:4
**DANIEL** [1] - 2:5
**date** [1] - 27:8
**dead** [1] - 53:3
**deal** [7] - 7:14, 8:10,

14:9, 32:3, 39:20, 39:24, 50:13
**dealing** [2] - 35:18, 36:15, 45:9
**deceptive** [1] - 15:15
**decided** [3] - 15:19, 53:13, 54:16
**decides** [1] - 50:2
**decision** [3] - 35:4, 43:7, 63:5
**declaration** [1] - 16:18
**declaratory** [1] - 42:8
**Defendant** [4] - 1:8, 1:14, 2:15, 2:21
**defendant** [8] - 3:13, 11:13, 32:24, 36:2, 42:21, 59:8, 60:2, 61:8
**defendant's** [5] - 10:2, 17:23, 21:10, 56:2, 56:14
**defendants** [7] - 4:23, 7:9, 8:21, 11:9, 35:13, 36:17, 44:7
**defense** [2] - 5:15, 12:20
**deference** [3] - 14:4, 43:10, 50:9
**deferring** [2] - 50:18, 51:14
**definition** [1] - 53:15
**Del** [1] - 61:3
**DELAWARE** [1] - 1:2
**Delaware** [20] - 1:19, 3:23, 5:9, 9:2, 9:12, 10:23, 14:2, 15:18, 35:15, 35:19, 36:10, 36:14, 36:20, 36:21, 36:22, 43:4, 50:24, 54:3, 54:9, 60:25
**delivering** [1] - 16:24
**demonstrate** [2] - 26:4, 26:8
**demonstrates** [1] - 45:19
**demur** [1] - 31:14
**demurrer** [1] - 63:6
**denied** [1] - 14:18
**deny** [1] - 65:1
**denying** [1] - 31:13
**depositions** [1] - 36:21
**deprive** [1] - 44:20
**deprived** [1] - 44:18
**describe** [1] - 26:16
**describes** [2] - 25:19, 33:14
**designed** [1] - 17:23
**destroy** [1] - 17:2
**destroyed** [1] - 62:12

**destruction** [1] - 64:7
**detail** [1] - 18:5
**determine** [3] - 31:4, 31:8, 62:3
**determines** [1] - 33:15
**determining** [3] - 7:25, 28:17, 32:7
**develop** [4] - 26:9, 26:12, 26:17, 28:22
**developed** [2] - 12:10, 18:22
**developer** [1] - 56:17
**developing** [2] - 56:23, 57:22
**development** [1] - 57:3
**device** [3] - 16:24, 18:1, 18:6
**dice** [1] - 53:23
**difference** [1] - 5:7
**differences** [1] - 61:12
**different** [13] - 7:8, 23:21, 37:8, 39:22, 45:25, 46:2, 46:11, 47:6, 47:9, 49:10, 57:8, 60:6
**difficult** [1] - 36:25
**dime** [3] - 18:10, 20:7, 57:18
**direct** [10] - 18:18, 18:24, 19:11, 23:17, 24:7, 29:3, 29:5, 56:3, 56:19, 57:17
**directly** [2] - 21:25, 25:10
**disadvantage** [1] - 39:21
**disagreeing** [1] - 31:2
**discontinue** [1] - 27:22
**discovery** [2] - 10:9, 37:13
**discretion** [11] - 14:7, 16:1, 32:2, 50:9, 50:19, 50:20, 51:2, 51:8, 51:14, 52:15
**discuss** [2] - 16:8, 65:15
**discussed** [3] - 16:2, 18:1, 23:3
**discussion** [1] - 22:10
**dismiss** [10] - 14:25, 15:1, 17:8, 17:12, 34:20, 49:21, 57:14, 59:4, 64:13, 64:25
**dismissal** [6] - 13:5, 13:20, 13:21, 41:2, 52:6, 60:14
**dismissed** [3] - 34:23, 50:6, 51:5

dismisses [1] - 12:18
dismissing [1] - 51:15
dispose [1] - 21:25
disposition [1] - 60:23
dispositive [2] - 41:1,
52:14
dispute [4] - 42:9,
43:8, 44:16, 45:19
disseminating [1] -
26:10
dissent [2] - 29:4,
56:4
dissimilar [1] - 47:18
distinguishable [1] -
28:3
Distribution [1] - 60:8
distributors [1] - 28:6
DISTRICT [2] - 1:1, 1:2
district [6] - 34:7,
50:18, 56:6, 56:7,
60:6
District [28] - 1:22,
4:13, 5:8, 6:6, 8:11,
8:16, 8:19, 8:24,
9:12, 12:1, 12:2,
12:3, 14:2, 15:21,
30:12, 30:23, 31:3,
32:25, 33:18, 33:20,
35:19, 35:21, 36:7,
39:16, 40:6, 45:25,
60:3, 66:4
districts [1] - 4:2
docket [2] - 7:13,
14:3, 32:3, 65:21
doctrine [19] - 9:9,
9:22, 10:16, 11:18,
11:25, 12:22, 13:1,
46:14, 46:18, 48:2,
48:9, 49:6, 49:8,
49:19, 49:22, 50:3,
61:20, 62:2, 62:4
done [2] - 12:5, 36:13
down [4] - 9:8, 12:18,
23:14, 55:13
driven [1] - 4:16
driving [1] - 30:4
dropped [1] - 49:4
duplicative [2] - 7:14,
61:18
duty [2] - 23:7, 64:24
Dynamic [2] - 18:6,
58:16
Dynamics [1] - 18:4
Dynamics' [1] - 26:20

E

early [1] - 29:14
earn [2] - 18:10, 20:7
earned [1] - 57:19

earns [1] - 20:8
Eastern [2] - 12:2,
60:3
Easton [1] - 59:18
easy [1] - 7:4
ECF [1] - 16:18
economic [17] - 19:10,
19:16, 19:18, 19:19,
19:22, 20:14, 22:18,
22:22, 23:1, 23:8,
26:23, 29:16, 30:1,
56:10, 56:11, 58:11
economically [2] -
20:11, 29:22
economics [1] - 37:11
economy [1] - 35:24
Ed [1] - 3:12
EDWARD [1] - 2:18
effect [1] - 47:4
effectively [3] - 14:4,
52:22, 53:14
efficiencies [1] -
32:20
efficient [4] - 4:1,
30:24, 48:5, 60:22
effort [2] - 15:8, 20:20
efforts [1] - 26:17
either [10] - 11:2,
12:18, 18:3, 18:17,
26:24, 27:20, 42:6,
49:20, 56:3, 65:13
element [4] - 47:14,
47:17, 55:25, 56:9
elements [4] - 22:5,
47:11, 47:12, 52:17
ELIZABETH [1] - 2:6
elsewhere [1] - 10:4
employee [2] - 22:9,
22:12
encouraging [2] -
27:22, 57:1
end [7] - 13:11, 27:9,
49:12, 49:23, 51:3,
51:18, 51:19
endorsed [1] - 28:19
ends [1] - 9:13
enforcement [1] - 43:3
engage [1] - 57:2
ensure [2] - 16:20,
57:6
entered [1] - 65:21
entire [1] - 44:16
entity [1] - 22:12
equipment [6] - 16:21,
25:16, 25:17, 54:25,
55:5, 57:6
equipoise [2] - 53:24,
54:12
equity [1] - 44:19
equivocations [1] -

30:19
eroded [1] - 64:4
ESQ [11] - 2:3, 2:5,
2:6, 2:6, 2:10, 2:11,
2:13, 2:14, 2:18,
2:19, 2:19
essentially [2] - 24:6,
43:24
establish [1] - 27:2
established [1] -
62:11
et [2] - 37:13, 55:1
events [4] - 53:1, 61:7,
63:5, 63:22
evidence [6] - 14:14,
24:6, 52:21, 55:4,
62:14, 63:23
exact [3] - 9:17, 34:24
exactly [3] - 33:12,
37:17, 49:5
examined [1] - 61:1
example [6] - 18:4,
26:11, 43:10, 44:2,
60:7, 61:2
exclusion [3] - 41:17,
42:18, 45:20
exclusive [2] - 20:9,
20:12, 53:16
exclusively [1] - 54:13
excuse [5] - 8:22,
21:22, 24:20, 46:8,
55:10
executives [1] - 26:19
exercise [1] - 45:3
exercised [2] - 38:11,
43:16
Exhibit [1] - 16:18
exist [2] - 35:20, 49:23
existing [7] - 16:13,
19:5, 20:19, 20:24,
22:25, 27:20, 28:1
expectancy [5] -
15:14, 22:17, 22:23,
64:21
explain [1] - 34:16
explained [4] - 28:15,
29:5, 31:12, 43:7
explaining [1] - 5:5
explains [2] - 29:20,
45:15
explanation [2] -
29:18, 29:19
explicitly [1] - 42:8
exposed [1] - 20:2
extension [1] - 32:8
extent [2] - 13:8, 42:3

F

F.2d [1] - 59:19

F.3d [1] - 19:21
F.App'x [1] - 59:20
Facenda [1] - 29:20
facet [1] - 61:20
fact [4] - 12:13, 14:17,
29:23, 54:14
fact-based [1] - 14:17
factor [15] - 29:21,
38:5, 38:6, 38:8,
40:20, 40:25, 43:15,
43:17, 43:25, 44:12,
44:16, 56:6, 63:18,
63:21, 63:24
factors [12] - 8:2, 8:10,
8:15, 9:9, 17:24,
19:3, 40:22, 45:2,
45:14, 47:7, 55:24,
63:18
facts [30] - 7:16, 12:6,
13:12, 13:14, 14:14,
15:10, 20:5, 21:1,
36:9, 37:21, 41:5,
42:3, 47:16, 47:24,
48:11, 49:10, 49:13,
49:15, 51:17, 51:21,
51:23, 52:21, 57:25,
60:19, 62:19, 62:25,
63:15, 63:22, 65:11
factual [3] - 39:2,
46:13, 57:11
fail [1] - 22:2
failed [1] - 17:3
fails [2] - 21:2, 21:17
fairchild [1] - 61:16
FAL [3] - 21:4, 21:23,
22:1
falls [1] - 17:13
false [14] - 16:7, 17:3,
21:20, 25:23, 26:10,
28:18, 28:21, 43:20,
43:21, 44:25, 49:14,
59:5, 63:12, 64:3
far [1] - 13:10
Farnan [1] - 3:4
FARNAN [3] - 2:2, 2:3,
3:3
fashion [1] - 45:4
fast [1] - 27:19
fault [1] - 49:1
favor [7] - 14:20,
14:22, 27:23, 51:24,
53:2, 53:18, 53:25
Feb [1] - 62:21
fed [2] - 45:10, 45:12
federal [56] - 4:11,
4:17, 7:9, 9:11, 9:20,
10:8, 10:10, 10:14,
10:21, 12:4, 12:7,
12:16, 12:17, 12:19,
12:24, 30:25, 32:5,

32:22, 33:10, 38:17,
38:19, 38:20, 39:9,
40:5, 41:9, 41:17,
41:20, 41:21, 41:23,
42:4, 42:11, 42:18,
44:3, 44:5, 44:8,
44:10, 44:11, 44:19,
45:5, 45:10, 45:20,
46:17, 46:21, 50:24,
51:13, 53:11, 53:16,
54:2, 54:10, 54:12,
54:14, 60:16, 61:2
Federal [1] - 32:10
federalism [1] - 35:2
Ferina [2] - 32:11,
45:7
few [1] - 44:17
Field [11] - 16:12,
16:22, 16:25, 17:4,
17:10, 17:11, 18:1,
18:20, 19:10, 20:18,
21:21
fifth [1] - 38:19
fight [1] - 35:20
fighting [1] - 36:17
file [9] - 9:16, 9:20,
41:9, 41:20, 41:22,
41:23, 42:17, 48:11,
48:15, 53:14
filed [16] - 7:9, 10:22,
12:16, 14:15, 32:5,
32:22, 34:23, 43:22,
45:14, 48:21, 49:4,
53:21, 54:13, 61:2,
61:21, 63:13
files [1] - 12:5
filing [2] - 8:24, 46:13
final [5] - 29:1, 44:12,
49:20, 61:21, 62:6
finally [3] - 22:3, 23:5,
55:8
financial [15] - 18:18,
18:25, 19:12, 19:13,
19:23, 23:17, 24:7,
24:18, 29:3, 29:6,
56:3, 56:19, 57:1,
57:17, 58:11
fine [1] - 24:13
First [2] - 14:1, 50:16
first [16] - 3:19, 11:12,
11:14, 14:15, 20:15,
22:24, 24:9, 38:5,
38:8, 44:19, 53:21,
55:22, 59:3, 61:22,
62:5, 63:18
fit [1] - 17:19
fits [1] - 53:17
five [1] - 58:7
fixed [1] - 51:17
Fla [1] - 60:13

**FLOM** [1] - 2:18
**Florida** [2] - 33:19, 33:20
**flying** [1] - 36:20
**Flynn** [1] - 61:3
**focus** [1] - 16:10
**follow** [1] - 51:9
**following** [1] - 36:19
**food** [1] - 27:19
**Foodservice** [1] - 2:21
**FOODSERVICE** [1] - 1:13
**FOR** [1] - 1:2
**foregoing** [2] - 64:11, 66:1
**forms** [1] - 44:15
**forum** [24] - 5:2, 13:2, 35:11, 35:12, 36:2, 36:4, 36:5, 36:10, 36:15, 38:17, 38:21, 44:6, 44:11, 44:13, 44:18, 47:14, 49:6, 50:2, 53:13, 53:16, 54:2, 54:7, 54:16, 54:17
**forward** [6] - 20:15, 31:18, 40:1, 51:25, 65:3, 65:4
**fourth** [4] - 38:16, 44:5, 62:21, 63:16
**franchisees** [9] - 16:13, 16:15, 16:23, 16:25, 19:5, 20:17, 20:18, 20:19, 20:20
**franchises** [1] - 19:7
**franchisor** [1] - 57:3
**frankly** [2] - 9:14, 47:19
**free** [1] - 9:20
**frequently** [1] - 50:22
**friend** [2] - 46:5, 53:22
**friends** [1] - 13:15
**fries** [1] - 19:7
**Frompovicz** [1] - 58:4
**front** [1] - 54:18
**full** [1] - 39:3
**future** [2] - 21:7, 21:19

## G

**gaining** [1] - 28:18
**gains** [1] - 64:8
**Gamble** [3] - 4:24, 33:2, 35:23
**game** [5] - 8:21, 26:21, 36:3, 44:7, 49:23
**GAZA** [2] - 2:10, 3:7
**Gaza** [1] - 3:7
**Geisenberger** [1] - 14:2

**general** [2] - 18:21, 43:21
**generally** [3] - 30:25, 42:12, 62:1
**Georgia** [1] - 55:6
**gist** [1] - 55:12
**given** [6] - 5:12, 35:2, 44:23, 52:10, 61:8, 65:10
**Gordon** [3] - 17:24, 19:3, 55:25
**govern** [1] - 54:10
**governs** [2] - 38:20, 44:8
**grant** [1] - 64:25
**granted** [9] - 3:22, 8:4, 10:13, 37:9, 42:23, 43:1, 48:17, 48:21, 63:9
**granting** [1] - 45:16
**grants** [1] - 42:4
**Graver** [3] - 43:10, 56:24, 57:12
**ground** [1] - 65:1
**grounds** [2] - 10:24, 42:20
**Group** [2] - 33:2, 35:23
**growth** [1] - 28:21
**GSS** [1] - 25:16
**guess** [4] - 3:19, 11:1, 45:22, 48:24
**guidance** [1] - 31:14
**guys** [5] - 5:14, 31:2, 52:10, 58:20, 65:11

## H

**handed** [1] - 9:8
**handle** [1] - 40:12
**handled** [1] - 40:13
**Handsome** [1] - 29:23
**Hanna** [1] - 46:19
**Hannah** [5] - 11:23, 12:1, 34:4, 34:9, 60:8
**happy** [10] - 8:7, 26:25, 36:22, 39:7, 39:10, 39:19, 39:23, 40:11, 45:13, 52:7
**harmed** [1] - 20:3
**Hawkins** [1] - 66:3
**head** [1] - 50:12
**head-on** [1] - 50:12
**headed** [1] - 31:12
**heading** [1] - 14:19
**hear** [9] - 6:25, 8:3, 11:2, 11:8, 11:13, 15:4, 41:21, 45:5,

45:22
**heard** [1] - 45:24
**Hearing** [1] - 1:17
**hearing** [3] - 10:11, 29:7, 54:5
**hedging** [1] - 49:9
**held** [2] - 7:1, 59:24
**helpful** [1] - 59:3
**helping** [1] - 20:1
**Herbert** [3] - 11:23, 12:2, 34:4
**hereby** [1] - 66:1
**HERRINGTON** [1] - 2:13
**hold** [1] - 24:4
**Hollywood** [1] - 61:24
**home** [3] - 8:21, 36:3, 44:7
**honor** [1] - 45:4
**Honor** [87] - 3:3, 3:7, 3:12, 4:3, 5:19, 5:25, 6:11, 6:16, 6:18, 6:24, 6:25, 7:6, 8:12, 8:20, 9:19, 10:5, 11:5, 11:10, 11:17, 13:24, 14:16, 15:2, 15:6, 15:16, 15:22, 16:1, 16:6, 16:10, 17:16, 17:20, 19:2, 21:2, 22:4, 23:13, 24:1, 24:9, 25:7, 27:7, 31:10, 33:12, 33:17, 35:5, 36:16, 37:4, 37:9, 37:24, 38:24, 39:10, 39:22, 40:4, 40:10, 40:16, 40:24, 41:14, 42:23, 43:19, 46:4, 46:7, 47:1, 47:13, 47:20, 48:9, 48:14, 48:23, 50:12, 51:12, 51:15, 52:2, 52:4, 52:7, 52:16, 52:18, 53:10, 54:5, 54:18, 55:3, 55:8, 55:16, 55:18, 55:22, 56:18, 57:3, 58:9, 58:17, 65:17, 65:18, 65:19
**Honor's** [1] - 23:20
**HONORABLE** [1] - 1:22
**hopeful** [1] - 37:9
**horse** [1] - 53:3
**host** [1] - 13:14
**house** [1] - 57:8
**HSBC** [2] - 12:14, 60:12
**huge** [1] - 35:16

## I

**idea** [2] - 51:20, 53:21
**identical** [3] - 14:5, 15:10, 36:9
**identified** [4] - 4:9, 23:1, 31:16, 51:13
**identifies** [2] - 24:23, 43:2
**identify** [2] - 41:3, 42:11
**identifying** [1] - 37:21
**ignore** [1] - 58:12
**ignores** [1] - 20:18
**ill** [1] - 64:8
**ill-gotten** [1] - 64:8
**Illinois** [2] - 54:24, 55:6
**impact** [3] - 56:4, 56:19, 57:17
**impaired** [1] - 62:12
**important** [3] - 38:6, 62:22, 63:17
**importantly** [1] - 10:15
**impose** [1] - 64:24
**improper** [6] - 10:12, 34:24, 35:7, 36:2, 36:4, 59:10
**improperly** [1] - 12:20
**IN** [1] - 1:1
**inadequacy** [1] - 44:23
**inadequate** [2] - 44:18, 54:19
**inappropriate** [2] - 6:10, 10:24
**Inc** [3] - 61:16, 61:25
**INC** [2] - 1:4, 1:10
**inclined** [1] - 64:17
**include** [1] - 48:22
**included** [2] - 26:18, 40:9
**including** [4] - 16:16, 16:21, 63:3, 63:4
**inconsistent** [1] - 52:1
**inconvenience** [3] - 38:16, 44:5, 54:2
**incorporated** [5] - 7:11, 9:2, 36:2, 54:3, 54:9
**incredible** [1] - 28:18
**incredibly** [2] - 7:17, 10:16
**indeed** [3] - 23:8, 61:8, 63:1
**independent** [1] - 28:19
**indicated** [2] - 10:7, 46:10
**indicates** [2] - 7:22,

42:16
**indicating** [1] - 10:24
**indicator** [1] - 14:19
**indirect** [4] - 19:13, 19:23, 20:14, 26:23
**indirectly** [1] - 21:25
**inefficiencies** [1] - 35:16
**inefficiency** [1] - 7:15
**inefficient** [2] - 7:17, 15:8
**influence** [1] - 17:23
**informal** [1] - 10:8
**information** [2] - 16:15, 16:25
**informational** [1] - 16:12
**infringement** [2] - 62:16, 63:25
**inherent** [4] - 7:24, 14:3, 32:8, 50:8
**initial** [1] - 59:15
**injunction** [5] - 14:17, 21:6, 21:17, 21:18, 39:6
**injunctive** [2] - 39:5, 44:24
**inquiry** [1] - 9:14
**inquiry's** [1] - 43:19
**instance** [1] - 34:14
**instead** [5] - 8:18, 10:21, 16:15, 19:12, 63:13
**Insurance** [3] - 14:1, 50:16, 60:10
**Int'l** [1] - 61:16
**Integrations** [1] - 61:15
**intended** [1] - 4:13
**intensive** [1] - 14:17
**intent** [1] - 21:25
**intention** [1] - 4:12
**intentional** [2] - 15:13, 22:16
**interest** [10] - 18:18, 18:25, 19:12, 21:11, 23:17, 24:7, 24:18, 26:24, 29:3, 29:6
**interesting** [3] - 41:11, 41:14, 41:21
**interests** [1] - 62:11
**interfered** [1] - 22:15
**interference** [10] - 15:12, 15:13, 15:14, 22:3, 22:5, 22:16, 22:23, 22:25, 23:7, 64:21
**intermediate** [1] - 42:15
**interpreting** [1] -

28:16
**interrelatedness** [1] - 61:11
**interrupt** [1] - 42:24
**introductions** [1] - 3:2
**invoked** [1] - 14:2
**involve** [3] - 52:21, 62:9, 62:16
**involved** [4] - 13:12, 27:14, 59:12, 61:15
**involves** [2] - 59:7, 59:10, 61:6
**involving** [2] - 59:25, 65:8
**IOT** [2] - 26:12, 26:14
**Iqbal** [1] - 57:24
**irrelevant** [1] - 12:22
**issue** [12] - 21:24, 24:2, 30:7, 37:14, 39:6, 43:4, 50:5, 52:11, 53:3, 54:1, 54:25, 64:22
**issued** [1] - 43:5
**issues** [20] - 5:17, 10:18, 14:5, 16:7, 16:17, 31:15, 31:16, 40:19, 43:9, 43:14, 45:9, 46:17, 49:13, 49:15, 55:6, 61:1, 65:6, 65:11, 65:13
**issuing** [1] - 16:12
**items** [1] - 56:12
**itself** [5] - 18:21, 24:3, 25:11, 27:18, 46:14

## J

**Jan** [1] - 60:9
**Jewelry** [1] - 20:22
**JJF** [1] - 62:20
**Johnson** [1] - 45:16
**joined** [1] - 3:8
**jointly** [3] - 26:8, 26:9, 29:15
**Jordan** [1] - 29:18
**journal** [1] - 30:3
**judge** [2] - 10:13, 48:25
**Judge** [11] - 1:22, 4:18, 10:6, 31:13, 31:17, 33:3, 33:6, 39:14, 44:22, 45:7, 61:15
**judgement** [1] - 49:20
**judgements** [1] - 52:1
**judges** [2] - 48:4, 60:21
**judgment** [5] - 34:20, 42:8, 57:13, 62:12, 63:19

**judicata** [6] - 10:18, 49:18, 49:19, 49:23, 61:20, 61:21
**judicata)** [1] - 62:2
**judicial** [7] - 7:12, 7:20, 30:21, 35:24, 48:5, 48:6, 60:22
**judiciary** [1] - 30:25
**July** [2] - 60:11, 61:17
**jurisdiction** [23] - 5:12, 5:15, 5:18, 5:22, 6:4, 6:5, 6:14, 6:22, 7:1, 8:4, 30:11, 30:12, 30:17, 38:11, 38:14, 42:4, 42:5, 43:16, 43:18, 53:20, 54:1, 54:6
**jurisdictional** [1] - 35:20
**jury** [2] - 44:19, 44:21
**justified** [1] - 14:12
**justify** [1] - 14:11

## K

**keep** [2] - 20:12, 20:17
**key** [3] - 22:4, 24:2, 34:21
**kind** [4] - 10:19, 11:12, 41:21, 43:13
**King** [1] - 1:19
**Kitchen** [19] - 18:1, 18:6, 18:9, 18:10, 18:11, 18:12, 18:15, 19:7, 24:23, 25:2, 25:13, 26:3, 26:15, 26:18, 27:21, 57:18, 58:3, 58:15
**knockoffs** [1] - 28:4
**knowledge** [1] - 22:14
**known** [1] - 10:11
**Korea** [2] - 21:8, 21:13
**KRISTOPHER** [1] - 2:14
**Kristopher** [1] - 3:10
**Kytch** [66] - 4:16, 7:23, 8:22, 9:1, 9:2, 9:11, 9:19, 12:4, 13:16, 16:24, 17:2, 18:14, 18:17, 18:20, 19:9, 19:12, 19:14, 19:22, 20:6, 20:15, 21:4, 21:11, 21:23, 22:19, 23:6, 23:8, 27:2, 27:11, 27:21, 27:23, 28:18, 29:14, 29:15, 30:4, 32:5, 35:24, 36:16, 39:3, 39:11, 41:9, 44:18, 44:20, 45:1, 46:5, 53:22,

54:15, 55:23, 56:20, 58:11, 59:13, 59:15, 59:18, 59:22, 62:23, 63:3, 63:11, 63:14, 63:24, 64:1, 64:3, 64:7, 64:9, 64:11, 64:14, 64:16, 64:24
**KYTCH** [2] - 1:4, 1:10
**Kytch's** [11] - 4:25, 22:7, 22:18, 27:20, 55:19, 56:12, 63:7, 63:9, 64:5, 64:7

## L

**lack** [1] - 18:11
**language** [1] - 17:16
**Lanham** [33] - 3:21, 4:11, 7:9, 9:11, 9:25, 10:10, 10:14, 16:11, 17:3, 17:14, 17:15, 21:2, 32:22, 35:21, 39:13, 40:5, 42:17, 44:10, 48:15, 49:15, 52:23, 53:16, 54:13, 55:10, 57:4, 59:6, 63:3, 63:4, 63:13, 63:14, 63:21, 64:10, 64:15
**largely** [1] - 65:11
**launched** [2] - 26:15, 27:15
**law** [38] - 11:20, 15:2, 18:24, 19:14, 24:9, 24:11, 26:24, 28:1, 29:17, 31:3, 31:6, 31:7, 31:15, 31:17, 32:10, 32:18, 32:19, 33:13, 33:16, 33:19, 37:1, 38:19, 43:20, 43:22, 44:8, 45:1, 46:1, 46:2, 47:5, 47:20, 47:25, 48:7, 50:4, 50:5, 54:10, 58:4, 60:25
**lawsuit** [1] - 43:23, 47:24, 60:20
**lawsuits** [3] - 48:4, 60:21, 62:9
**lawyers** [1] - 36:19
**lays** [1] - 45:14
**leaning** [1] - 41:1
**least** [2] - 42:20, 56:25
**leave** [3] - 48:14, 52:25, 61:8
**led** [1] - 64:7
**legal** [2] - 10:17, 65:10
**legislature** [1] - 54:12
**legitimate** [1] - 51:16
**less** [1] - 43:22

**letter** [1] - 32:10
**liable** [1] - 15:13
**Libby** [1] - 3:5
**library** [1] - 34:23
**Life** [1] - 60:9
**light** [1] - 20:5
**likely** [2] - 6:16, 6:17
**limit** [2] - 46:14, 54:13
**limited** [11] - 11:19, 21:9, 26:14, 39:5, 44:25, 46:12, 46:23
**line** [1] - 47:13
**listen** [1] - 37:10
**litigants** [1] - 42:17
**litigated** [3] - 41:13, 44:10, 44:21
**litigating** [2] - 30:22, 43:6
**litigation** [19] - 4:18, 7:14, 8:6, 9:13, 13:2, 33:1, 38:7, 40:13, 41:4, 45:17, 48:10, 49:24, 51:25, 53:2, 53:15, 53:19, 59:12, 60:16, 61:18
**litigations** [3] - 36:25, 37:20, 60:2
**LIU** [4] - 15:24, 17:15, 17:20, 23:15
**Liu** [2] - 3:10, 16:6
**LLC** [2] - 1:13, 2:21
**LLP** [2] - 2:2, 2:10
**located** [4] - 8:23, 9:1, 9:3, 54:7
**location** [1] - 54:24
**locations** [1] - 12:11
**Locke** [2] - 3:5
**LOCKE** [2] - 2:5, 2:6
**locked** [1] - 20:21
**logical** [1] - 14:7
**look** [10] - 17:8, 25:1, 26:1, 27:10, 28:12, 34:15, 42:6, 47:7, 48:25, 62:10
**looked** [1] - 56:7
**looking** [3] - 46:25, 47:8, 62:8
**looks** [2] - 50:15, 56:10
**loss** [1] - 21:14
**lost** [1] - 21:11
**lucrative** [1] - 30:5
**LUI** [18] - 2:13, 5:19, 5:25, 6:8, 6:11, 6:13, 6:15, 6:18, 6:20, 15:16, 15:21, 55:18, 55:22, 56:18, 57:3, 57:15, 58:9, 65:18
**Lui** [1] - 15:16

## M

**M.D** [3] - 60:9, 60:10, 60:13
**machine** [2] - 25:19, 25:20
**machines** [1] - 26:13
**maintain** [2] - 20:1, 59:25
**majority** [3] - 29:4, 56:2, 56:5
**Maldonado** [1] - 61:3
**manage** [1] - 14:3
**Management** [2] - 13:25, 50:16
**manufacturer** [3] - 18:16, 56:15, 57:21
**manufacturer's** [1] - 18:19
**manufacturers** [1] - 18:9
**March** [2] - 1:16, 60:13
**market** [3] - 27:18, 28:19, 29:9
**marketplace** [1] - 30:4
**Markman** [5] - 4:18, 10:13, 31:18, 33:3, 44:22
**Markman's** [2] - 10:6, 31:13
**Martin** [1] - 3:14
**MARTIN** [1] - 2:19
**MARYELLEN** [1] - 1:22
**master** [2] - 9:19, 35:24
**matter** [10] - 15:17, 39:4, 57:4, 59:8, 59:13, 59:15, 60:1, 61:5, 61:14, 65:9
**matters** [3] - 28:14, 32:18, 50:23
**McCarran** [1] - 41:6
**McDonald** [1] - 15:17
**McDonald's** [82] - 1:7, 2:16, 3:8, 4:16, 5:16, 5:17, 6:3, 6:4, 7:10, 8:25, 15:5, 16:11, 16:13, 16:14, 16:19, 16:20, 16:23, 18:2, 18:8, 18:9, 18:10, 18:13, 18:15, 18:16, 18:22, 18:23, 19:5, 19:6, 19:15, 20:1, 20:3, 20:7, 20:10, 20:13, 20:16, 20:17, 20:19, 21:20, 21:24, 22:7, 22:11, 22:13, 22:15, 22:18, 22:22, 23:6, 23:9, 23:21,

24:25, 25:2, 25:5, 25:9, 25:14, 25:16, 25:22, 26:2, 26:6, 26:11, 26:14, 27:10, 27:11, 27:12, 27:24, 28:20, 29:11, 29:15, 30:19, 30:23, 31:16, 35:19, 37:6, 55:18, 57:5, 57:7, 57:17, 57:19, 57:21, 58:2, 64:18, 64:24
**McKenna** [9] - 7:25, 31:25, 32:6, 46:9, 46:20, 46:22, 59:19, 59:23, 60:2
**MEAGHER** [1] - 2:18
**mean** [16] - 3:20, 4:20, 5:16, 6:19, 7:13, 9:15, 11:8, 13:18, 14:25, 15:8, 17:7, 31:5, 34:9, 36:11, 41:20, 42:24
**meaningful** [1] - 31:19
**means** [1] - 42:5
**meant** [1] - 5:23
**measure** [1] - 21:15
**members** [1] - 20:24
**mention** [1] - 60:7
**mentioned** [2] - 33:25, 34:5
**mentioning** [1] - 29:19
**mergers** [1] - 50:22
**message** [1] - 28:5
**messy** [1] - 33:21
**met** [1] - 63:17
**MICHAEL** [1] - 2:3
**Michael** [1] - 3:3
**MICHELETTI** [27] - 2:18, 3:12, 6:24, 7:4, 11:17, 11:21, 12:9, 13:20, 13:24, 14:12, 14:23, 15:1, 15:6, 46:4, 47:11, 48:1, 48:8, 48:23, 49:2, 50:11, 50:15, 51:11, 52:13, 53:8, 55:8, 55:16, 65:19
**Micheletti** [1] - 3:13
**Middle** [2] - 12:1, 33:18
**might** [3] - 30:15, 57:10, 57:12
**minutes** [1] - 58:7
**misconduct** [2] - 21:7, 21:19
**missed** [1] - 11:12
**missing** [1] - 48:17
**misspoke** [1] - 54:23
**mix** [2] - 12:7, 26:20
**Mohammand** [13] -

12:14, 33:4, 33:5, 33:14, 33:16, 33:18, 34:10, 46:25, 47:3, 47:18, 50:4, 60:12, 60:17
**moment** [2] - 55:14, 59:14
**money** [1] - 21:9
**Moore** [2] - 34:21, 62:19
**moot** [1] - 7:3
**morning** [8] - 3:1, 3:3, 3:6, 3:7, 3:11, 3:12, 3:17, 4:7
**most** [12] - 10:16, 12:11, 12:12, 15:12, 22:21, 25:10, 38:5, 41:20, 47:13, 54:12, 62:22, 63:16
**motion** [11] - 10:13, 17:11, 35:4, 35:5, 52:24, 57:14, 59:4, 63:1, 63:6, 63:9, 64:25
**Motion** [1] - 1:17
**motions** [4] - 11:9, 34:19, 34:20
**motivated** [2] - 20:11, 29:22
**motivating** [1] - 29:21
**motivation** [16] - 19:10, 19:16, 19:17, 19:18, 19:19, 19:22, 19:23, 19:24, 20:14, 20:17, 28:13, 29:16, 30:1, 56:10, 56:12, 58:11
**motive** [1] - 57:2
**move** [5] - 10:2, 15:20, 27:4, 35:14, 42:22
**moved** [1] - 4:10
**moves** [1] - 59:4
**moving** [3] - 31:18, 43:15, 51:25
**MR** [95] - 3:3, 3:12, 4:3, 4:6, 4:23, 5:11, 6:24, 7:4, 7:6, 7:19, 8:12, 8:20, 9:2, 9:4, 9:7, 9:19, 10:5, 11:4, 11:10, 11:17, 11:21, 12:9, 13:20, 13:24, 14:12, 14:23, 15:1, 15:6, 23:20, 24:1, 24:8, 24:15, 24:20, 24:22, 25:1, 25:4, 25:7, 25:10, 25:15, 26:1, 27:7, 27:17, 30:10, 31:10, 31:24, 32:4, 32:18, 33:5, 33:12, 33:17, 34:15,

35:5, 35:7, 35:17, 36:16, 36:22, 37:4, 37:8, 37:19, 37:24, 38:5, 38:10, 38:13, 38:16, 38:19, 38:23, 39:1, 39:10, 39:14, 39:18, 39:22, 40:4, 40:10, 40:15, 40:24, 41:14, 41:24, 42:2, 43:1, 46:4, 47:11, 48:1, 48:8, 48:23, 49:2, 50:11, 50:15, 51:11, 52:13, 53:8, 55:3, 55:8, 55:16, 65:17, 65:19
**MS** [23] - 3:7, 5:19, 5:25, 6:8, 6:11, 6:13, 6:15, 6:18, 6:20, 15:16, 15:21, 15:24, 16:6, 17:15, 17:20, 23:15, 55:18, 55:22, 56:18, 57:3, 57:15, 58:9, 65:18
**multinational** [1] - 6:4
**multiple** [6] - 4:1, 11:24, 31:1, 48:3, 60:20, 63:2
**must** [8] - 9:9, 16:20, 22:2, 27:1, 30:16, 37:15, 41:3, 45:17

## N

**N.A** [1] - 60:12
**Nafar** [1] - 61:24
**name** [1] - 26:20
**narrow** [3] - 10:16, 12:20, 29:16
**narrowing** [1] - 12:18
**narrowly** [1] - 59:23
**natural** [1] - 41:7
**nature** [2] - 27:17, 29:6
**navigating** [1] - 45:8
**nearly** [1] - 14:5
**necessarily** [2] - 14:25, 30:24
**need** [14] - 11:15, 16:4, 22:13, 24:13, 29:5, 41:18, 42:1, 56:5, 56:15, 58:6, 58:18, 58:21, 65:14
**needed** [1] - 16:23
**needs** [6] - 19:9, 19:21, 56:18, 57:7, 57:9, 57:24
**negligent** [5] - 15:14, 22:23, 22:24, 23:7, 64:20
**neutral** [1] - 63:19

**never** [1] - 26:15
**newsletter** [1] - 16:12
**Next** [1] - 64:18
**next** [3] - 27:4, 42:22, 43:15
**Niagara** [1] - 58:4
**ninety** [1] - 58:8
**nominations** [1] - 16:17
**noncompete** [1] - 28:8
**nondisclosure** [1] - 22:7
**none** [2] - 42:20, 42:21
**nonprofit** [1] - 30:2
**NOREIKA** [1] - 1:22
**Northern** [17] - 4:13, 5:8, 6:6, 8:11, 8:16, 8:19, 8:24, 15:21, 30:12, 30:23, 31:3, 32:25, 35:20, 36:7, 39:16, 40:6, 45:24
**noted** [1] - 60:17
**notes** [1] - 66:1
**nothing** [7] - 10:12, 46:4, 46:9, 46:12, 46:22, 57:19, 57:20
**notified** [2] - 4:11, 10:9
**noting** [1] - 62:1
**notion** [1] - 34:2
**nots** [1] - 5:24
**novel** [1] - 31:16
**November** [5] - 13:12, 14:19, 21:21, 31:12, 49:12
**NSLT** [1] - 25:17
**nucleus** [4] - 13:14, 47:16, 62:19, 62:25
**number** [1] - 60:6

## O

**object** [1] - 15:20
**obligated** [1] - 28:10
**obligation** [4] - 8:3, 8:7, 22:7, 45:5
**obtain** [1] - 39:3, 57:17
**obtained** [2] - 38:11, 43:16
**obvious** [1] - 12:25, 39:4
**obviously** [3] - 9:12, 26:20, 53:21
**occupying** [1] - 34:1
**occur** [1] - 33:10
**occurred** [1] - 12:17
**occurrences** [1] - 63:8
**occurrences'** [1] -

63:9
**occurring** [2] - 53:4, 59:12
**OF** [1] - 1:2
**offered** [1] - 47:16
**office** [3] - 3:15, 3:16, 9:4
**officer** [1] - 16:17
**Official** [1] - 66:3
**once** [2] - 4:11, 10:1
**one** [29] - 4:24, 7:2, 7:4, 12:4, 12:12, 27:4, 33:17, 35:1, 38:1, 39:16, 40:23, 46:23, 46:24, 47:4, 47:24, 49:17, 49:22, 50:17, 53:1, 53:18, 53:23, 53:25, 54:12, 55:20, 55:25, 57:18, 58:10, 60:20
**Open** [19] - 17:25, 18:6, 18:9, 18:11, 18:12, 18:14, 19:7, 24:23, 25:2, 25:13, 26:3, 26:14, 26:18, 27:21, 57:18, 58:3, 58:15
**opening** [1] - 46:6
**operations** [2] - 54:4, 55:1
**operative** [2] - 13:14, 48:11
**operators** [2] - 27:19, 28:19
**opinion** [2] - 29:5, 31:13
**opportunity** [1] - 21:15
**opposed** [2] - 54:9, 60:14
**opposite** [1] - 42:18
**opposition** [1] - 20:15
**option** [2] - 11:1, 13:18
**order** [7] - 15:25, 38:10, 43:15, 45:4, 49:16, 65:20, 65:22
**original** [1] - 63:16
**originally** [2] - 36:12, 40:8
**ORRICK** [1] - 2:13
**Orrick** [1] - 3:10
**otherwise** [3] - 16:10, 36:1, 43:14
**outcome** [1] - 31:22
**outs** [1] - 42:7
**outset** [2] - 49:25, 54:5
**outside** [1] - 51:1
**overcome** [2] - 8:6,

33:24
**overlap** [2] - 37:21, 39:2
**overlapping** [3] - 14:14
**owe** [1] - 23:6
**own** [11] - 26:12, 41:7, 49:13, 49:25, 50:19, 50:20, 51:14, 53:13, 56:14, 61:10, 64:3
**ownership** [1] - 26:6

## P

**p.m** [1] - 65:24
**page** [1] - 63:1
**Palo** [1] - 3:16
**Pandora** [5] - 20:21, 28:2, 28:3, 28:4, 28:5
**papers** [5] - 3:18, 11:22, 12:11, 52:6, 55:11
**paragraph** [10] - 18:5, 22:8, 23:2, 24:3, 25:21, 26:2, 26:11, 26:13, 26:16, 58:1
**paragraphs** [8] - 22:19, 22:20, 23:3, 24:5, 56:21, 58:13, 64:2, 64:10
**parallel** [13] - 8:1, 37:20, 37:25, 39:1, 40:16, 40:20, 43:5, 46:16, 51:21, 51:25, 52:21, 52:25, 60:15
**paramount** [1] - 16:19
**part** [7] - 10:2, 27:13, 46:24, 47:19, 54:15, 54:20, 57:12
**participant** [1] - 4:25
**particular** [3] - 12:14, 57:6, 62:8
**particularity** [1] - 23:2
**particularly** [3] - 20:5, 21:4, 58:1
**parties** [12] - 5:13, 9:10, 13:12, 14:13, 14:14, 26:8, 30:25, 43:5, 48:4, 59:11, 60:21, 65:5
**parties'** [1] - 30:22
**partly** [1] - 27:13
**partner** [1] - 3:15
**partnership** [2] - 25:17, 56:23
**party** [3] - 12:4, 65:9, 65:13
**patience** [1] - 59:1
**pattern** [1] - 12:13

**pending** [10] - 9:13, 29:10, 31:22, 46:21, 59:17, 59:22, 60:3, 61:7, 61:23, 63:20
**pending'** [1] - 61:20
**Pennsylvania** [4] - 12:1, 12:2, 12:3, 60:3
**people** [4] - 27:16, 36:21, 54:7, 57:1
**permission** [5] - 3:21, 3:22, 9:24, 23:20, 39:12
**permit** [1] - 21:6
**permitted** [2] - 23:10, 58:4
**person** [1] - 16:22
**personal** [13] - 5:12, 5:15, 5:18, 5:21, 6:4, 6:5, 6:14, 6:21, 7:1, 30:11, 30:12, 30:16, 54:5
**persons** [1] - 28:9
**perspective** [4] - 22:18, 22:22, 22:25, 23:8
**persuasive** [2] - 12:13, 33:23
**PHD's** [1] - 58:13
**Philadelphia** [1] - 59:20
**pick** [1] - 37:2
**picked** [1] - 37:1
**piece** [1] - 48:17
**piecemeal** [13] - 8:6, 13:1, 33:1, 38:7, 41:4, 45:17, 46:7, 48:10, 49:24, 51:24, 53:2, 53:15, 53:19
**pieces** [1] - 51:24
**place** [2] - 52:23, 55:6
**Plaintiff** [6] - 1:5, 1:11, 2:8, 59:24, 61:8, 64:23
**plaintiff** [13] - 3:4, 3:21, 11:11, 12:23, 21:10, 23:16, 34:17, 35:12, 45:7, 47:23, 48:10, 51:7, 60:18
**plaintiff's** [2] - 40:17, 44:14
**Plaintiff's** [1] - 61:10
**plaintiffs** [1] - 13:3
**Plaintiffs** [1] - 60:14
**plan** [1] - 57:8
**planning** [1] - 16:16
**plausible** [8] - 19:15, 20:4, 20:5, 22:4, 22:6, 22:17, 57:25
**plausibly** [1] - 23:6

**played** [1] - 51:12
**plead** [1] - 22:14
**pleaded** [4] - 17:9, 17:19, 57:14, 64:23
**pleading** [2] - 54:15, 54:20
**pleased** [1] - 25:16
**pled** [1] - 18:2
**plenty** [1] - 52:10
**podium** [1] - 4:4
**point** [11] - 11:4, 26:4, 29:1, 32:10, 33:22, 34:8, 48:13, 51:22, 52:20, 55:3, 58:10
**pointed** [3] - 26:5, 56:20, 56:22
**points** [3] - 52:5, 52:7, 55:19
**policy** [12] - 12:25, 34:16, 38:7, 41:4, 41:6, 41:15, 41:19, 42:12, 45:18, 48:8, 53:2, 53:7
**position** [3] - 11:18, 31:4, 31:8
**possession** [1] - 21:10
**potential** [1] - 29:24
**potentially** [2] - 35:18, 43:9
**Power** [1] - 61:15
**power** [3] - 14:3, 39:5, 50:21
**powerful** [2] - 12:12, 47:13
**Powerhouse** [4] - 18:4, 18:6, 26:20, 58:16
**powers** [2] - 7:24, 32:8
**practically** [1] - 49:2
**practices** [1] - 15:15
**precedented** [1] - 36:1
**precluded** [1] - 62:6
**preclusion** [3] - 10:18, 62:5, 62:7
**prefer** [1] - 42:16
**prejudice** [2] - 41:2, 64:14
**preliminary** [2] - 14:17, 21:24
**prepared** [2] - 8:12, 40:15
**prerequisite** [1] - 30:17
**present** [5] - 9:9, 10:11, 10:19, 43:25, 44:4
**presented** [4] - 7:7, 36:24, 62:15, 63:24

**presumably** [2] - 51:19, 57:1
**presumed** [1] - 24:17
**presumption** [1] - 29:25
**pretty** [4] - 14:8, 45:9, 46:4, 50:11
**prevent** [4] - 13:1, 31:18, 49:6, 49:9
**price** [1] - 19:6
**primarily** [1] - 20:11
**primary** [2] - 19:18, 19:22
**principle** [1] - 37:1
**principles** [1] - 10:17
**prison** [1] - 34:22
**prisoner** [1] - 34:22
**pro** [2] - 34:22, 45:8
**problems** [1] - 45:8
**procedurally** [2] - 13:10, 14:16
**proceed** [3] - 7:18, 37:12, 40:15
**proceeding** [3] - 14:4, 43:5, 66:1
**proceedings** [4] - 8:1, 37:25, 46:17, 52:20
**process** [1] - 10:13
**produce** [1] - 29:12
**product** [41] - 4:25, 18:2, 18:3, 18:7, 18:13, 18:15, 18:17, 18:19, 18:23, 24:16, 24:17, 25:3, 25:5, 25:9, 25:14, 26:5, 26:7, 26:9, 26:14, 27:8, 27:12, 27:13, 27:14, 27:15, 27:22, 27:23, 28:4, 28:11, 28:20, 28:22, 29:8, 56:2, 56:14, 56:15, 57:2, 58:3, 58:13, 58:16
**products** [5] - 16:15, 17:23, 28:7, 29:15, 64:4
**profit** [1] - 29:24
**profits** [2] - 21:11
**prohibited** [1] - 62:1
**prominent** [1] - 12:12
**promotes** [1] - 24:23
**promotion** [4] - 17:5, 17:17, 17:22, 20:23
**properties** [1] - 21:25
**property** [4] - 21:9, 44:1, 44:2, 44:3
**proposition** [1] - 11:24, 28:2
**prosecution** [1] - 62:13

**prospective** [2] - 27:20, 64:6
**protection** [1] - 42:14
**protocol** [1] - 51:10
**provide** [1] - 31:14
**provided** [2] - 35:1, 64:8
**provides** [1] - 16:15
**provision** [1] - 24:2
**provisions** [1] - 23:24
**published** [2] - 21:21, 28:18
**publishing** [3] - 24:17, 26:10, 29:21
**pulled** [1] - 47:2
**purchase** [2] - 16:14, 56:1
**purportedly** [1] - 22:15
**purpose** [3] - 34:17, 40:5, 43:19
**purposes** [1] - 12:13
**put** [1] - 13:24
**puts** [1] - 20:15

## Q

**Q1** [1] - 27:9
**questions** [9] - 4:8, 16:9, 23:13, 25:24, 30:8, 45:10, 45:13, 55:13, 59:13
**quick** [1] - 58:10
**quickly** [2] - 52:17
**quite** [3] - 4:14, 23:21, 47:19
**quote** [3] - 21:14, 26:6, 47:21
**quoting** [2] - 25:15, 60:16

## R

**racket** [5] - 19:25, 20:2, 20:8, 20:9, 20:12
**raise** [1] - 29:1
**raised** [2] - 52:11, 52:14
**rather** [1] - 12:24
**rationale** [3] - 34:16, 60:24, 61:4
**read** [1] - 34:10
**readily** [2] - 28:3, 51:22
**reading** [1] - 34:12
**reads** [1] - 59:22
**real** [3] - 29:20, 35:11, 42:2
**really** [8] - 3:19, 6:17,

8:20, 16:10, 43:2, 44:14, 45:11, 45:14
**realm** [1] - 61:13
**reason** [12] - 8:20, 22:2, 27:15, 28:20, 39:25, 42:16, 45:16, 48:12, 49:7, 50:2, 51:16, 61:4
**reasons** [14] - 10:22, 12:25, 13:9, 13:15, 14:13, 21:1, 44:6, 44:17, 49:22, 50:4, 50:6, 52:1, 53:13, 64:11
**receiving** [1] - 28:9
**recess** [1] - 58:24
**recipient** [1] - 25:23
**recognized** [1] - 61:15
**record** [2] - 57:12, 65:15
**recover** [1] - 45:1
**recovered** [1] - 21:12
**recovery** [1] - 21:9
**reference** [2] - 22:8, 46:8
**referenced** [2] - 46:16, 46:19
**referred** [1] - 61:19
**reflect** [1] - 29:13
**refused** [1] - 29:11
**regs** [1] - 16:24
**regulate** [1] - 41:7
**relate** [1] - 10:17
**relate[d** [1] - 63:5
**related** [12] - 5:12, 7:12, 9:12, 16:7, 18:5, 19:6, 21:8, 31:21, 32:20, 34:3, 57:16, 58:10
**relatedly** [1] - 30:20
**relates** [2] - 29:2, 41:6
**relationship** [14] - 18:17, 20:21, 20:24, 20:25, 22:19, 22:22, 23:1, 23:5, 23:8, 23:10, 26:23, 28:7, 29:13, 64:23
**release** [1] - 27:8
**released** [1] - 26:3
**relevant** [4] - 16:25, 27:18, 28:24, 37:21
**relied** [3] - 22:20, 28:2, 34:21
**relief** [2] - 39:4, 44:24
**relies** [3] - 18:20, 19:12, 59:18
**relying** [6] - 23:19, 23:24, 23:25, 24:2, 33:7, 33:13
**remanded** [1] - 56:6

**remedies** [1] - 21:5
**remedy** [3] - 34:25, 40:19, 44:23
**reminder** [2] - 8:3, 35:17
**removal** [5] - 4:17, 8:23, 10:21, 32:25, 40:6
**remove** [3] - 4:13, 39:25, 40:2
**removing** [2] - 5:8, 10:8
**renders** [1] - 18:23
**repair** [5] - 19:25, 20:2, 20:7, 20:8, 20:12
**repeat** [1] - 21:20
**replete** [1] - 18:5
**replied** [1] - 4:12
**reply** [1] - 7:22
**Reporter** [1] - 66:3
**representation** [1] - 24:16
**representations** [2] - 57:11, 61:10
**represented** [3] - 30:10, 63:3, 63:14
**reputation** [1] - 20:3
**request** [2] - 49:25, 53:11
**requested** [1] - 48:14
**require** [2] - 31:17, 48:10
**required** [6] - 5:2, 8:1, 22:1, 26:24, 32:9, 45:15
**requirement** [1] - 29:2
**requirements** [4] - 33:24, 37:15, 37:18, 56:5
**requires** [5] - 19:14, 31:3, 36:23, 47:23, 60:18
**res** [10] - 10:18, 38:14, 44:1, 49:18, 49:19, 49:23, 54:1, 61:20, 62:2
**research** [1] - 58:19
**resolution** [1] - 49:17
**resolve** [2] - 43:8, 44:16
**resolved** [2] - 42:9, 45:19
**resonates** [1] - 60:14
**resource** [1] - 48:5
**resources** [6] - 7:12, 7:20, 30:21, 30:22, 41:7, 60:22
**respect** [1] - 65:1
**respectively** [1] - 13:3

**response** [3] - 31:10, 45:24, 48:24
**responses** [1] - 10:5
**responsive** [1] - 4:8
**rest** [1] - 55:11
**restaurant** [1] - 27:19
**restaurants** [3] - 16:19, 16:21, 16:22
**restaurants'** [1] - 57:7
**restitution** [4] - 21:6, 21:7, 21:9, 21:15
**result** [1] - 17:2
**revenue** [2] - 18:10, 20:8
**reversed** [1] - 32:6
**reviewed** [2] - 3:18, 22:9
**revisited** [1] - 32:10
**rights** [4] - 44:2, 62:11, 62:17, 63:25
**rise** [2] - 58:23, 65:23
**rising** [1] - 52:25
**River** [14] - 7:21, 14:20, 32:4, 32:9, 37:16, 40:17, 41:5, 50:19, 50:20, 51:7, 51:10, 52:3, 52:5, 52:17
**Roller** [1] - 3:5
**ROLLER** [1] - 2:6
**rule** [9] - 32:18, 33:14, 34:17, 44:20, 47:22, 58:21, 60:17, 61:18, 61:22
**Rule** [1] - 28:12
**rules** [2] - 33:21, 36:20
**ruling** [2] - 10:20, 43:13
**rulings** [2] - 34:18, 34:19
**RUNNELLS** [1] - 2:19
**Ryan** [1] - 45:15

## S

**safety** [4] - 16:17, 16:19, 16:20, 16:23
**sale** [3] - 18:11, 20:20, 57:18
**sales** [3] - 18:18, 29:8, 29:9
**SAMANTHA**[1] - 2:11
**Samantha** [1] - 3:9
**Sarah** [1] - 3:14
**SARAH** [1] - 2:19
**satisfaction** [2] - 40:18, 44:14
**satisfied** [2] - 40:21, 42:6

**satisfy** [1] - 37:15
**scarce** [2] - 48:5, 60:22
**scenarios** [1] - 59:21
**schedule** [1] - 65:12
**scheme** [1] - 30:5
**screen** [1] - 26:18
**scrooge** [1] - 45:4
**scrooge-like** [1] - 45:4
**se** [2] - 34:22, 45:8
**seated** [2] - 3:2, 58:25
**second** [7] - 33:18, 38:10, 55:20, 61:21, 62:6, 62:13, 63:21
**Section** [1] - 30:15
**securities** [1] - 42:7
**see** [8] - 10:2, 24:11, 25:21, 26:19, 35:19, 47:6, 54:18, 61:4
**seeing** [1] - 34:13
**seem** [3] - 3:25, 45:11, 53:24
**seemingly** [1] - 53:23
**selection** [1] - 5:2
**sell** [1] - 28:4
**seller** [2] - 56:15, 57:21
**selling** [3] - 19:7, 20:17, 20:18
**sells** [1] - 18:9
**Semiconductor** [1] - 61:16
**sends** [1] - 16:13
**sense** [8] - 5:5, 20:10, 28:16, 43:3, 43:11, 44:4, 51:16, 53:25
**sent** [2] - 20:19, 28:5
**sentence** [1] - 7:22
**separate** [2] - 46:21, 59:25
**separately** [4] - 10:23, 12:5, 39:16, 56:9
**series** [6] - 7:16, 53:1, 61:6, 63:5, 63:8, 63:22
**serious** [1] - 16:23
**services** [2] - 22:1, 64:4
**set** [5] - 36:9, 47:24, 60:19, 63:15, 63:22
**Seventh** [1] - 29:18
**several** [2] - 7:8
**Shake** [1] - 25:19
**share** [1] - 25:16
**SHEA** [1] - 2:10
**shell** [1] - 26:21
**shop** [3] - 50:2, 53:13, 54:16
**shopping** [6] - 13:2,

35:11, 36:3, 36:4, 36:10, 49:7
**short** [1] - 49:16
**shorter** [1] - 7:6
**shortly** [2] - 10:7, 49:12
**shot** [1] - 26:18
**show** [11] - 18:24, 22:14, 22:21, 23:18, 23:24, 25:12, 36:22, 56:3, 56:15, 58:15
**shown** [1] - 56:5
**shows** [2] - 24:14, 24:15
**side** [2] - 49:7, 58:22
**signed** [1] - 28:8
**similar** [3] - 13:9, 13:25, 14:13
**similarly** [1] - 21:17
**simple** [1] - 14:8
**simply** [4] - 12:22, 30:25, 57:22, 58:2
**single** [5] - 10:23, 32:24, 35:25, 42:19, 50:17
**sit** [1] - 23:14
**situation** [2] - 5:20, 43:1
**situations** [1] - 46:24
**sixth** [2] - 38:20, 44:16
**SKADDEN** [1] - 2:18
**Skadden** [1] - 3:13
**SL** [1] - 60:8
**SLATE** [1] - 2:18
**slice** [1] - 53:22
**solicitation** [1] - 16:14
**soliciting** [2] - 19:4, 27:5
**solution** [4] - 25:18, 26:12, 27:21, 57:23
**Solution** [1] - 64:3
**someplace** [1] - 36:8
**sometimes** [2] - 34:19, 34:20
**somewhere** [1] - 50:25
**sorry** [4] - 14:22, 24:24, 27:11, 42:24
**sort** [4] - 49:18, 50:10, 53:17, 53:22
**sought** [3] - 61:8, 63:2, 63:15
**south** [1] - 3:21
**Southern** [2] - 33:20, 45:25
**Sparks** [3] - 11:23, 12:1, 34:4
**speaker** [1] - 56:11
**speaking** [2] - 11:12, 49:2

**speaks** [1] - 56:11
**special** [3] - 23:5, 23:10, 64:23
**specific** [9] - 16:9, 38:8, 41:5, 42:7, 45:18, 53:6, 55:25, 56:6, 56:20
**specifically** [5] - 34:13, 42:2, 43:20, 46:20, 59:6
**specifics** [1] - 23:17
**speech** [6] - 17:22, 19:2, 19:9, 28:16, 56:1, 56:9
**spends** [1] - 37:20
**spent** [2] - 10:16, 26:11
**split** [4] - 12:23, 33:8, 36:8, 64:12
**splitting** [54] - 9:6, 9:8, 9:21, 10:15, 10:25, 11:15, 11:25, 12:17, 12:22, 13:1, 13:6, 13:18, 13:19, 13:20, 30:7, 33:10, 33:15, 33:21, 34:17, 34:25, 45:24, 46:2, 46:5, 46:10, 46:17, 46:21, 47:5, 47:7, 47:9, 47:14, 47:22, 48:9, 49:5, 49:8, 49:19, 49:22, 49:24, 50:3, 50:6, 59:6, 59:10, 59:17, 59:21, 60:5, 60:15, 60:18, 60:24, 61:1, 61:13, 61:19, 61:23, 62:1, 62:4
**spoken** [1] - 55:11
**sponte** [4] - 8:14, 15:20, 15:25, 30:14
**spreading** [2] - 48:3, 60:20
**spring** [1] - 22:10
**sprung** [1] - 16:3
**stacked** [1] - 11:19
**stage** [3] - 27:1, 28:12, 29:14
**stand** [3] - 11:23, 54:18, 55:13
**standard** [1] - 8:8
**standing** [1] - 8:5
**STARGATT** [1] - 2:10
**Stark** [1] - 61:15
**start** [4] - 3:2, 8:18, 24:13, 55:23
**started** [1] - 3:23
**starting** [1] - 5:9
**state** [76] - 3:21, 4:23, 5:3, 9:12, 9:16,

10:20, 12:8, 12:15, 12:23, 15:9, 15:11, 29:11, 31:5, 31:11, 31:15, 31:17, 31:23, 33:10, 35:22, 38:21, 39:4, 39:13, 39:19, 39:23, 40:11, 40:19, 41:13, 41:16, 41:20, 41:23, 42:5, 42:9, 42:17, 43:4, 43:5, 43:6, 43:7, 43:10, 43:21, 44:2, 44:13, 44:15, 45:20, 48:16, 49:14, 50:1, 50:9, 50:18, 50:23, 51:14, 51:18, 52:23, 53:12, 53:14, 54:11, 54:14, 54:17, 54:19, 55:5, 59:9, 60:16, 60:25, 61:2, 62:24, 63:2, 63:6, 63:12, 63:16, 63:20, 63:23, 64:1, 64:12, 64:15, 64:20
**state's** [2] - 41:6, 44:25
**statement** [7] - 24:3, 24:6, 25:11, 25:12, 25:13, 25:20, 29:22
**statements** [1] - 21:21
**STATES** [1] - 1:1
**states** [1] - 21:14
**States** [1] - 1:22
**stating** [1] - 57:22
**status** [1] - 65:6
**statute** [3] - 41:8, 41:12, 41:22
**statutes** [4] - 21:6, 21:18, 41:20, 42:14
**statutory** [1] - 17:16
**stay** [30] - 13:8, 13:15, 13:17, 13:19, 13:23, 14:3, 14:6, 14:20, 14:22, 14:25, 15:2, 31:24, 32:4, 32:7, 32:12, 37:14, 41:2, 42:23, 43:1, 50:7, 50:9, 50:20, 51:2, 51:4, 51:24, 52:1, 52:3, 52:6, 52:15, 65:7
**stayed** [4] - 31:22, 32:15, 32:24, 43:6
**staying** [3] - 32:2, 51:15
**stenographic** [1] - 66:1
**sticking** [1] - 52:15
**still** [5] - 26:2, 33:16, 34:2, 37:2, 63:20
**stimi** [1] - 28:21

**Stoll** [1] - 23:11
**stop** [1] - 51:3
**strategic** [3] - 10:2, 25:18, 39:21
**streamline** [1] - 37:13
**Street** [1] - 1:19
**stringent** [1] - 37:15
**strong** [4] - 41:5, 41:15, 41:18, 45:17
**strongest** [1] - 42:13
**strongly** [4] - 38:6, 41:3, 41:19, 42:11
**strongness** [1] - 42:1
**sua** [4] - 8:14, 15:19, 15:25, 30:14
**subject** [6] - 29:21, 59:8, 59:13, 59:25, 61:5, 61:14
**subjective** [2] - 40:17, 44:14
**submit** [1] - 65:6
**subpoena** [4] - 29:10, 43:4, 43:6, 43:8
**subsequent** [1] - 51:13
**substance** [1] - 55:9
**substantial** [4] - 19:17, 19:18, 19:24, 29:21
**substantially** [4] - 19:16, 20:11, 62:14, 63:23
**substantive** [1] - 45:9
**subteam** [1] - 25:17
**successive** [1] - 62:9
**suddenly** [1] - 3:23
**sue** [1] - 5:3
**sued** [3] - 5:1, 34:22, 36:11
**sufficient** [6] - 8:6, 29:16, 30:1, 30:13, 44:15, 64:19
**sufficiently** [1] - 18:14
**suggest** [1] - 54:19
**suggesting** [2] - 16:4, 26:19
**suing** [1] - 36:1
**suit** [3] - 62:3, 62:6
**suitable** [1] - 57:7
**suits** [3] - 61:23, 62:16, 62:18
**summary** [2] - 34:20, 57:13
**Sunday** [1] - 25:19
**Supp** [1] - 19:20
**supplier** [2] - 20:10, 20:13
**suppliers** [1] - 57:6
**Supply** [2] - 21:8, 21:13

**support** [2] - 23:3, 64:9
**suppose** [1] - 64:14
**supposed** [5] - 22:12, 49:6, 49:25, 57:13, 58:7
**Supreme** [1] - 21:8
**suspiciously** [1] - 45:3
**sustain** [1] - 23:7
**Systems** [1] - 61:25

**T**

**t]he** [2] - 60:17, 64:2
**TABAIE** [2] - 2:19, 55:3
**Tabaie** [2] - 3:15, 10:10
**tagged** [1] - 27:12
**Tanning** [1] - 61:25
**TAYLOR** [3] - 1:13, 1:13, 2:10
**Taylor** [68] - 2:21, 3:13, 4:12, 4:16, 5:16, 6:25, 7:10, 8:19, 8:22, 8:25, 10:16, 11:13, 15:4, 17:2, 18:3, 18:7, 18:22, 20:1, 20:2, 20:8, 20:9, 20:12, 22:21, 25:18, 26:2, 26:11, 26:19, 27:11, 28:20, 29:12, 29:15, 30:23, 32:22, 34:21, 35:21, 36:11, 37:6, 37:20, 40:25, 42:11, 44:10, 44:20, 45:23, 48:16, 54:2, 54:8, 54:23, 54:24, 55:9, 55:10, 56:24, 58:2, 58:13, 58:16, 59:3, 59:4, 59:7, 59:16, 60:6, 62:23, 64:8, 64:22, 65:8
**Taylor's** [6] - 7:21, 10:7, 26:14, 31:14, 34:2, 64:3
**team** [1] - 25:16
**terms** [6] - 31:14, 53:2, 53:18, 53:20, 54:10, 54:17
**terribly** [1] - 4:1
**test** [4] - 47:19, 55:25, 57:15, 62:5
**tests** [3] - 47:17, 57:16
**text** [1] - 25:1
**textbook** [1] - 45:11
**TF** [2] - 33:2, 35:23
**Thanksgiving** [1] -

49:13
**THE** [119] - 1:1, 1:2, 1:22, 3:1, 3:6, 3:11, 3:17, 4:5, 4:20, 5:4, 5:14, 5:23, 6:2, 6:9, 6:12, 6:14, 6:17, 6:19, 6:23, 7:2, 7:5, 7:13, 8:9, 8:14, 9:1, 9:3, 9:5, 9:15, 9:23, 11:1, 11:7, 11:11, 11:20, 12:7, 13:17, 13:22, 14:9, 14:22, 14:24, 15:3, 15:7, 15:19, 15:23, 16:3, 17:7, 17:18, 23:14, 23:16, 23:23, 24:4, 24:10, 24:19, 24:21, 24:24, 25:2, 25:6, 25:8, 25:12, 25:25, 27:4, 27:10, 30:9, 31:2, 31:20, 32:1, 32:12, 33:4, 33:7, 33:16, 34:6, 35:3, 35:6, 35:9, 36:4, 36:18, 37:2, 37:5, 37:17, 37:22, 38:3, 38:9, 38:12, 38:15, 38:18, 38:22, 38:25, 39:7, 39:12, 39:15, 39:19, 39:23, 40:8, 40:11, 40:22, 41:11, 41:18, 42:1, 42:25, 45:22, 47:2, 47:21, 48:3, 48:18, 48:24, 50:10, 50:13, 51:6, 52:9, 53:6, 55:15, 55:17, 55:20, 56:16, 56:22, 57:10, 58:6, 58:18, 58:25, 65:20
**theory** [3] - 20:5, 20:14, 49:18
**therefore** [2] - 59:9, 64:13
**they've** [1] - 56:16
**thighs** [1] - 60:6
**Third** [23] - 7:25, 9:7, 11:22, 12:9, 28:15, 29:19, 32:6, 32:13, 32:14, 33:13, 34:11, 40:24, 45:15, 46:2, 46:23, 47:5, 47:8, 47:9, 47:12, 47:25, 48:7, 59:23, 60:25
**third** [4] - 37:4, 38:13, 43:25, 63:24
**threatened** [1] - 30:4
**three** [14] - 5:13, 9:9, 11:21, 21:22, 26:22, 34:5, 35:18, 36:25, 37:3, 37:7, 37:8,

47:8, 47:12, 47:19
**three-part** [1] - 47:19
**threshold** [4] - 21:24, 24:2, 37:19, 37:24
**throughout** [3] - 18:2, 30:5, 58:12
**throwaway** [1] - 7:22
**ticked** [1] - 14:20
**timing** [1] - 28:13
**Title** [2] - 14:1, 50:16
**today** [5] - 3:4, 3:14, 13:3, 28:25, 59:2
**together** [11] - 26:9, 26:10, 26:17, 27:12, 32:24, 40:13, 53:17, 57:1, 57:22, 58:2
**took** [2] - 49:3, 50:11
**tool** [1] - 17:1
**tools** [2] - 16:16, 37:11
**topics** [1] - 16:16
**tort** [1] - 22:17
**tortious** [4] - 4:15, 15:12, 22:3, 22:5
**towards** [4] - 14:19, 26:4, 41:1, 51:19
**tracking** [1] - 31:11
**traction** [1] - 28:19
**trade** [2] - 15:13, 15:15
**transaction** [1] - 63:8
**transactional** [2] - 62:19, 62:25
**transactions** [1] - 63:9
**transcript** [2] - 65:21, 66:1
**transfer** [9] - 8:9, 8:10, 8:11, 8:16, 11:2, 11:5, 15:21, 30:14, 65:10
**transferring** [1] - 30:17
**transition** [1] - 30:6
**trial** [9] - 4:25, 13:11, 14:19, 31:12, 32:7, 49:12, 51:18, 51:19
**tribunal** [1] - 38:11
**tribunals** [1] - 43:16
**tried** [3] - 32:16, 50:8, 53:22
**true** [5] - 17:9, 46:15, 53:8, 53:9, 66:1
**truth** [1] - 29:13
**try** [2] - 4:7, 64:14
**trying** [5] - 10:20, 26:3, 28:4, 52:22, 53:23
**turn** [2] - 38:23, 50:7
**turning** [1] - 63:18
**twenty** [2] - 26:12,

58:7
**twenty-five** [1] - 58:7
**two** [40] - 4:24, 8:1, 10:5, 12:11, 12:24, 21:5, 21:22, 23:21, 25:22, 26:8, 26:17, 27:2, 28:17, 31:5, 33:24, 34:3, 34:25, 36:25, 37:1, 37:2, 37:20, 37:25, 46:11, 46:21, 47:4, 47:7, 47:11, 47:17, 49:10, 51:20, 51:24, 55:23, 56:5, 56:12, 59:25, 61:23, 62:15, 62:16, 62:18, 65:6
**Twombly** [1] - 57:24
**Tyler** [3] - 4:24, 33:2, 35:22
**type** [3] - 26:21, 41:25, 42:9
**typically** [1] - 34:18

## U

**U.S** [1] - 66:4
**UCL** [2] - 21:4, 21:13
**ultimately** [1] - 43:8
**under** [36] - 9:7, 13:5, 14:19, 15:2, 19:3, 20:21, 21:7, 21:13, 21:18, 22:1, 23:11, 26:24, 29:23, 30:15, 31:24, 32:8, 32:9, 37:16, 40:15, 40:17, 44:19, 45:15, 48:8, 49:15, 50:18, 50:20, 53:22, 55:25, 56:19, 57:23, 57:24, 58:1, 58:4, 59:5, 63:13
**undercut** [1] - 50:8
**underlying** [3] - 36:9, 49:14, 51:17
**undermine** [2] - 48:5, 60:22
**understood** [3] - 47:3, 48:23, 63:6
**unfair** [1] - 41:8
**unflagging** [2] - 8:5, 45:5
**unfolding** [1] - 53:4
**uniformly** [1] - 34:16
**unique** [1] - 53:10
**UNITED** [1] - 1:1
**United** [1] - 1:22
**Univar** [2] - 14:1, 50:17
**unknown** [1] - 22:9
**unless** [4] - 16:8, 30:7, 34:3, 55:12

**unquote** [1] - 26:6
**up** [9] - 36:22, 39:8, 47:2, 47:6, 50:22, 50:25, 52:7, 58:6, 65:12
**urging** [1] - 32:19

## V

**vague** [2] - 19:13, 22:8
**validity** [1] - 43:6
**values** [1] - 37:13
**variety** [1] - 16:16
**various** [2] - 52:5, 64:20
**vast** [1] - 17:2
**vehicle** [1] - 44:16
**venue** [4] - 5:18, 6:6, 6:12, 6:13
**versus** [3] - 8:24, 36:25, 65:4
**vested** [2] - 7:23, 21:10
**view** [2] - 14:8, 31:20
**viewed** [1] - 45:2
**violating** [1] - 28:7
**virtual** [1] - 64:7
**virtually** [2] - 8:5, 45:5
**vis** [2] - 64:22
**vis-a-vis** [1] - 64:22
**volition** [1] - 53:13
**volunteer** [1] - 39:11

## W

**wait** [2] - 31:17, 36:6
**waiting** [2] - 43:12, 65:7
**Walter** [1] - 46:8
**Walton** [13] - 9:7, 33:7, 33:8, 33:12, 33:14, 33:24, 35:1, 46:8, 46:20, 46:22, 59:18, 59:23, 60:2
**wants** [2] - 45:19, 52:7
**warn** [1] - 16:23
**warranted** [1] - 13:5
**warrants** [1] - 51:23
**wash** [2] - 41:24, 43:18
**waste** [6] - 9:25, 10:3, 10:6, 48:5, 48:20, 60:22
**Watkins** [1] - 3:4
**WATKINS** [68] - 2:5, 4:3, 4:6, 4:23, 5:11, 7:6, 7:19, 8:12, 8:20, 9:2, 9:4, 9:7, 9:19, 10:5, 11:4, 11:10, 23:20, 24:1, 24:8,

24:15, 24:20, 24:22, 25:1, 25:4, 25:7, 25:10, 25:15, 26:1, 27:7, 27:17, 30:10, 31:10, 31:24, 32:4, 32:18, 33:5, 33:12, 33:17, 34:15, 35:5, 35:7, 35:17, 36:16, 36:22, 37:4, 37:8, 37:19, 37:24, 38:5, 38:10, 38:13, 38:16, 38:19, 38:23, 39:1, 39:10, 39:14, 39:18, 39:22, 40:4, 40:10, 40:15, 40:24, 41:14, 41:24, 42:2, 43:1, 65:17
**webcast** [1] - 16:16
**Wednesday** [1] - 1:16
**week** [1] - 43:23
**weekly** [1] - 16:12
**weeks** [1] - 28:17
**weighs** [5] - 44:6, 44:8, 44:17, 53:18, 53:25
**well-pleaded** [2] - 17:9, 57:24
**Western** [1] - 12:3
**weststar** [1] - 58:5
**whatsoever** [2] - 18:25, 42:16
**whereas** [2] - 28:11
**whole** [4] - 8:18, 13:14, 35:9, 40:13
**Williams** [1] - 62:20
**Wilmington** [2] - 1:19, 3:15
**WILSON** [1] - 2:11
**Wilson** [1] - 3:9
**wind** [1] - 39:8
**wiped** [1] - 4:17
**wiping** [1] - 4:21
**withdrawing** [1] - 10:10
**withdrew** [1] - 10:14
**witnesses** [2] - 55:1, 55:4
**WL** [6] - 20:22, 60:8, 60:10, 60:13, 61:17, 62:20
**won** [1] - 35:5
**Wong** [1] - 23:11
**WOOD** [1] - 2:14
**Wood** [2] - 3:10, 16:18
**words** [1] - 34:4
**works** [3] - 22:12, 48:2, 57:5
**worried** [1] - 45:23
**wrap** [1] - 58:6
**writing** [3] - 52:8,

52:10, 52:19

## Y

**year** [3] - 4:18, 51:19, 51:20
**years** [3] - 21:22, 26:12
**Yost** [1] - 60:9
**Young** [2] - 3:8, 3:9
**YOUNG** [1] - 2:10

CLOSED,APPEAL

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:22–cv–00606–MN

Kytch, Inc. v. Taylor Commercial Foodservice, LLC
Assigned to: Judge Maryellen Noreika
Related Case: 1:22–cv–00279–MN
Cause: 15:1121 Trademark Infringement

Date Filed: 05/05/2022
Date Terminated: 04/24/2023
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Kytch, Inc.**                                          represented by    **Brian E. Farnan**
Farnan LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777–0300
Fax: (302) 777–0301
Email: bfarnan@farnanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Farnan**
Farnan LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
302–777–0338
Fax: 302–421–5870
Email: mfarnan@farnanlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Taylor Commercial Foodservice, LLC**           represented by    **Edward Bennett Micheletti**
*doing business as*                                              Skadden, Arps, Slate, Meagher & Flom
Taylor Company                                                  LLP
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651–3000
Email: edward.micheletti@skadden.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Taylor Runnells Martin**
Skadden, Arps, Slate, Meagher & Flom
LLP
One Rodney Square
920 North King Street
Wilmington, DE 19801
302–651–3084
Email: sarah.runnells@skadden.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 05/05/2022 | 1 | COMPLAINT filed with Jury Demand against Taylor Commercial Foodservice, LLC ( Filing fee $ 402, receipt number ADEDC–3867317.) – filed by Kytch, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Civil Cover Sheet)(mal) (Entered: 05/05/2022) |
|---|---|---|
| 05/05/2022 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (mal) (Entered: 05/05/2022) |
| 05/05/2022 | 3 | Summons Issued as to Taylor Commercial Foodservice, LLC on 5/5/2022. (mal) (Entered: 05/05/2022) |
| 05/11/2022 | | Case Assigned to Judge Maryellen Noreika. Please include the initials of the Judge (MN) after the case number on all documents filed. (nms) (Entered: 05/11/2022) |
| 05/26/2022 | 4 | SUMMONS Returned Executed by Kytch, Inc.. Taylor Commercial Foodservice, LLC served on 5/26/2022, answer due 6/16/2022. (Farnan, Brian) (Entered: 05/26/2022) |
| 06/13/2022 | 5 | STIPULATION TO EXTEND TIME to EXTEND the deadlines for: (i) Defendant to move to dismiss the Complaint; (ii) Plaintiff's Answering Brief; and (iii) Defendant's Reply Brief to (i) 7/7/2022; (ii) 7/28/2022; and (iii) 8/11/2022 – filed by Kytch, Inc.. (Farnan, Brian) (Entered: 06/13/2022) |
| 06/13/2022 | | SO ORDERED re 5 STIPULATION TO EXTEND the deadlines for: (i) Defendant to move to dismiss the Complaint; (ii) Plaintiff's Answering Brief; and (iii) Defendant's Reply Brief to (i) 7/7/2022; (ii) 7/28/2022; and (iii) 8/11/2022 (Set/Reset Answer Deadlines: Taylor Commercial Foodservice, LLC answer due 7/7/2022. Set Briefing Schedule: Answering Brief due 7/28/2022. Reply Brief due 8/11/2022). ORDERED by Judge Maryellen Noreika on 6/13/2022. (dlw) (Entered: 06/13/2022) |
| 07/07/2022 | 6 | MOTION to Dismiss for Failure to State a Claim or, in the Alternative, Motion to Stay – filed by Taylor Commercial Foodservice, LLC. (Attachments: # 1 Text of Proposed Order)(Micheletti, Edward) Modified on 7/8/2022 (dlw). (Entered: 07/07/2022) |
| 07/07/2022 | 7 | OPENING BRIEF in Support re 6 MOTION to Dismiss for Failure to State a Claim or, in the Alternative, Motion to Stay filed by Taylor Commercial Foodservice, LLC. Answering Brief/Response due date per 5 Stipulation and Order is 7/28/2022. (Micheletti, Edward) Modified on 7/8/2022 (dlw). (Entered: 07/07/2022) |
| 07/07/2022 | 8 | DECLARATION of Sarah R. Martin re 7 Opening Brief in Support by Taylor Commercial Foodservice, LLC. (Attachments: # 1 Exhibit 1–3, # 2 Exhibit 4–6, # 3 Exhibit 7–9)(Micheletti, Edward) Modified on 7/8/2022 (dlw). (Entered: 07/07/2022) |
| 07/08/2022 | | Set Briefing Schedule: re 6 MOTION to Dismiss for Failure to State a Claim or, in the Alternative, Motion to Stay – Answering Brief due 7/28/2022. Reply Brief due 8/11/2022 (per D.I. 5 Stipulation and Order). (dlw) (Entered: 07/08/2022) |
| 07/18/2022 | 9 | Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent The Middleby Corporation for Taylor Commercial Foodservice, LLC filed by Taylor Commercial Foodservice, LLC. (Micheletti, Edward) (Entered: 07/18/2022) |
| 07/28/2022 | 10 | ANSWERING BRIEF in Opposition re 6 MOTION to Dismiss for Failure to State a Claim or, in the Alternative, Motion to Stay filed by Kytch, Inc. Reply Brief due date per 5 Stipulation and Order is 8/11/2022. (Farnan, Brian) Modified on 7/29/2022 (dlw). (Entered: 07/28/2022) |
| 08/11/2022 | 11 | REPLY BRIEF re 6 MOTION to Dismiss for Failure to State a Claim or, in the Alternative, Motion to Stay filed by Taylor Commercial Foodservice, LLC. (Attachments: # 1 Exhibit 10 (Micheletti, Edward) Modified on 8/12/2022 (dlw). (Entered: 08/11/2022) |
| 08/18/2022 | 12 | REQUEST for Oral Argument by Taylor Commercial Foodservice, LLC re 6 MOTION to Dismiss for Failure to State a Claim or, in the Alternative, Motion to Stay. (Micheletti, Edward) (Entered: 08/18/2022) |
| 09/16/2022 | 13 | NOTICE of Subsequent Authority by Kytch, Inc. (Attachments: # 1 Exhibit 1)(Farnan, Brian) (Entered: 09/16/2022) |
| 09/19/2022 | 14 | NOTICE of Defendant Taylor Commercial Foodservice, LLC's Response to Kytch, Inc.'s Notice of Subsequent Authority by Taylor Commercial Foodservice, LLC re 13 |

| | | |
|---|---|---|
| | | Notice (Other) (Micheletti, Edward) (Entered: 09/19/2022) |
| 02/15/2023 | 15 | ORAL ORDER Setting Hearing on (9 in 1:22–cv–00279–MN) (6 in 1:22–cv–00606–MN) MOTION to Dismiss – IT IS HEREBY ORDERED that a Motion Hearing is set for 3/29/2023 at 10:00 AM in Courtroom 4A before Judge Maryellen Noreika. The Court is setting aside 50 minutes for the hearing with the time split equally between the two cases and then between the parties. Any slide presentations the parties wish to use during the hearing shall be emailed (in PDF format) to MN_civil@ded.uscourts.gov no later than 24 hours prior to the hearing with hard copies delivered to the Clerk's office within one (1) hour thereafter. Counsel may, however, agree upon a different time to exchange to respective slides. ORDERED by Judge Maryellen Noreika on 2/15/2023. (dlw) (Entered: 02/15/2023) |
| 03/20/2023 | 16 | MOTION for Pro Hac Vice Appearance of Attorney Abraham A. Tabaie – filed by Taylor Commercial Foodservice, LLC. (Attachments: # 1 Text of Proposed Order, # 2 Certification of Abraham A. Tabaie)(Micheletti, Edward) (Entered: 03/20/2023) |
| 03/21/2023 | | SO ORDERED re 16 MOTION for Pro Hac Vice Appearance of Attorney Abraham A. Tabaie filed by Taylor Commercial Foodservice, LLC. ORDERED by Judge Maryellen Noreika on 3/21/2023. (dlw) (Entered: 03/21/2023) |
| 03/29/2023 | | Minute Entry for proceedings held before Judge Maryellen Noreika – Motion Hearing held on 3/29/2023 re Motions to Dismiss (9 in 1:22–cv–00279–MN, 6 in 1:22–cv–00606–MN). After hearing arguments, the Motion to Dismiss in 1:22–cv–00279–MN is GRANTED–IN–PART and DENIED–IN–PART, and the Motion to Dismiss in 1:22–cv–00606–MN is GRANTED; the complaint is DISMISSED without prejudice. Further, the parties shall confer on whether these cases should be stayed, and submit a proposed briefing schedule if a party wishes to file such motion. The transcript shall serve as the Court's order. (Court Reporter Dale Hawkins.) Associated Cases: 1:22–cv–00279–MN, 1:22–cv–00606–MN(mdb) (Entered: 03/29/2023) |
| 04/04/2023 | 17 | Official Transcript of Motion Hearing held on 03/29/2023 before Judge Maryellen Noreika. Court Reporter/Transcriber Dale C. Hawkins,Email: Dale_Hawkins@ded.uscourts.gov. Transcript may be viewed at the court public terminal or order/purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 4/25/2023. Redacted Transcript Deadline set for 5/5/2023. Release of Transcript Restriction set for 7/3/2023. (dh) (Entered: 04/04/2023) |
| 04/24/2023 | | CASE CLOSED (dlw) (Entered: 04/24/2023) |
| 04/28/2023 | 18 | NOTICE OF APPEAL of 15 Order Setting Hearing on Motion (March 29, 2023 Oral Order). Appeal filed by Kytch, Inc. (Farnan, Brian) Modified on 4/28/2023 (dlw). (Entered: 04/28/2023) |
| 04/28/2023 | | APPEAL – Credit Card Payment received re 18 Notice of Appeal (Third Circuit) filed by Kytch, Inc.. ( Filing fee $505, receipt number ADEDC–4123946.) (Farnan, Brian) (Entered: 04/28/2023) |