REQUESTED ORAL ARGUMENT NOT YET SCHEDULED

No. 23-1810

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

KYTCH, INC.

*Plaintiff-Appellant,*

v.

TAYLOR COMMERCIAL FOODSERVICE, LLC DBA TAYLOR COMPANY

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Delaware
(Case No. 1:22-cv-00606-MN)

**PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT**

DANIEL P. WATKINS
MARK THOMSON
Meier Watkins Phillips Pusch LLP
919 18th Street NW, Suite 650
Washington, DC 20006
Daniel.Watkins@mwpp.com
Mark.Thomson@mwpp.com

*Attorneys for Plaintiff-Appellant
  Kytch, Inc.*

November 27, 2023

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and LAR 26.1, Kytch, Inc. makes the following disclosure:

1. Kytch, Inc. is a wholly owned subsidiary of Frobot, Inc.

2. No publicly held company owns 10% or more Kytch's stock.

3. No publicly held corporation has a financial interest in the outcome of the proceeding.

/s/ Daniel P. Watkins                    Dated: November 27, 2023

Daniel P. Watkins

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iv

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ...........................................................2

STATEMENT OF ISSUES ........................................................................2

STATEMENT OF RELATED CASES ..................................................4

STATEMENT OF THE CASE ...................................................................5

I.      Kytch sues Taylor on unfair competition claims in California state court. ....5

II.     Kytch files this action, asserting a Lanham Act claim against Taylor, but the district court abstains ...................................................................8

SUMMARY OF ARGUMENT ..............................................................9

STANDARD OF REVIEW ...................................................................12

ARGUMENT ........................................................................................13

I.      The district court reversibly erred in dismissing Kytch's complaint under the rule against claim-splitting. ..................................................14

        A.      The rule against claim-splitting only bars an action when the parallel proceeding is in federal court. ..............................................14

        B.      The district court erred in holding that claim-splitting applied to this case. .....................................................................................19

II.     Abstention Would Be Unwarranted Under *Colorado River*. .......................21

III.    Kytch Properly Pled Its Federal False Advertising Claim. ...........................28

        A.      Taylor Is Responsible for Publishing the False Ads. .........................30

B.    The False Ads Are Commercial Speech Because They Promote "Open Kitchen" and Encourage Users to Discontinue Using Kytch, to Taylor's Benefit. ...............................................................34

CONCLUSION .................................................................................39

CERTIFICATE OF COMPLIANCE ....................................................40

CERTIFICATE OF SERVICE..............................................................42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ankenbrandt v. Richards*,
   504 U.S. 689 (1992) ...................................................................16

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) .............................................37

*AT&T Co. v. Winback & Conserve Program*,
   42 F.3d 1421 (3d Cir. 1994) ...............................................33

*Beasley v. Howard*,
   14 F.4th 226 (3d Cir. 2021) ................................................13

*Bolger v. Youngs Drug Prod. Corp.*,
   463 U.S. 60 (1983) .............................................................36

*Bowman v. Coddington*,
   517 F. App'x 683 (11th Cir. 2013) ..............................20, 21

*Brillhart v. Excess Ins. Co. of Am.*,
   316 U.S. 491 (1942) ...........................................................20

*Castrol Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993) ...............................................29

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
   No. 14-cv-585, 2015 WL 4002468 (S.D.N.Y. July 1, 2015),
   *aff'd*, 843 F.3d 48 (2d Cir. 2016) .......................................34

*Cohens v. Virginia*,
   19 U.S. 264 (1821) ...............................................................9

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976) ............................................ 1, 2, 3, 8, 9,
   10, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 27, 28

*Cornette v. Graver*,
   473 F. Supp. 3d 437 (W.D. Pa. 2020) ...............................38

iv

*Cottrell v. Duke,*
737 F.3d 1238 (8th Cir. 2013) ............................................................18

*Crash Proof Retirement, LLC v. Price,*
533 F. Supp. 3d 227 (E.D. Pa. 2021) ...................................................38

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.,*
381 F.3d 131 (3d Cir. 2004) ........................................................17, 22

*Deston Therapeutics LLC v. Trigen Lab'ys Inc.,*
723 F. Supp. 2d 665 (D. Del. 2010) .....................................................36

*Doe v. Princeton Univ.,*
30 F.4th 335 (3d Cir. 2022) .................................................................29

*Donsco, Inc. v. Casper Corp.,*
587 F.2d 602 (3d Cir. 1978) ................................................................31

*Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.,*
40 F.3d 1431 (3d Cir. 1994) ................................................................22

*Duty Free Ams., Inc. v. Estee Lauder Cos.,*
797 F.3d 1248 (11th Cir. 2015) ...........................................................32

*Ethypharm S.A. France v. Abbott Labs.,*
707 F.3d 223 (3d Cir. 2013) ..........................................................32, 33

*Exon Mobile Corp. v. Saudi Basic Indus. Corp.,*
544 U.S. 280 (2005) .............................................................................15

*Facenda v. N.F.L. Films, Inc.,*
542 F.3d 1007 (3d Cir. 2008) ...................................................12, 34, 37

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
314 F.3d 48 (2d Cir. 2002) ..................................................................35

*First Health Grp. Corp. v. BCE Emergis Corp.,*
269 F.3d 800 (7th Cir. 2001) ...............................................................36

*FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.,*
498 U.S. 269 (1991) ...............................................................................2

*Frederick L. v. Dep't of Pub. Welfare*,
422 F.3d 151 (3d Cir. 2005) ...............................................12

*Gonzalez v. Waterfront Com'n of N.Y. Harbor*,
755 F.3d 176 (3d Cir. 2014) ...............................................17

*Greater Phila. Chamber of Com. v. City of Phila.*,
949 F.3d 116 (3d Cir. 2020)................................................34

*Grode v. Mut. Fire, Marine and Inland Ins. Co.*,
8 F.3d 953 (3d Cir. 1993) ...................................................12

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ............................................................24

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
700 F. App'x 251 (4th Cir. 2017).......................................37

*Hannah v. S-L Distrib. Co.*,
No. 19-cv-2143, 2021 WL 51581 (M.D. Pa. Jan. 6, 2021) ................................19

*Harris v. Pernsley*,
755 F.2d 338 (3d Cir. 1985) ........................................17, 25

*Innova Hosp. San Antonio v. Blue Cross & Blue Shield of Ga., Inc.*,
892 F.3d 719 (5th Cir. 2018)..............................................38

*Intellectual Ventures I LLC v. Altera Corp.*,
842 F. Supp. 2d 744 (D. Del. 2012) ..................................24

*Jordan v. Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014).............................................37

*Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals, Inc.*,
722 F.3d 88 (2d Cir. 2013) .................................................18

*Kos Pharm., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004)...............................................22

*Ky. W. Va. Gas Co. v. Pa. Pub. Utility Comm'n*,
791 F.2d 1111 (3d Cir. 1986) .............................................25

*Laurel Gardens, LLC v. McKenna*,
   948 F.3d 105 (3d Cir. 2020) ................................................28

*Maldonado v. Flynn*,
   417 A.2d 378 (Del. Ch. 1980) ..............................................19

*McDonald's Corp. v. Am. Motorists Ins. Co.*,
   748 N.E.2d 771 (Ill. App. Ct. 2001) .....................................35

*McMurray v. De Vink*,
   27 F. App'x 88 (3d Cir. 2002) ..............................................27

*McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*,
   373 U.S. 668 (1963) ..........................................................26

*Mohamad v. HSBC Bank N.A.*,
   No. 16-cv-2239, 2018 WL 8576597 (M.D. Fla. March 27, 2018) ...............20, 21

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................16, 22, 23, 25, 27, 28

*Nafar v. Hollywood Tanning Sys., Inc.*,
   339 F. App'x 216 (3d Cir. 2009) ...........................................15

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
   571 F.3d 299 (3d Cir. 2009) .....................................17, 23, 25, 26, 28

*Newborn Bros. Co. v. Albion Eng'g Co.*,
   481 F. Supp. 3d 312 (D.N.J. 2020) ......................................32, 33

*Noel v. Hall*,
   341 F.3d 1148 (9th Cir. 2003) ..............................................18

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
   290 F.3d 578 (3d Cir. 2002) ................................................36

*NYLife Distribs., Inc. v. Adherence Grp., Inc.*,
   72 F.3d 371 (3d Cir. 1995) ...............................................14, 21

*Patel v. Dhaduk*,
   839 F. App'x 715 (3d Cir. 2020) ...........................................32

*Porous Media Corp. v. Pall Corp.*,
 173 F.3d 1109 (8th Cir. 1999) ..............................................................35

*Pryor v. NCAA*,
 288 F.3d 548 (3d Cir. 2002) ...................................................................5

*Rarick v. Fed. Serv. Ins. Co.*,
 852 F.3d 223 (3d Cir. 2017) .................................................................10

*Reo v. USPS*,
 98 F.3d 73 (3d Cir. 1996) ......................................................................2

*Robinson v. Ruiz*,
 772 F. Supp. 212 (D. Del. 1991) ..........................................................24

*Ryan v. Johnson*,
 115 F.3d 193 (3d Cir. 1997) ...........................................1, 2, 10, 17, 25, 27, 28

*Rycoline Prods., Inc. v. C & W Unlimited*,
 109 F.3d 883 (3d Cir. 1997) .................................................................17

*Spring City Corp. v. Am. Bldgs. Co.*,
 193 F.3d 165 (3d Cir. 1999) .............................................................17, 27

*Steinberg v. Nationwide Mut. Ins. Co.*,
 418 F. Supp. 2d 215 (E.D.N.Y. 2006); .................................................17

*Synthes, Inc. v. Emerge Med., Inc.*,
 No. 11-cv-1566, 2012 WL 4205476 (E.D. Pa. Sept. 19, 2012) .........31

*Synygy, Inc. v. Scott-Levin, Inc.*,
 51 F. Supp. 2d 570 (E.D. Pa. 1999) .....................................................33

*Thorn v. Reliance Van Co.*,
 736 F.2d 929 (3d Cir. 1984) .................................................................29

*Toll Bros., Inc. v. Twp. of Readington*,
 555 F.3d 131 (3d Cir. 2009) .................................................................22

*TrafficSchool.com, Inc. v. Edriver Inc.*,
 653 F.3d 820 (9th Cir. 2011) ...............................................................31

*Travelers Indem. Co. v. Newlin*,
  498 F. Supp. 3d 1262 (S.D. Cal. 2020) ..............................................................18

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*,
  898 F.2d 914 (3d Cir. 1990) ...............................................................12, 34, 35

*United States v. Haytian Republic*,
  154 U.S. 118 (1894) ........................................................................................15

*Univ. of Md. v. Peat Marwick Main & Co.*,
  923 F.2d 265 (3d Cir. 1991) .......................................................................11, 15

*Walton v. Eaton Corp.*,
  563 F.2d 66 (3d Cir. 1977) .........................................................................15, 17

*Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ........................................................................................15

*Williams v. Nat'l Am. Postal Workers Union, AFL-CIO*,
  No. 03-cv-944, 2005 WL 977858 (D. Del. Apr. 27, 2005) ...............................34

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ....................................................................................20, 21

*Wyles v. Sussman*,
  661 F. App'x 548 (10th Cir. 2016) ...................................................................18

*Yost v. Anthem Life Ins. Co.*,
  No. 18-cv-1522, 2019 WL 3451507 (M.D. Pa. July 30, 2019) ..........................19

*Zelinski v. Shurwest, LLC*,
  No. 19-cv-804, 2021 WL 765469 (M.D. Fla. Feb. 26, 2021) ............................24

**Statutes**

15 U.S.C. § 1121 ..........................................................................................2, 26, 33

15 U.S.C. § 1125 ....................................................................................29, 31, 32, 33

28 U.S.C. § 1291 ......................................................................................................2

**Rules**

Fed. R. App. P. 4 ......................................................................................................2

Fed. R. Civ. P. 58 ................................................................................................2

Fed. R. Civ. P. 9 ..............................................................................................38

# **INTRODUCTION**

This appeal presents a straightforward question of law: When may a district court decline to exercise jurisdiction over a federal damages action in favor of a parallel, state-court proceeding? For nearly half a century, the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) has supplied the answer. Here, the district court disregarded *Colorado River* and its progeny and instead applied the rule against claim-splitting to hold that the pendency of a related proceeding in California state court justified dismissing Kytch's federal Lanham Act claim. That was reversible error.

The rule against claim-splitting applies exclusively to actions where the related proceeding is in *federal* court. That is not this case. Because the related proceeding here is in *state* court, the rule against claim-splitting cannot apply and the district court lacked the authority to decline jurisdiction unless this action meets the "exceptional circumstances" standard set out in *Colorado River*. And because this action manifestly does not meet that standard, the district court could not decline jurisdiction. The "century-old principle … that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction'" controls. *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997).

This Court should vacate the that dismissal and remand this matter so that the district court can exercise jurisdiction as Congress instructed.

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action under 15 U.S.C. § 1121. On March 29, 2023, the district court dismissed this action. Kytch timely filed its notice of appeal on April 28, 2023.

This Court has jurisdiction under 28 U.S.C. § 1291.[1] At the latest, the district court's judgment, made orally and memorialized in a docketed transcript, became final 150 days after it was entered—*i.e.*, on August 28, 2023. Fed. R. Civ. P. 58(c)(2)(B). [*See also* COA Dkt. 14 at 2.] Kytch's notice of appeal is effective at least as of the date of that final judgment. *See* Fed. R. App. P. 4(a)(2); *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 274-75 (1991); *Reo v. USPS*, 98 F.3d 73, 75 (3d Cir. 1996).

# STATEMENT OF ISSUES

1.    "[F]ederal courts have a virtually unflagging obligation to exercise the jurisdiction given them by Congress," and "[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."[2] Only in the "extremely limited circumstances" defined by *Colorado River*'s "exceptional circumstances" standard

---

[1] On November 17, 2023, Taylor filed a motion to dismiss this appeal for lack of jurisdiction. [COA Dkt. 22.] Kytch will address Taylor's arguments in a separate response brief.

[2] *Ryan*, 115 F.3d at 195.

may a federal court defer to a pending state-court proceeding.[3]  The district court

dismissed Kytch's Lanham Act claim because there was a pending proceeding in

California state court, and without applying *Colorado River's* "exceptional

circumstances" standard.  Did the district court err in applying the rule against claim-

splitting instead of *Colorado River* in dismissing Kytch's Lanham Act claim?

2.    Under *Colorado River*, there is a "heavy presumption … in favor of

exercising federal jurisdiction" that can only be overcome in "exceptional

circumstances," which requires a showing that several well-established factors—

especially whether there is a strong federal policy favoring abstention in deference

to the state-court proceeding—warrant dismissal.[4]  Here, not only is there no such

federal policy, but most of the relevant factors weigh against abstention.  Did the

district court err in dismissing Kytch's Lanham Act claim?

3.    Although the district court did not reach the issue, Taylor argued below

that Kytch failed to state a Lanham Act claim because Kytch had not plausibly

alleged that Taylor published the defamatory statements and because those

statements were not commercial speech.  But Kytch's complaint repeatedly and

expressly alleged that Taylor collaborated with McDonald's to publish the

defamatory statements.   And those statements were created for the manifestly

---

[3] *Id.*

[4] *Id.* at 200; *Colorado River*, 424 U.S. at 818-19.

commercial purpose of selling Taylor's and McDonald's Open Kitchen product and disparaging Kytch's competing product. Is dismissal warranted for failure to state a claim?

## STATEMENT OF RELATED CASES

No appeal from this action has previously been before this or any other appellate court.

There are two related litigations currently pending. The first is in California state court against Appellee Taylor Commercial Foodservice, LLC, before the Superior Court for Alameda County. *Kytch v. Jonathan Tyler Gamble, et al.*, Case No. RG21099155 (Cal. Sup. Ct., Alameda Cty.). Trial is scheduled to begin on May 6, 2024.

The second related litigation is in the Northern District of California against McDonald's Corporation. *Kytch v. McDonald's Corp.*, 3:23-cv-1998 (N.D. Cal. 2023). That case was identified as a related case in the District of Delaware (*Kytch, Inc. v. McDonald's Corp.*, 1:22-cv-00279 (D. Del. 2022)), before that court dismissed this action and transferred the McDonald's litigation to the Northern District of California.

<u>**STATEMENT OF THE CASE**</u>

This case involves Taylor's efforts to unlawfully compete with Kytch, a company that invented a solution to fix McDonald's notoriously broken soft-serve machines.[5]

## I. Kytch sues Taylor on unfair competition claims in California state court.

Kytch is a technology company that provides innovative solutions and services for industrial kitchens. (A36-37 ¶ 6-7, 44-45 ¶¶ 34-40.) Its flagship product is the Kytch Solution, an aftermarket technology designed to improve the reliability and performance of the Taylor Model C602 soft-serve machines at McDonald's and other fast food restaurants. (A36-37 ¶¶ 6-7.) The C602 machines are "notorious for constantly breaking down," and this costs McDonald's franchisees thousands of dollars in machine downtime and costly repair and service fees. (A36 ¶ 6, A48 ¶ 53.) Adding insult to injury, Taylor requires that these repairs are completed by "Taylor-certified technicians." (A53 ¶ 75.) This arrangement was a moneymaker for Taylor, and Kytch's innovations threatened to disrupt it. (A44 ¶ 36.)

After rigorous safety and reliability testing conducted by independent laboratories and consistent with the highest industry standards, Kytch launched its Kytch Solution as part of a confidential product trial ("Kytch Trial"). (A44 ¶ 35.)

---

[5] This statement of the case assumes the truth of the factual allegations in the Complaint (A35-105), as proper on appeal from the pleading-stage dismissal of an action. *See Pryor v. NCAA*, 288 F.3d 548, 559 (3d Cir. 2002).

Kytch launched after years of product development and was an overnight sensation because it increased machine uptimes by preventing errors before they occurred, enhanced safety by flagging cleaning and heating cycles, and allowed restaurant owners to remotely monitor the machines. (A44-45 ¶ 37.) Within months, Kytch became the largest independent connectivity software vendor for McDonald's soft-serve machines, and it was endorsed by the largest association of independent McDonald's franchisees. (A44-45 ¶¶ 37-38, A65-67 ¶¶ 137-38, A76 ¶¶ 184-86.)

A few weeks after that endorsement, Taylor and McDonald's grew desperate. (A78 ¶ 191.) The two companies were still in the early stages of developing their competing product, "Open Kitchen," and the project was nowhere near ready for launch. (*Id.*) So Taylor and McDonald's undertook a false advertising campaign to destroy Kytch's business. (A42 ¶¶ 25-26, A93 ¶¶ 252-53.) The ads they produced (the "False Ads")—released in November 2020 to thousands of McDonald's restaurant operators—touted Taylor and McDonald's fledgling product and falsely claimed that the "Kytch device creates a potential very serious safety risk" and "can cause serious human injury." (A81-82 ¶¶ 205-07.) These claims were baseless. (A79 ¶ 197, A83 ¶ 212.) But the False Ads had their intended effect. (A85 ¶¶ 219-224.) Almost immediately, customers started returning their Kytch Solutions, the company "lost nearly all its existing customers," and Kytch's value was decimated. (A98-99 ¶¶ 273-76, A101¶¶ 283-85.)

In May 2021, Kytch sued Taylor (and others) in Alameda County, California Superior Court (the "California Action"), asserting trade secret misappropriation, tortious interference, and other claims for the defendants' scheme to infiltrate the Kytch Trial. (Compl., *Kytch v. Gamble, et al.*, No. RG21099155 (Cal. Sup. Ct. May 10, 2021).) Taylor and McDonald's represented to the court that they never possessed or "tested the Kytch Solution." (A40-41 ¶¶ 22.) Thus, they never "determined" that the Kytch Solution posed safety risks and their statements about Kytch in the False Ads were necessarily fabricated. After Taylor and McDonald's made these representations in the California Action, Kytch filed an action against McDonald's in Delaware federal court. (Compl., *Kytch, Inc. v. McDonald's Corp.*, No. 22-CV-00279-MN (D. Del. Mar 1, 2022) [Dkt. 1] ("McDonald's Compl.").) Kytch also filed an amended complaint in the California Action adding state law unfair competition, false advertising, and other claims against Taylor and its co-defendants. (First Am. Compl., *Kytch v. Gamble, et al.*, No. RG21099155 (Cal. Sup. Ct. Apr. 29, 2022).) Taylor threatened to remove the entire California Action to federal court if Kytch added its Lanham Act claim, which would, in effect, have caused Kytch's lawsuit pending since May 2021 to start over. Kytch had to choose between years of further delay just to get its day in court or filing the instant case. It chose the latter.

## II. Kytch files this action, asserting a Lanham Act claim against Taylor, but the district court abstains.

In May 2022, Kytch filed this action asserting a federal Lanham Act claim against Taylor approximately two months after suing McDonald's in federal court. (A35, 104.) Taylor filed a motion asking the district court to dismiss or abstain from hearing Kytch's claims or stay its proceedings until the completion of the state-court action.[6] [D. Ct. Dkt. 7 at 3] Taylor argued that, by filing the second lawsuit against Taylor in federal court, Kytch had engaged in improper claim splitting. [*Id.* at 7-11.] Taylor also argued that Kytch had failed to state a false advertising claim under the Lanham Act because it had failed to plausibly allege that Taylor published the defamatory statements and because those statements were not "commercial advertising" under the Lanham Act. [*Id.* at15-19.]

Kytch opposed Taylor's motion. [D. Ct. Dkt. 10.] It argued that the court lacked authority to abstain in favor of the California Action because the binding, "exceptional circumstances" standard set forth in *Colorado River* and its progeny was not satisfied. [*Id.* at 3, 8-12.] The rule against claim-splitting, Kytch pointed out, had no application to an action like this one. [*Id.* at 6-8.] Kytch also rebutted

---

[6] McDonald's filed a Motion to Dismiss on April 22, 2022. The district court dismissed Kytch's claim for negligent interference with business expectancy, but held that "there are sufficient allegations in the complaint" to state claims for tortious interference of contract, false advertising under the Lanham Act, state-based unfair competition and false advertising, and trade libel.

Taylor's argument that it had failed to state a Lanham Act claim, citing a multitude of instances in which its complaint referenced Taylor's own emails confirming that Taylor materially participated in publishing the False Ads and that the False Ads were commercial advertising under the Lanham Act. [*Id.* at 13-17.]

In ruling on Taylor's motion, the district court acknowledged Kytch's position concerning abstention, but rejected the argument. (A18.) On March 29, 2023, at the close of a hearing on Taylor's motion, the district court issued an oral decision dismissing Kytch's complaint without prejudice to Kytch's refiling its Lanham Act claim as part of the California Action. (A17-19.) The district court held that, in adjudicating Taylor's motion, it could apply the relaxed standard for claim-splitting instead of the much more stringent requirements of *Colorado River*. (A18.) Applying that standard, the district court held that dismissal was warranted because this action and the California Action involved the same subject matter and evidence and arose from the same transactional nucleus of facts. (A17-19.) Kytch timely appealed that ruling. (A1-2.)

## SUMMARY OF ARGUMENT

The district court lacked power to decline jurisdiction over Kytch's Lanham Act claim. Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). Consequently, "[t]he rule is well recognized that the pendency of

an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997) (quoting *Colorado River*, 424 U.S. at 817).

"There are but a few extraordinary and narrow exceptions to this rule." *Rarick v. Fed. Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017) (quotation marks and alterations omitted). They are reflected in the *Colorado River* abstention standard. But the district court did not apply that standard here. Instead, it applied the rule against claim-splitting, which permits a district court to dismiss an action only based on the pendency of a parallel *federal* proceeding.

The district court erred in applying the rule against claim-splitting. As precedents from this Court, the Supreme Court, and courts around the country make clear, the rule does not apply to cases, like this one, where the putative parallel proceeding is in *state* court. Without that limitation, the rule against claim-splitting would swallow and nullify the *Colorado River* abstention standard.

Declining jurisdiction in favor of the California Action would be permissible only if this action fit within the exceedingly narrow confines of the *Colorado River* standard. It does not. Indeed, of the six factors courts typically consider in applying the *Colorado River* standard, only one potentially supports abstention, and the most important factor from *Colorado River*—whether there "is evidence of a strong federal policy that all claims should be tried in the state courts," *Ryan*, 115 F.3d at

198—cuts squarely against abstention. Especially given "that *Colorado River* abstention applies only in clear and exceptional cases, with the balance heavily weighted in favor of the exercise of jurisdiction," *Univ. of Md. v. Peat Marwick Main & Co.*, 923 F.2d 265, 276 (3d Cir. 1991) (quotation marks omitted), applying the *Colorado River* factors to the facts here leaves no doubt that the district court lacked power to decline jurisdiction over Kytch's Lanham Act claim.

Because the district court declined to exercise jurisdiction over Kytch's action, it did not reach Taylor's argument that Kytch failed to state a claim under the Lanham Act. That argument, however, provides no alternative basis for affirmance. Taylor contended that Kytch failed to plead that Taylor was responsible for the False Ads. Kytch's complaint, however, plausibly alleges in scores of places that Taylor "develop[ed]," "arranged for … distribution [of]," and "disseminate[d]" the False Ads. (A39-40, 42, 45, 81-83, 92-93, 99, 101-02.) The complaint even provides screenshots of communications with Taylor executives discussing messaging for the False Ads in the days before they were finalized. (A39-40 ¶¶ 20-21.)

Taylor also contended that Kytch failed to state a claim under the Lanham Act because the False Ads were not "commercial advertising," since they were not commercial speech distributed by a Kytch competitor. That argument blinks reality. Commercial speech is "broadly defined as expression related to the economic interests of the speaker and its audience." *U.S. Healthcare, Inc. v. Blue Cross of*

*Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990). To determine if speech is commercial advertising, courts ask (1) whether the speech is an advertisement, (2) whether the speech refers to a specific product or service, and (3) whether the speaker has an economic motivation for the speech. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008) (citing *U.S. Healthcare, Inc.*, 898 F.2d at 933). The False Ads readily satisfy all three considerations: (1) they identify and promote the benefits of Open Kitchen, (2) they identify and disparage Kytch's competing product, and (3) they do so in order that McDonald's and Taylor might benefit from Kytch customers ditching the Kytch Solution in favor of Open Kitchen, thereby increasing sales.

Nothing in Taylor's motion justifies dismissal of Kytch's Lanham Act claim. The district court's decision dismissing the claim should be vacated and this case remanded for further proceedings.

## **STANDARD OF REVIEW**

The district court's decision to abstain by applying the rule against claim-splitting—instead of *Colorado River*'s "exceptional circumstances" test—is subject to *de novo* review. *See Grode v. Mut. Fire, Marine and Inland Ins. Co.*, 8 F.3d 953, 957-58 (3d Cir. 1993) ("Whether this case falls in the range within which a district court may exercise discretion is a matter of law, reviewable on a plenary basis."); *Frederick L. v. Dep't of Pub. Welfare*, 422 F.3d 151, 155 (3d Cir. 2005) (issues of

law are reviewed *de novo*).  Whether Kytch's complaint states a claim under the Lanham Act is also subject to *de novo* review.  *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021).

## <u>ARGUMENT</u>

The district court erred in dismissing Kytch's action.

***First*,** the district court erred in applying the rule against claim-splitting, which only applies when there is a parallel proceeding in *federal* court.  No federal proceeding parallel to this case exists.

***Second*,** although the district court did not analyze Taylor's motion under *Colorado River*, that standard also does not authorize abstention in this case because the *Colorado River* factors affirmatively support the exercise of jurisdiction.  The circumstances here are nowhere near sufficient to overcome the heavy presumption in favor of jurisdiction from which any *Colorado River* analysis begins.

***Third*,** although the district court failed to address Taylor's arguments that Kytch had failed to state a valid Lanham Act claim, those arguments also cannot justify dismissal.  Kytch's complaint is rife with concrete factual allegations detailing the ways Taylor materially participated in publishing the False Ads.  And, because the False Ads were published to promote Open Kitchen and denigrate Kytch's competing product, all to enrich Taylor and its partner, McDonald's, the

False Ads qualify as "commercial advertising" by a Kytch competitor, actionable under the Lanham Act.

This Court should vacate the district court's dismissal and remand this matter for further proceedings.

# I. The district court reversibly erred in dismissing Kytch's complaint under the rule against claim-splitting.

The district court applied the rule against claim-splitting to dismiss Kytch's Lanham Act claim. But that rule only bars an action when there is a parallel proceeding *in federal court*, and the only proceeding parallel to this one is the California Action, which is *in state court*, not federal court. Consequently, the district court erred as a matter of law in applying the rule against-claim splitting to dismiss Kytch's lawsuit.

## A. The rule against claim-splitting only bars an action when the parallel proceeding is in federal court.

When a federal action seeking legal relief runs parallel to another proceeding involving similar parties and issues, a district court may, under certain circumstances, decline jurisdiction over the action. *See NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 376 (3d Cir. 1995). The standard governing the district court's decision depends on the forum for the parallel proceeding.

If the parallel proceeding is in ***federal court***, "the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*,

424 U.S. 800, 817 (1976).  This general principle, sometimes called the rule against claim-splitting, *see Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224 (3d Cir. 2009), allows courts to decline jurisdiction over a later-filed action when there is an earlier-filed, federal action involving the same parties, the same rights, and the same claims, all arising out of the same transaction or series of transactions as the later-filed action.  *United States v. Haytian Republic*, 154 U.S. 118, 123-24 (1894); *see also Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (citing *Haytian Republic*, 154 U.S. at 123-24).

If the parallel proceeding is in ***state court***, however, the "rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'"  *Colorado River*, 424 U.S. at 817; *Exon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Univ. of Md. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275-76 (3d Cir. 1991) ("The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action.").  The only exception to that rule relevant to this case is known as *Colorado River* abstention, under which federal courts may decline jurisdiction in just a vanishingly small class of "exceptional circumstances," and only when that course is supported by the "clearest of justifications."  *See Moses H. Cone Mem.*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14, 16 (1983) (quoting *Colorado River*, 424 U.S. at 813, 818-19).

"This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. When a district court declines jurisdiction over an action in favor of a parallel federal proceeding, the federal courts do not thereby abdicate their duty to exercise jurisdiction over the matter; they simply exercise that jurisdiction in a manner that conserves judicial resources. When, by contrast, a federal court declines to exercise jurisdiction in favor of a parallel state proceeding, the federal courts abdicate their obligation to exercise the power Congress assigned them. Thus, the bar for dismissing an action in favor of a parallel federal proceeding is considerably lower than the bar for abstaining from the same case in favor of a parallel state proceeding. *See id.*; *see also Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.").

This Court has carefully adhered to the Supreme Court's instructions, emphasizing that the "longstanding principle—that federal courts are obliged to hear and decide cases within the scope of their jurisdiction—is unimpeded by parallel state proceedings involving the same or similar subject matter." *Gonzalez v.*

*Waterfront Com'n of N.Y. Harbor*, 755 F.3d 176, 180 (3d Cir. 2014); *see also, e.g.*, *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) ("Judicial efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of [parallel] proceedings in an alternative forum."). Instead of applying the rule against claim-splitting, when there are parallel federal and state actions, the rule in this Circuit is that "the district court, in its discretion, may abstain only if the several *Colorado River* factors clearly weigh in favor of abstention." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 890 (3d Cir. 1997).

Consistent with those precedents, the only cases where this Court has applied the rule against claim-splitting have involved parallel actions in federal courts. *See, e.g.*, *Walton*, 563 F.2d at 70. This Court has never applied the rule against claim-splitting in reviewing dismissal of an action due to a parallel state-court proceeding; it has only ever applied *Colorado River*'s abstention standard to address such dismissals. *See, e.g.*, *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009); *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 172-73 (3d Cir. 1999); *Ryan*, 115 F.3d at 195-96; *Harris v. Pernsley*, 755 F.2d 338, 345 (3d Cir. 1985).

Courts across the country have likewise held that "claim splitting does not apply to parallel state and federal actions." *Steinberg v. Nationwide Mut. Ins. Co.*, 418 F. Supp. 2d 215, 223 (E.D.N.Y. 2006); *see also, e.g.*, *Kanciper v. Suffolk Cty.*

*Soc'y for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013) ("because the 'contemporaneous exercise of concurrent jurisdictions' in this case was between a state court and a federal court, claim splitting was not a theory under which the District Court could dismiss [plaintiff's federal] claim") (citation omitted); *Cottrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013) (where stay "effectively dismissed the federal proceeding in favor of a concurrent state dispute," the "proper standard to apply … was *Colorado River*," not the rule against claim-splitting); *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003) ("overlapping or even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity"); *Wyles v. Sussman*, 661 F. App'x 548, 552 (10th Cir. 2016) (because parallel proceeding was in state court, "the district court erred in dismissing [federal action] under the rule against claim-splitting"); *Travelers Indem. Co. v. Newlin*, 498 F. Supp. 3d 1262, 1280-81 (S.D. Cal. 2020) ("Claim splitting applies only to duplicative cases involving concurrent jurisdiction within federal court, and does not apply in this case, involving concurrent jurisdiction between state and federal court."). The district court's opinion in this case makes it an extreme outlier.

It is obvious why the rule against claim-splitting does not apply to actions having only parallel state-court proceedings: Applying the rule to such actions would nullify the *Colorado River* abstention doctrine. Any case where *Colorado River* abstention might be warranted would already be subject to dismissal under the

rule against claim-splitting. There would be nothing left for the *Colorado River* standard to do and it would lose any independent purpose. That the district court's ruling renders superfluous the Supreme Court's *Colorado River* precedent shows just how wrong it is.

**B.    The district court erred in holding that claim-splitting applied to this case.**

The district court nevertheless applied the rule against claim-splitting in this case, dismissing Kytch's claim on the ground that it had to be brought as part of the parallel, state-court California Action. To justify expanding the rule against claim-splitting, the district court cited just three federal cases,[7] each of which is readily distinguishable.

The first two cases cited by the district court—unpublished decisions from the Middle District of Pennsylvania—both involved parallel proceedings in federal court, not state court. *See Hannah v. S-L Distrib. Co.*, No. 19-cv-2143, 2021 WL 51581 (M.D. Pa. Jan. 6, 2021); *Yost v. Anthem Life Ins. Co.*, No. 18-cv-1522, 2019 WL 3451507 (M.D. Pa. July 30, 2019).

The only other case the district court relied on to justify applying the rule against claim-splitting was the out-of-circuit, unpublished, district-court decision in

---

[7] The district court also cited *Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980), but that is a state court case applying a claim-splitting rule without implicating the federal courts' obligation to exercise jurisdiction unless a well-established abstention doctrine creates an exception.

*Mohamad v. HSBC Bank N.A.*, No. 16-cv-2239, 2018 WL 8576597 (M.D. Fla. March 27, 2018). But that decision rests entirely on an Eleventh Circuit decision—*Bowman v. Coddington*, 517 F. App'x 683, 684 (11th Cir. 2013)—that has absolutely no application in cases like *Mohamad* (or this one).

In *Bowman*, the Eleventh Circuit "affirm[ed] the dismissal of a federal action where the plaintiff 'improperly split his causes of action by seeking declaratory relief in federal court'" while he was maintaining an overlapping case in Florida state court. *Mohamad*, 2018 WL 8576597, at *5. That the plaintiff in *Bowman* sought declaratory relief was critical to the proper application of the rule against claim-splitting in that action. That is because, under what is sometimes called the *Wilton-Brillhart* doctrine, if a plaintiff seeks declaratory relief in federal court while simultaneously maintaining another litigation in state court, a district court has broad discretion to stay or dismiss the federal action as long as the necessary parties have been joined in the state court proceeding and the claims of all parties in interest can satisfactorily be adjudicated by that tribunal. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 281-90 (1995). Declaratory judgment claims are treated differently than claims for damages or injunctive relief because Congress, in enacting the Declaratory Judgment Act, expressly conferred on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286, 288; *see also*

*NYLife Distribs., Inc*, 72 F.3d at 372 (same conclusion). Thus, in the declaratory judgment context, the rule that federal courts must adjudicate claims over which they have jurisdiction "yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

*Mohamad* did not concern the Declaratory Judgment Act or a request for declaratory relief, and so the *Wilton-Brillhart* doctrine—which justified the result in *Bowman*—had no application in *Mohamad*. In misreading and misapplying *Bowman*, therefore, the district court in *Mohamad* erroneously expanded the scope of rule against claim-splitting. In relying on *Mohamad* to justify applying the claim-splitting doctrine to this action, the district court here compounded that error.

This is a federal damages action with a parallel proceeding in a state court. And the law is clear that, in cases fitting that description, claim-splitting is not a theory under which a district court can dismiss a federal action. The district court erred in holding that the rule against claim-splitting authorized it to decline jurisdiction over Kytch's Lanham Act claim. This Court should vacate the district court's decision and remand the matter for further proceedings in the district court.

## II. Abstention Would Be Unwarranted Under *Colorado River*.

To abstain due to the California Action, the district court would have to determine that this case fits within the "extraordinary and narrow exception" to federal jurisdiction recognized in *Colorado River Water Conservation District v.*

*United States*, 424 U.S. 800, 813 (1976). While this Court has sometimes left it to district courts to make that determination in the first instance, *e.g.*, *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 136 n.3 (3d Cir. 2009), where it is clear from the record that abstention under *Colorado River* would be inappropriate, a reviewing court may, in the interests of judicial and party economy, address the application of the *Colorado River* factors on its own initiative, *see, e.g.*, *Moses H. Cone*, 460 U.S. at 19 (doing exactly that); *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 712 (3d Cir. 2004) ("Although a district court's application of an incorrect legal standard 'would normally result in a remand, we need not remand' if application of the correct standard could support only one conclusion.") (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1451 (3d Cir. 1994)). *Colorado River* plainly does not support abstention in this action, and so this Court should hold that *Colorado River* abstention is also unwarranted.

Under *Colorado River*, courts ask "whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice … to justify the surrender of [federal] jurisdiction." *CTF Hotel Holdings, Inc.*, 381 F.3d at 139. The relevant factors for determining whether "exceptional circumstances" support surrendering a federal court's jurisdiction in favor of a state court proceeding include: (1) whether the state court assumed *in rem* jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal

litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal or state law controls; and (6) whether the state forum will adequately protect the interests of the parties. *Moses H. Cone*, 460 U.S. at 15-16; *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 307. However, the decision to defer "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

In this case, the six *Colorado River* considerations don't come close to outweighing the heavy presumption in favor of exercising federal jurisdiction. To the contrary, the factors unambiguously show the propriety of exercising that jurisdiction.

**Whether the state court assumed in rem jurisdiction over property.** Both the this action and the California Action are *in personam* actions, not an *in rem* actions. When the relevant proceedings are all *in personam* actions, the first *Colorado River* factor is "irrelevant." *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 308; *see also Moses H. Cone*, 460 U.S. at 19 (first *Colorado River* factor "not present [where] [t]here was no assumption by either court of jurisdiction over any res or property").

**The inconvenience of the federal forum.** "[I]f the federal forum is not inconvenient"—as measured by ease of access to sources of proof—"or no less convenient than the state forum, such a finding does not counsel in favor of

[abstention]." *Robinson v. Ruiz*, 772 F. Supp. 212, 215 (D. Del. 1991); *see also Moses H. Cone*, 460 U.S. at 19 (no "contention that the federal forum was any less convenient to the parties than the state forum"); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (cited with approval in *Colorado River*, 424 U.S. at 818).

Because of the nature of Kytch's Lanham Act claim, the relevant sources of proof are Taylor executives and Taylor documents. Particularly in the age of e-discovery and remote depositions, a federal court in Delaware is in no way inconvenient for purposes of accessing those sources of proof. *See Zelinski v. Shurwest, LLC*, No. 19-cv-804, 2021 WL 765469, at *3 (M.D. Fla. Feb. 26, 2021) (defendant failed to show inconvenience of forum because "with e-discovery and Zoom quickly supplanting the need for most in-person proceedings, it realistically makes little difference whether this case is litigated in Arizona or Florida"). What's more, Taylor chose to incorporate in Delaware. (A45 ¶ 42.) And a "long line of decisions [from federal courts in Delaware] make[s] plain that a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 756 (D. Del. 2012). Because the federal court in Delaware is not inconvenient—especially compared to the state court in the California Action—this factor weighs against abstention.

**The desirability of avoiding piecemeal litigation.** This factor "was '[b]y far the most important factor' in the *Colorado River* decision itself." *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 308 (quoting *Moses H. Cone*, 460 U.S. at 16). It "is met … only when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan v. Johnson*, 115 F.3d 193, 197-98 (3d Cir. 1997). To satisfy this factor, therefore, a defendant typically must "'point[] to [some] Congressional legislation … that evinces 'a tempering of the policy to enforce the plaintiff's choice of a federal forum in favor of a policy of avoiding duplicative or inconvenient litigation.'" *Ky. W. Va. Gas Co. v. Pa. Pub. Utility Comm'n*, 791 F.2d 1111, 1118 (3d Cir. 1986) (quoting *Harris*, 755 F.2d at 345).

The mere fact that parallel proceedings might lead to piecemeal litigation is not enough to warrant abstention, for reasons this Court has explained at length:

> [I]f the mere possibility of concurrent state-federal litigation satisfies *Colorado River*'s "piecemeal adjudication" test, the test becomes so broad that it swallows up the century-old principle … that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction…." *Colorado River*, 424 U.S. at 817. If this were the law, it is difficult to conceive of *any* parallel state litigation that would not satisfy the 'piecemeal adjudication' factor and militate in favor of *Colorado River* abstention. If that is true, then the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them []" recognized in *Colorado River*, 424 U.S. at 817, and reiterated in *Cone* would effectively be eviscerated, a result we cannot presume either the Supreme Court or this court to have intended.

Ryan, 115 F.3d at 198.

Neither the district court nor Taylor cited any strong congressional policy favoring trying Kytch's Lanham Act claim in California state courts. There's a reason for that: no such policy exists. To the contrary, Congress expressly granted federal courts jurisdiction over Lanham Act claims, *see* 15 U.S.C. § 1121, and it has long been understood that federal courts are the primary forum for enforcing federal rights, *see McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 672 (1963) ("The First Congress created federal courts as the chief … tribunals for enforcement of federal rights.").

Because there is no evidence of a strong federal policy that Kytch's Lanham Act claim should be tried as part of the California Action, this factor weighs heavily against abstention.

***The order in which jurisdiction was obtained.*** This is the only factor that weighs in favor of abstention, to the extent that the California Action is further down the decisional path than this one. *See Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 309 ("comparative progress made in the state cases and this one also needs to be considered" under this factor). Of course, a major reason this action is no further along is because, at every turn—including by seeking dismissal under the inapplicable claim-splitting doctrine—Taylor has sought to prevent any progress toward a merits decision in this litigation.

Regardless, this Court has explained that this factor "does not weigh heavily in the balance" when other *Colorado River* factors cut the other way, particularly not in "the absence of a federal policy against piecemeal litigation." *McMurray v. De Vink*, 27 F. App'x 88, 93 (3d Cir. 2002). This factor is not due any significant weight in the circumstances of this case.

***Whether federal or state law controls.*** "Although in some rare circumstances the presence of state-law issues may weigh in favor of th[e] surrender [of jurisdiction under *Colorado River*], the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). Kytch brought this action to vindicate its rights under the federal Lanham Act. State law does not control this action and, indeed, has nothing to do with it. Consequently, this factor is a "major consideration" against abstention.

***Whether the state forum will adequately protect the interests of the parties.*** This Court has observed that "whether parties' interests are protected is only relevant [to the *Colorado River* analysis] when they are not; that is, 'when the state court is adequate, [this] factor carries little weight.'" *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 172 (3d Cir. 1999) (quoting *Ryan*, 115 F.3d at 199-200). Another panel of this Court has similarly observed that the "sixth factor does not significantly inform the analysis" when the federal statute giving rise to the action "grants

concurrent jurisdiction to federal and state courts." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton*, 571 F.3d 299, 308 (3d Cir. 2009). The Lanham Act gives federal and state courts concurrent jurisdiction over actions like this one, and so this factor is not relevant to the abstention determination.

*****

Collectively, the *Colorado River* factors unambiguously weigh against abstention in this matter. To overcome the strong presumption in favor of federal jurisdiction, a party must show "exceptional circumstances" amounting to "the clearest of justifications." *Moses H. Cone*, 460 U.S. at 25-26; *Ryan*, 115 F.3d at 199-200. The factors here do not come close to making the required showing, and so this Court should hold that the district court lacks power to decline jurisdiction under *Colorado River*.

## III. Kytch Properly Pled Its Federal False Advertising Claim.

Because the district court granted Taylor's motion to dismiss on the ground that Kytch improperly split its claims, it did not address Taylor's argument that Kytch failed to plausibly state a claim under the Lanham Act. But because this Court may affirm on any ground supported by the record, *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 116 (3d Cir. 2020), Kytch briefly explains here why Taylor's failure-to-state-a-claim arguments lack merit.

The Lanham Act's false-advertising prohibition is expansive.  *See* 15 U.S.C. § 1125(a)(1)(B).  "Congress enacted [§ 1125(a)] 'to stop the kind of unfair competition that consists of lying about goods or services,'" *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 941 (3d Cir. 1993), and, as a remedial statute, it is broadly construed, *Thorn v. Reliance Van Co.*, 736 F.2d 929, 932 n.5 (3d Cir. 1984).  Despite this broad sweep, Taylor argued that its conduct did not fall within the Act's prohibitions.  But the complaint alleges that Taylor worked closely with McDonald's to architect and execute a smear campaign against Kytch by falsely disparaging Kytch's products (A83 ¶ 210, A99 ¶ 279.)  This is more than adequate to allege that Taylor violated the federal false advertising statute.

Taylor responded by urging the district court to disregard those well-pled facts and rule, as a matter of law, that Taylor is not responsible for publication.  But even if its account were accurate (it is not), Taylor may not inject factual disputes at this stage of the litigation and a court may not disregard Kytch's well-pled factual allegations.  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

Taylor's argument that the False Ads are not "commercial speech" fairs no better, given Kytch's well-pled allegations that Taylor sent disparaging mailers to Kytch's customers that promoted Taylor and McDonald's competing product.  (A81-82 ¶¶ 205-07.)  This is a textbook example of false advertising governed by

the Lanham Act. Taylor's motion to dismiss for failure to state a claim thus provides no basis for affirming the district court's order.

## A.    Taylor Is Responsible for Publishing the False Ads.

The gravamen of Taylor's publication defense was that the False Ads "were solely made by McDonald's—not Taylor." [D. Ct. Dkt. 7 at 15.] But that runs contrary to both the facts and the allegations in the complaint. Taylor did not deny publishing the False Ads when it responded to Kytch's December 2020 letter demanding that Taylor retract and withdraw its false statements from the marketplace. (A95-97 ¶¶ 261, 263, 265.) Taylor's position did not materialize until after Kytch filed suit. Moreover, the complaint repeatedly alleges that McDonald's *and Taylor* published the False Ads:

- "McDonald's and Taylor launched their false and deceptive information campaign against Kytch" by "direct[ing] and publish[ing]" a so-called "IMPORTANT NOTE" to publish false and disparaging statements of fact about the quality and nature of Kytch's product and services. (A81-82 ¶¶ 206-07.)

- Kytch has pled that Taylor—working with McDonald's—"develop[ed]," "arranged for … distribut[ion]" of, and "disseminate[d]" the false advertising claims to McDonald's franchisees, Coca-Cola, Burger King, and RBI Brands. (A39-40 ¶¶ 20-21, A42 ¶ 25, A45-46 ¶ 42, A81-83 ¶¶ 205-12 & n.16, A92-93 ¶¶ 251-52, A99 ¶¶ 279-80, A101-102 ¶¶ 282-89.)

- "McDonald's and Taylor *worked together to develop the false message*" conveyed by the advertising "and *each contributed to the dissemination of the communication*." (A101 ¶ 286; *see also* A39-42 ¶¶ 18-21, A42 ¶ 25, A81 ¶ 206 n.16, A83 ¶¶ 209-11, A99 ¶ 279 (alleging concerted conduct in developing and publishing the False Ads).)

The complaint also includes a screenshot of an email chain whereby Taylor's CEO and COO discussed potential messaging for the False Ads in the days before they were finalized. (A40 ¶ 21.). These prepublication communications are powerful evidence that the two companies acted jointly to violate the Lanham Act.

Taylor nevertheless argued that dismissal was warranted because Kytch's complaint against McDonald's supposedly "admits" that McDonald's is "solely" responsible for the False Ads. Nothing could be further from the truth. [D. Ct. Dkt. 7 at 15.] To the contrary, Kytch's complaint against McDonald's alleges joint action by McDonald's and Taylor over 100 times. (*See, e.g*, McDonald's Compl. ¶¶ 6, 9, 12-13, 16, 19-22, 24-26, 28-29, 54, 60, 65, 100, 131, 136, 142, 146, 152, 154, 159, 170, 181, 183, 188, 191, 196, 199-200, 203, 205-13, 217, 224-30, 238, 240, 252-53, 257-58, 261, 263, 265, 267-68, 273, 280-82, 286-88.)

The Complaint's express averments of co-drafting, co-publication, and Taylor's and McDonald's joint motives for destroying Kytch more than plausibly allege that Taylor was directly involved in the false-advertising campaign. This triggers liability under § 1125(a). *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 834 (9th Cir. 2011) (explaining that defendants are jointly liable where they each had a "role in creating, developing or disseminating [the] misleading advertising"); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) (participating in wrongful acts is "[t]he only crucial predicate to [] liability" under

the Lanham Act); *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-cv-1566, 2012 WL 4205476, at *34 (E.D. Pa. Sept. 19, 2012) (allegations that defendant took part in "'widespread campaign' of false advertising" sufficed to trigger Lanham Act liability).

Even were that not the case, moreover Kytch still stated a claim for relief because, contrary to Taylor's argument—which was only raised in a footnote and is therefore considered waived, *see Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.13 (3d Cir. 2013)—a complaint need not use the phrase "contributory false advertising" to state a claim for relief. [*See* D. Ct. Dkt. at 19 n.12.] In this Circuit, courts "do not look for 'magic words;'" rather, the claimant "must plead facts" that state a claim under the law. *Patel v. Dhaduk*, 839 F. App'x 715, 722 (3d Cir. 2020). And to allege contributory liability under § 1125(a), courts look to whether (1) "a third party engaged in false advertising," and (2) "the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1276-77 (11th Cir. 2015); *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 344-45 (D.N.J. 2020). Here, Kytch has alleged the False Ads were disseminated to the public (A36 ¶ 4, A81-82 ¶¶ 206-07, A99 ¶¶ 279-80), and that "McDonald's and Taylor worked together to develop the false message, and each contributed to the dissemination of the communication" (A101-02 ¶ 286; *see also,*

*e.g.*, A39-40 ¶¶ 18-21, A42 ¶ 25, A81 ¶ 206 n.16, A99 ¶ 279 (alleging concerted conduct).)

Taylor cited just one case in support of its assertion that only the speaker can be liable for jointly devised false advertising, and even that case does not support that proposition. [*See* D. Ct. Dkt. 7 at 14 (citing *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570 (E.D. Pa. 1999)).] In *Synygy*, at the summary judgment stage, the plaintiff had no evidence to support its allegations that the oral statements at issue were ever uttered. 51 F. Supp. 2d at 572-73, 575. The court did not consider, let alone hold, that only the distributor of a false statement could be liable under § 1121(a). To the contrary, the Third Circuit has squarely held that multiple actors working jointly are liable for violations of § 1125(a). *See AT&T Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1433 (3d Cir. 1994) ("secondary, indirect liability is a legitimate basis for liability under the federal unfair competition statute"); *Newborn Bros. Co.*, 481 F. Supp. 3d at 344-45 (explaining that "speech by a third party that was created, sponsored, and presented by the defendant [is] actionable").

Finally, in a footnote—which, again, means the argument was waived, *Ethypharm S.A. France*, 707 F.3d at 231 n.13—Taylor argued that claims based on statements to RBI Brands and Coca-Cola (but not Burger King or the McDonald's franchisees) should be dismissed because they "d[id] not give Taylor notice of what statements are at issue." [D. Ct. Dkt. 7 15 n.6.] But a Lanham Act plaintiff need

only allege the defendant's false messages and examples of the false ads used to distribute them, which Kytch did.  (A81-83 ¶¶ 206-08, A99-101 ¶ 281.).  *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-cv-585, 2015 WL 4002468, at *1 (S.D.N.Y. July 1, 2015), *aff'd*, 843 F.3d 48 (2d Cir. 2016).[8]  Like Taylor's other arguments that it did not publish the False Ads, this one cannot withstand scrutiny.

### B.  The False Ads Are Commercial Speech Because They Promote "Open Kitchen" and Encourage Users to Discontinue Using Kytch, to Taylor's Benefit.

Taylor's argument that its False Ads are not commercial speech blinks reality. [D. Ct. Dkt. 7 at 16-19.]  "Commercial speech" is "broadly defined as expression related to the economic interests of the speaker and its audience." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990).  To determine if speech is commercial, courts ask: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech[?]"  *Id.*; *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008).  "[A]ll three [factors] need not be present," *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 137 (3d Cir. 2020), and determining

---

[8] Taylor's cited case, *Williams v. National American Postal Workers Union, AFL-CIO*, No. 03-cv-944, 2005 WL 977858, at *1, *4 (D. Del. Apr. 27, 2005), does not hold to the contrary and did not concern the standard for pleading a Lanham Act claim.

if speech is commercial "rests heavily" on "common[ ]sense," *U.S. Healthcare, Inc.*, 898 F.2d at 933. Here, all three factors—and common sense—make clear that these False Ads are commercial speech.

**First**, the False Ads are advertisements. They identify and promote the benefits of Open Kitchen and then identify and disparage Kytch's competing product. (A81-82 ¶¶ 206-07.) And Taylor and McDonald's distributed the False Ads to over 13,000 actual and potential Kytch customers. (A36 ¶ 4.) That is the definition of advertising. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002).

Despite the plainly commercial nature of the False Ads, in the district court, Taylor raised two mistaken arguments that the False Ads are not advertising. Initially, Taylor speculated that McDonald's motives were altruistic, not economic, but this argument directly contradicted the pleadings, and tellingly contained no citations to them. [*See* D. Ct. Dkt. 7 at 17-18.] *See also Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1120-21 (8th Cir. 1999) (holding that message warning of supposed safety issues was "commercial speech"). Moreover, Taylor and McDonald's have conspired to crush other equipment manufacturers before. *See McDonald's Corp. v. Am. Motorists Ins. Co.*, 748 N.E.2d 771, 774-76 (Ill. App. Ct. 2001). This Court, therefore, should be especially reluctant to credit any assertion that McDonald's derives no economic benefit from equipment sales.

Taylor then claimed that the False Ads were "clearly part of an informational newsletter for McDonald's franchisees." [D. Ct. Dkt. 7 at 18.] But even if true, that is irrelevant. "Advertising is not limited to newspaper, television, or radio announcements." *Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F. Supp. 2d 665, 674 (D. Del. 2010); *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 585-86 (3d Cir. 2002) (product's name and label constituted false advertising). It is simply "a subset of persuasion and refers to dissemination of prefabricated promotional material"—*i.e.*, materials that are prewritten and widely disseminated. *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001). And courts routinely hold "advertising" includes "informational" literature with a commercial purpose. *E.g.*, *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983) (holding that "informational pamphlets" are advertisements).

**Second**, the False Ads specifically refer to the "Taylor Shake Sundae Connectivity" (now "Open Kitchen") and the Kytch Solution. (A81-82 ¶¶ 206-07.)

**Third**, Kytch plausibly alleged that both Taylor and McDonald's had an "economic motivation" for False Ads (contrary to Taylor's bald assertion that "Kytch has not alleged any plausible economic motivation" or "direct financial benefit from the sale of Open Kitchen products"). [D. Dkt. 7 at 19]. Indeed, "for-profit compan[ies]" are generally "presumed to have primarily economic

motivations for [their] speech," *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 258 (4th Cir. 2017), and "[e]conomic motivation is not limited to the expectation of a direct commercial transaction with consumers"; it can involve "indirect benefits" like "improvements to a brand's image, general exposure of a product, and protection of licensees' [*i.e.*, related parties'] interests." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021) (collecting cases); *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 518-19 (7th Cir. 2014) (promoting "brand awareness or loyalty" is economic motivation); *Handsome Brook*, 700 F. App'x at 258 (promoting brand reliability); *Facenda*, 542 F.3d at 1017 ("video game's general promotion of NFL-branded football provides [] indirect financial motivation" for NFL).

Here, Kytch pled the obvious: Taylor and McDonald's co-created the "Open Kitchen" product to sell and distribute to customers, meaning they had an obvious interest in its success. (A81-82 ¶¶ 206-07 ("We are pleased to share that [] McDonald's … has been working on a strategic connectivity solution ***with Taylor*** for their Shake Sundae machine ... [t]he ***Taylor*** Shake Sundae Connectivity.") (emphasis added).) Moreover, in addition to this direct interest in sales of Open Kitchen, McDonald's has admitted it "is in the business of ***selling*** … franchises" (McDonald's Corp. Brief in Supp. of Mot. to Dismiss at 7, *Kytch, Inc. v. McDonald's Corp.*, No. 22-cv-00279-MN (N.D. Cal. April 22, 2022) [Dkt. 10]), giving it a strong

economic motive to tout its own product to fix its constantly-breaking soft-serve machines that frustrate franchisees (and could dissuade new ones) (A94-95 ¶ 258.) Finally, Taylor and McDonald's would also bolster their brands and earn goodwill by proactively developing a solution for the notoriously-unreliable machines. (*Id.*)

Nothing more was required at this stage to plead Taylor and McDonald's economic motivation for the speech. *See Innova Hosp. San Antonio v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730-31 (5th Cir. 2018) ("[W]hen discoverable information is in [defendant's] control," plaintiff need not plead it in its complaint.); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

The two cases Taylor cited in its argument at the district court to the contrary are likewise distinguishable. *Crash Proof Retirement, LLC v. Price*, 533 F. Supp. 3d 227, 231 (E.D. Pa. 2021), considered whether the communication discussed the defendant's own or another's product, an element that Taylor concedes. [D. Ct. Dkt. at 17-18.] And *Cornette v. Graver*, 473 F. Supp. 3d 437, 461 (W.D. Pa. 2020), concerned fundraising t-shirts, sold for a charitable purpose, that were clear "parody ... criticiz[ing] opinions that [the defendant]] disagreed with," so they were not commercial speech. *Cornette*, 473 F. Supp. 3d at 460-61. Neither case undercuts the conclusion that the False Ads are commercial speech.

Taylor's argument that its co-promotion of its own competing product was not economically motivated defies reality. Kytch adequately pled that the False Ads are commercial advertising under the Lanham Act.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Kytch, Inc. respectfully requests that the Court vacate the district court's judgment and remand this case for further proceedings under the appropriate standards.

Date: November 27, 2023    Respectfully Submitted,

          */s/ Daniel P. Watkins*
          DANIEL P. WATKINS
          MARK R. THOMSON
          MEIER WATKINS PHILLIPS PUSCH LLP
          919 18th St. NW, Suite 650
          Washington, DC 20006
          Tel: (202) 318-3655
          Daniel.Watkins@mwpp.com
          Mark.Thomson@mwpp.com

          *Attorneys for Plaintiff-Appellant*
          *Kytch, Inc.*

# CERTIFICATE OF COMPLIANCE

1.      Type Volume

[X]     This document complies with type-volume limits of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f) (cover page, corporate disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, proof of service, attachments), this document contains 9,206 words.

2.      Typeface and Type-Style

[X]     This document complies with the typeface requirements of FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3.      Bar Membership

Pursuant to L.A.R. 28.3(d) and 46.1(a), I hereby certify that I am admitted to practice in this Court.

4.      Identical Compliance of Briefs

I certify that the text of the electronically-filed PDF and the hard copies filed with the Court are identical.

5.      Virus check

I certify that the electronically filed PDF has been scanned for viruses using

VirusTotal, version 3.

*/s/ Daniel P. Watkins*
Daniel P. Watkins
*Attorney for Plaintiff-Appellant Kytch, Inc.*

Dated: November 27, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Principal Brief of Plaintiff-Appellant was filed with the Clerk of the Court using the Court's CM/ECF system on November 27, 2023, which will send notification of such filing to all counsel of record.


Dated:  November 27, 2023       By:   */s/ Daniel P. Watkins*
                                         Daniel P. Watkins